## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

DARO WEILBURG,

                                Plaintiff,

        v.                                        5:24-CV-1189
                                                    (DNH/MJK)

CARLA FITZGERALD, et al.,

                                Defendants.

---

DARO WEILBURG, Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, U.S. DISTRICT JUDGE:

### ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint, together with an application to proceed in forma pauperis ("IFP"), filed by pro se plaintiff, Daro Weilburg. (Dkt. Nos. 1, 2).

## I.  **IFP Application**

Plaintiff declares in his IFP application that he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or

1

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward pro se litigants and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).

2

In addition, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 does not require detailed factual allegations, it does "demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Houston v. Collerman*, No. 9:16-CV-1009 (BKS/ATB), 2016 WL 6267968, at *2 (N.D.N.Y. Oct. 26, 2016) (quoting *Iqbal,* 556 U.S. at 678).  A pleading that contains allegations that "'are so vague as to fail to give the defendants adequate notice of the claims against them' is subject to dismissal."  *Id.* (citing *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009)).

## II.  <u>Complaint</u>

Plaintiff alleges violations of his civil rights pursuant to 18 U.S.C. § 242; 18 U.S.C. § 505; 42 U.S.C. § 1983; and 42 U.S.C. § 1985.  (Complaint ("Compl.") at 1) (Dkt. No. 1).  Specifically, plaintiff alleges the "deprivation of his [First] Amendment rights of free speech and freedom of the press."  (*Id.* at 3).  The named defendants include Carla Fitzgerald, Clerk of the Oneida City Court; Brendan Rigby, plaintiff's court-appointed public defender; and George D. Annas, M.D., who is described by plaintiff to be "a medical doctor contracted by Madison County Mental Health Clinic as a psychiatrist to render opinions of mental health conditions of indigent defendants[.]" (*Id.* at 2-3).

In his statement of claim, plaintiff alleges that on or about April 25, 2023, Ms. Fitzgerald and Counselor Rigby "engaged in conspiracy to commit a fraud upon the court and the plaintiff[.]"  (Compl. at 3).  Plaintiff alleges that Counselor Rigby

3

telephoned Ms. Fitzgerald and "told her what to put into the forged order of the court." (*Id.* at 3-4, 6). Ms. Fitzgerald "then backdated the forged court order," "stamped the Judge's name to the order[,]" and then "emailed the forged court order . . . to Elizabeth Spaulding of the Madison County Mental Health clinic" in order for plaintiff to be mentally evaluated pursuant to New York C.P.L. §730.30. (*Id.* at 4).

Plaintiff then alleges that Counselor Rigby and Dr. Annas "conspired to produce an opinion to the court that plaintiff was incapacitated and suffered from a mental disease[.]" (Compl. at 4). Plaintiff specifically alleges that he met with Dr. Annas as well as non-party Dr. Kumar for approximately ten minutes at the Madison County Mental Health Clinic on or about July 17, 2023, but Dr. Annas "canceled the evaluation" because plaintiff would not proceed without his wife present. (*Id.* at 4-5). Plaintiff asserts that, ultimately, these defendants "engaged in a conspiracy to manufacture a mental health evaluation on the plaintiff without [Dr. Annas] actually examining the plaintiff." (*Id.* at 5). Plaintiff alleges that Dr. Annas "could not possibly diagnose plaintiff with a mental disease [because] Dr. Annas did not examine the plaintiff." (*Id.* at 7). Plaintiff further alleges that the evaluation improperly included a "prognosis" by Counselor Rigby. (*Id.* at 5).

Plaintiff proceeds to allege various complaints about the sufficiency of Counselor Rigby's representation, including Counselor Rigby's recommendation that defendant undergo the competency evaluation, as well as the attorney's purported lack of knowledge about the law. (Compl. at 6-7).

4

Plaintiff alleges injuries including "mental anguish." (Compl. at 8-9). He alleges, in conclusory fashion, additional claims including a violation of his rights to access the courts and "be secure in the professionalism of a learned medical doctor who only after a proper examination would render any diagnosis." (*Id.* at 9). Plaintiff also claims he "has been slandered" by Dr. Annas. He seeks compensatory and punitive damages, along with costs. (*Id.*).

## III.   Claims Asserting Federal Criminal Violations

To the extent plaintiff attempts to assert claims pursuant to 18 U.S.C. § 242 (Deprivation of rights under color of law), and 18 U.S.C. § 505 (Seals of courts; signatures of judges of court officers), these claims are subject to dismissal because plaintiff lacks standing to pursue them. There is no private right of action to enforce state or federal criminal statutes. *See generally Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, No. 20-CV-1337 (TJM/CFH), 2021 WL 3518439, at *5 (N.D.N.Y. Apr. 13, 2021) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted,* 2021 WL 3204860 (N.D.N.Y. July 29, 2021); *McFadden v. Ortiz*, No. 12-CV-1244 (MAD/ATB), 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (holding that "there is no private right of action to enforce either state or federal criminal statutes."). Accordingly, plaintiff's claims pursuant to § 242 and § 505 should be dismissed. *See, e.g., Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) ("We have

5

noted in the past that there is no private right of action under section 242[.]"); *Citi Mortg., Inc. v. Hubbard*, No. 13-144, 2014 WL 1303706, at *15 (D. Minn. Mar. 31, 2014) (no private right of action under 18 U.S.C. § 505).

## IV.   § 1983

### A.   Counselor Rigby

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

"Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender." *Hodge v. Kaufmann,* No. 23-CV-3049, 2023 WL 3949040, at *2 (S.D.N.Y. June 12, 2023) (citing *Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981))); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily

is not a state actor for purposes of Section 1983). Mr. Rigby, in representing plaintiff at his criminal proceedings, thus does not qualify as a state actor, even if he was appointed by the state court to represent plaintiff or is a public defender. Accordingly, plaintiff fails to state a claim on which relief can be granted under Section 1983 as against this defendant.

### B.    Ms. Fitzgerald and Dr. Annas

Plaintiff's §1983 claim against Ms. Fitzgerald, the clerk of the Oneida City court, is subject to dismissal based on Ms. Fitzgerald's absolute immunity from suit.  Judicial immunity extends from judges to "others who perform functions closely associated with the judicial process."  *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *see Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (recognizing quasi-judicial immunity for court clerks). Courts have held that "Clerk's Office activities of filing and docketing legal documents" are an "integral part of the judicial process" and are thus entitled to absolute immunity. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011); *see also Bey v. New York*, No. 11 Civ. 3296, 2012 WL 4370272, at *7 (E.D.N.Y. Sept. 21, 2012) (holding that court clerks were entitled to absolute quasi-judicial immunity for tasks that are integral to the judicial process); *Humphrey v. Court Clerk for the Second Circuit*, No. 08 Civ. 0363 (DNH), 2008 U.S. Dist. LEXIS 35912, at *7 (N.D.N.Y. May 1, 2008) (explaining that court clerks enjoy absolute immunity "if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court") (citing *Rodriguez*, 116 F.3d at 67).   Here, to the extent plaintiff's conclusory claim that

7

Ms. Fitzgerald improperly issued a court order directing plaintiff to undergo a mental health evaluation is not completely baseless, Ms. Fitzgerald is otherwise entitled to absolute immunity.

Dr. Annas is likewise entitled to immunity. "[A]bsolute immunity may attach to non-judicial officers and employees where the individual serves as an arm of the court or where the individual conducts activities that are inexorably connected with the execution of court procedures and are analogous to judicial action." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 527 (E.D.N.Y. 2010) (cleaned up); *see Henderson v. Heffler*, No. 07-CV-0487, 2010 WL 2854456, at *3 (W.D.N.Y. July 19, 2010) ("Absolute immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators" on "inexorably connected" theory). "Court-appointed forensic evaluators act as arms of the court and enjoy judicial immunity from federal civil rights liability as a non judicial person who fulfills a quasi-judicial role at the court's request." *Monte v. Vance*, No. 18-CV-9595, 2018 WL 11302546, at *4 (S.D.N.Y. Nov. 7, 2018) (internal quotation marks and citation omitted). Plaintiff's complaint clearly sets forth that Dr. Annas was appointed by the court to make an inquiry into plaintiff's competency. Dr. Annas is therefore entitled to immunity to the extent plaintiff objects to his conclusions or processes.

## V.  § 1985

The §1985 claims against defendants Fitzgerald and Annas are also subject to dismissal based on these defendants' absolute immunity from suit. *See Gross v. Rell*,

585 F.3d 72, 83 (2d Cir. 2009) (Affirming grant of judicial immunity to defendants for claims brought pursuant to 42 U.S.C. §1985, among others).

     With respect to Counselor Rigby, 18 U.S.C. § 1985 provides redress for conspiracies to deprive persons of their constitutional rights, even in the absence of a state actor. Section 1985 addresses three different types of conspiracies, namely those aimed at (1) interference with law enforcement, (2) obstruction of justice, and (3) deprivation of equal rights and privileges. 18 U.S.C. § 1985(1)-(3). To assert a viable claim under § 1985, a plaintiff must allege, among other elements, an agreement or meeting of the minds between the alleged conspirators to achieve an unlawful end. *See Robinson v. Allstate Insurance. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013) (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003)). In this case, plaintiff's complaint is most liberally construed to assert a conspiracy under § 1985(3). But to establish a violation of § 1985(3), a plaintiff must establish, among other elements, that the conspiracy was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus . . . ." *Id.* (quoting *Britt v. Garcia*, 457 F.3d 264, 270 n. 4 (2d Cir. 2006)) (internal quotation omitted); *see also Blue v. City of New York*, No. 16-CV-9990, 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) ("A claim under § 1985(3) must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action") (quoting *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).

     Even if plaintiff had plausibly alleged the deprivation of his civil rights in his complaint, he makes no plausible allegations of a meeting of the minds to achieve this

unlawful end, much less factual assertions that would establish the requisite discriminatory animus.  Accordingly, any claims pursuant to § 1985 should likewise be dismissed for failure to state a claim.

## VI.    **Slander**

Plaintiff, in conclusory fashion, alleges that he has been "slandered" by Dr. Annas' publication of his competency opinion to the court.  (Compl. at 9).  "Under New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege." *Ryle v. Rehrig Pac. Co.*, No. 19-CV-1478, 2020 WL 6196144, at *8 (N.D.N.Y. Oct. 22, 2020) (citing *Albert v. Loksen*, 239 F.3d 256, 267 (2d Cir. 2001)).  Plaintiff does not plausibly allege the elements of libel in order to state a cause of action in his complaint.  Moreover, given that the court is recommending dismissal of plaintiff's federal causes of action, and the fact that slander involves a quintessential area of state law, the court recommends declining to exercise supplemental jurisdiction.[1]

---

[1] The court will also note that plaintiff's slander claim appears be barred by the one-year statute of limitations for such claims, which begins to accrue "on 'the date of the publication or utterance of the allegedly slanderous statement.' " *See Uddoh v. United Healthcare*, No. 16-CV-1002, 2017 WL 563973, at *4 (E.D.N.Y. Feb. 10, 2017) (quoting *Cullin v. Lynch*, 113 A.D.3d 586 (2d Dep't 2014)); *see also* N.Y. C.P.L.R. § 215(3). Plaintiff alleges that the statements at issue occurred on August 22, 2023 (*see* Compl. at 9), and he did not file his complaint until over one year later, on September 27, 2024 (*see generally* Compl.).

## VII.  **Opportunity to Amend**

Generally, before the court dismisses a pro se complaint or any part of the complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Plaintiff's claims brought pursuant to the various federal criminal statutes pleaded should be dismissed with prejudice, because there is no private right of action to enforce them.  Plaintiff's §1983 claims should be dismissed with prejudice, in light of the defendants' immunity from suit and lack of state action.  Plaintiff's § 1985 claims against defendants Carla Fitzgerald and Brendan Rigby should also be dismissed with prejudice, in light of their absolute immunity.  Although the court has serious doubts as to whether plaintiff can amend to assert any cognizable, federal claims over the situation that plaintiff describes in his complaint, I am compelled to otherwise recommend dismissing the remainder of the complaint without prejudice.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED**,[2] and it is

---

[2] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

11

**RECOMMENDED**, that plaintiff's claims predicated on 18 U.S.C. § 242 and 18 U.S.C. § 505 be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED,** that plaintiff's 42 U.S.C. § 1983 claims be **DISMISSED WITH PREJUDICE,** and it is

**RECOMMENDED,** that plaintiff's 42 U.S.C. § 1985 claims against defendants Fitzgerald and Rigby be **DISMISSED WITH PREJUDICE,** and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE** in all other respects, and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[3]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 8, 2024

Mitchell J. Katz
U.S. Magistrate Judge

---

[3] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 13 of 110

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

2016 WL 6267968
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Eddie HOUSTON, Plaintiff,

v.

COLLERMAN, et. al., Defendants.

9:16-CV-1009 (BKS/ATB)
|
Signed 10/26/2016

**Attorneys and Law Firms**

EDDIE HOUSTON, 08-A-3122, Mid-State Correctional Facility, P.O. Box 2500, Marcy, New York 13403, Plaintiff, pro se.

**AMENDED DECISION AND ORDER** [1]

[1]     On October 20, 2016, the Court issued a Decision and Order upon initial review of plaintiff's complaint. Dkt. No. 4. This Amended Decision and Order is issued to correct clerical errors in the Conclusion of the Order.

BRENDA K. SANNES, United States District Judge

**I. Introduction**

**\*1** The Clerk has sent to the Court for review a civil rights action filed by pro se plaintiff Eddie Houston. Dkt. No. 1 ("Compl."). Plaintiff has not paid the statutory filing fee for this action and seeks leave to proceed in forma pauperis. Dkt. No. 2 ("IFP Application").

**II. IFP Application**

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 W L 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). Upon review of plaintiff's IFP Application, the Court finds that plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York. Plaintiff's IFP application (Dkt. No. 2) is granted. [2]

[2]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

**III. Initial Screening**

Having found that plaintiff meets the financial criteria for commencing this action in forma pauperis, and because plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

[3]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

**\*2** Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 14 of 110

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz,* No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown,* 335 Fed.Appx. 102, 104 (2d Cir. 2009).

## IV. Summary of the Complaint [4]

[4]     Plaintiff annexed exhibits to the complaint. Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the complaint, the Court will consider the complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.,* 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz,* No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in plaintiff's complaint with the utmost leniency. *See, e.g.,* *Haines v. Kerner,* 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**\*3** Plaintiff, an inmate currently being held at Mid-State Correctional Facility ("Mid-State C.F."), asserts claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The incidents that form the foundation for this complaint occurred while plaintiff was confined at Elmira Correctional Facility ("Elmira C.F."). *See* Compl., *generally.* On July 13, 2013, plaintiff filed a grievance claiming that defendants Officer Copestick ("Copestick") and Officer Schieber ("Schieber") harassed him, on more than one occasion, about his medication. *See id.* at 6; *see* Dkt. No. 1-1 at 3-5. On August 5, 2013, after an investigation into the allegations, the Superintendent of Elmira C.F. denied plaintiff's grievance. *See* Dkt. No. 1-1 at 5.

On September 30, 2013, plaintiff was on his way to the masjid to participate in Ramadan when he was stopped by Copestick and Schieber and directed to the wall for a pat-frisk. *See* Compl. at 5. While plaintiff's hands were on the wall, Schieber "violently kicked" his legs from underneath him. *See id.* Schieber "stomped" on plaintiff's ankles while Copestick attempted to choke plaintiff. *See id.* During the assault, the officers yelled racial slurs. *See id.* Defendant Sergeant Collerman ("Collerman") watched the officers beat plaintiff. *See* Compl. at 5. As a result of the attack, plaintiff's eyeglasses were broken, his ankle was swollen, and he could not walk. *See id.* at 5, 9.

At approximately 5:00 p.m., plaintiff received medical treatment for complaints of pain in his right big toe and swelling in his right foot. *See* Dkt. No. 1-1 at 19. Plaintiff

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 15 of 110

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

received Motrin and was advised to follow with sick call requests, if needed. *See id.* A "use of force/inmate injury" report was compiled.[5] *See id.* At approximately 7:15 p.m., plaintiff, a diabetic, told a medical provider that he had not received his daily "medication." *See id.* The provider ordered various medications to be delivered to plaintiff on a daily basis. *See id.*

[5]     The Use of Force report was not annexed as an exhibit to the complaint.

On October 1, 2013, plaintiff received a misbehavior report charging him with assault on staff and with refusing a direct order and search.[6] *See* Compl. at 5. On the same day, plaintiff was placed in confinement in the Special Housing Unit ("SHU"). *See* Dkt. No. 1-1 at 19. On October 3, 2013, plaintiff attended a Hearing regarding the misbehavior report.[7] *See* Dkt. No. 1-1 at 10. On November 3, 2013, plaintiff received a copy of the hearing disposition dismissing all charges. *See* Dkt. No. 1-1 at 11; Dkt. No. 1 at 5.

[6]     The name of the officer who served the misbehavior report is not clearly legible on the Hearing Disposition annexed as an exhibit. *See* Dkt. No. 1-1 at 10. Plaintiff does not allege that Copestick, Schieber, or Collerman delivered the report. The disposition form indicates that the charges were reported by Schieber. *Id.* The misbehavior report was not annexed as an exhibit to the complaint.

[7]     The officer who presided over the hearing was a Captain at Elmira C.F. However, the name of the hearing officer is not clearly legible. *See* Dkt. No. 1-1 at 10-11.

On November 3, 2013, plaintiff was released from the SHU. *See* Compl. at 5. While plaintiff was in the SHU, he was unable to participate in Ramadan, denied religious meals, denied parole, and excluded from mental health programs. *See id.*

Construed liberally, the complaint contains the following claims: (1) Copestick and Schieber violated plaintiff's Eighth Amendment rights with use of excessive force (Fifth, Fifteenth, Twentieth, and Twenty-Second Causes of Action); (2) Collerman failed to protect plaintiff from the assault in violation of plaintiff's Eighth Amendment rights (Fifteenth Cause of Action); (3) defendants were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment (Sixth, Seventh, and Fifteenth Causes of Action); (4) Copestick and Schieber retaliated against plaintiff in violation of plaintiff's First Amendment rights (Twenty-First Cause of Action); (5) plaintiff's First Amendment rights to religious freedom were violated (Fourth Cause of Action); (6) plaintiff's Fourteenth Amendment rights to due process and equal protection were violated (First, Second, Third, Sixth, Sixteenth, and Eighteenth Causes of Action); (7) defendants failed to investigate plaintiff's complaints and follow grievance procedures (Tenth and Thirteenth Causes of Action); (8) perjury claims against officers who filed the misbehavior report (Eleventh and Seventeenth Causes of Action); and (9) supervisory claims against DOCCS (Eighth, Ninth, Twelfth, Fourteenth, Nineteenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, and Twenty Sixth Causes of Action). *See* Compl., *generally.* Plaintiff seeks compensatory damages, injunctive relief, and criminal charges against defendants (Eleventh and Seventeenth Causes of Action). *See* Compl. at 9-13.

## V. Analysis

### A. Eleventh Amendment

**\*4** The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see Quern v. Jordan,* 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York,* No. 93-CV-1298 (RSP/GJD), 1996 W L 156764 at \*2 (N.D.N.Y. 1996).

Here, insofar as plaintiff seeks an award of money damages pursuant to Section 1983 against DOCCS, those claims are

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 16 of 110

2016 WL 6267968

dismissed as plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983); *see Meehan v. Kenville*, 555 Fed.Appx. 116 (2d Cir. 2014); *see Simmons v. Gowanda Corr. Facility*, No. 13-CV-0647, 2013 WL 3340646, at *1 (W.D.N.Y. July 1, 2013) ("the New York State Department of Corrections and [the named correctional facility] enjoy the same Eleventh Amendment immunity from suit in federal court as enjoyed by the state itself") (quoting *Posr. v. Court Officer Shield No. 207*, 180 F.3d 409, 411 (2d Cir. 1999)).

### B. Eighth Amendment

#### 1. Excessive Force Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) ("[t]he Supreme Court has emphasized that the nature of the force applied is the core judicial inquiry in excessive force cases —not whether a certain quantum of injury was sustained."). "Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness." *Wynter v. Ramey*, No. 11-CV-0257 (DNH/DEP), 2013 W L 5465343, at *5 (N.D.N.Y. Sept. 30, 2013) (citations omitted).

Plaintiff has identified the time, location and individuals involved in the alleged assault. Thus, the Court finds that plaintiff's Eighth Amendment excessive force claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Failure To Intervene

**\*5** The failure of corrections officers to employ reasonable measures to protect an inmate from violence by others may rise to the level of an Eighth Amendment violation. *See Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985). Moreover, allegations that an officer failed to intervene and prevent assaults are sufficient to state an Eighth Amendment failure to protect claim. *See Rogers v. Artus*, No. 13-CV-21, 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013). To establish liability under a failure to intervene theory, a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). In order to succeed on a claim of failure to protect, the inmate "must establish both that a substantial risk to his safety actually existed and that the offending [defendant] knew and consciously disregarded that risk." *See Walsh v. Goord*, No. 07-CV-0246, 2007 WL 1572146, at *9 (W.D.N.Y. May 23, 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1970)). In addition, a failure-to-protect claim requires a showing that prison officials acted with "deliberate indifference" to the inmate's safety. *Morales v. New York State Dep't of Corr.*, 842 F.2d 27, 30 (2d Cir. 1988).

At this early stage of the proceeding, plaintiff has alleged enough to require a response from Collerman to plaintiff's claim that he failed to protect plaintiff from the assault by Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 3. Deliberate Indifference to Serious Medical Needs

To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment deliberate indifference

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 17 of 110

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

medical claim "requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

In this instance, even assuming plaintiff's injuries were sufficiently serious, plaintiff must allege facts to demonstrate that defendants acted with a sufficiently culpable state of mind. *See Hathaway*, 99 F.3d at 553. Plaintiff claims that his medical treatment was inadequate because his ankle was not x-rayed until he was transferred to "his next facility," two months after the alleged incident. *See* Compl. at 10. "When the basis of a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (citing *Chance*, 143 F.3d at 702). "Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, this Court has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Demata*

*v. New York State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999) (internal citations omitted).

**\*6** Here, the complaint is void of any facts establishing that any defendant deliberately delayed plaintiff's medical treatment. On the day of the alleged attack, plaintiff received medical attention and prescription medication. *See* Dkt. No. 1-1 at 19. Plaintiff was treated on three other occasions in October 2013 for foot pain before undergoing x-rays on November 14, 2013. Dkt. No. 1-1 at 20-21. During those visits, plaintiff received ice packs, Motrin, and refused Ibuprofen. See id. Plaintiff does not allege that his condition deteriorated during that time. *See Rodriguez v. City of New York*, 802 F.Supp. 477, 482 (S.D.N.Y. 2011) (finding that the plaintiff did not establish that his condition worsened as a result of a delay between his request and receipt of medical attention). Plaintiff does not allege that he sought and was refused medical treatment during this two month time period. *See Kee v. Hasty*, No. 01 Civ. 2123, 2004 W L 807071, at \*29 (S.D.N.Y. April 14, 2004) (holding that the plaintiff's Eighth Amendment claims were overly conclusory because the inmate failed to specify the dates on which he was denied proper treatment, the nature of his needs on those dates, and the nature of the treatment that was purportedly denied by the defendants). The complaint lacks any facts to plausibly suggest that any defendant knew of the severity of plaintiff's injury and the risk posed by any delay in his treatment.

Plaintiff, a diabetic, also claims that he was unable to read or see for over one year because his eye glasses were not replaced until over a year after the assault. *See* Compl. at 10. The complaint does not contain any facts suggesting that plaintiff made any complaints or sick call requests to any defendant related to his eyeglasses. Plaintiff also failed to assert facts suggesting that he made any defendant "aware of the serious harm could occur" if he was not provided with his glasses. *See Myrie v. Calvo/Calvoba*, 591 F.Supp.2d 620, 628 (S.D.N.Y. 2008) (holding that the complaint did not suggest that any defendant was deliberately indifferent to the plaintiff's vision problems).

Plaintiff's Eighth Amendment allegations are also subject to dismissal based upon the failure to plead personal involvement on the part of any defendant. It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, "a Section 1983

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 18 of 110

plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 W L 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). The complaint lacks any facts suggesting that Copestick, Schieber, or Collerman were involved in plaintiff's medical treatment or refused to allow plaintiff to receive medical attention. In the absence of factual allegations sufficient to plausibly suggest that any defendant was personally involved, the complaint fails to state a cognizable claim against him. Consequently, plaintiff's Eighth Amendment claims for deliberate indifference to plaintiff's medical needs are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim.

### C. First Amendment

#### 1. Retaliation

Plaintiff alleges that Copestick and Schieber assaulted him in retaliation for plaintiff's grievance against them. *See* Compl. at 6,13. To state a claim of retaliation under the First Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)). The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491, *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988).

**\*7** It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed.Appx. 140, 144 (2d Cir. 2001); *Graham v. R.J. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line" defining the limits of the temporal relationship, courts in the Circuit have held that an adverse action taken within three months after a protected activity can reasonably be perceived as retaliatory. *See Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001); *see also Ashok v. Barnhart*, No. 01-CV-1311, 289 F.Supp.2d 305, 314 (E.D.N.Y. Oct. 30, 2003) (the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months).

At this juncture, the Court finds that plaintiff's retaliation claims against Copestick and Schieber survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Religious Claims

Plaintiff alleges that the defendants violated his religious rights because he was unable to participate in Ramadan and denied his religious meals as a direct result of the false misbehavior report. Dkt. No. 1 at 5-6.

Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, [however,] are the interests of prison officials charged with complex duties arising from administration of the penal system." *Id.* (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment Free Exercise claim, a plaintiff must allege that (1) the practice asserted is religious in the person's scheme of beliefs, and that the belief is sincerely held; (2) the challenged practice of the prison officials infringes upon the religious belief; and (3) the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir.

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

1988) (citations omitted). A prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing *Ford*, 352 F.3d at 591). [8] A religious belief is "sincerely held" when the plaintiff subjectively, sincerely holds a particular belief that is religious in nature. *Ford*, 352 F.3d at 590. A prisoner's sincerely held religious belief is "substantially burdened" where "the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 476–77 (2d Cir. 1996). Once a plaintiff establishes that a sincerely held religious belief has been substantially burdened, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct; the burden remains with the prisoner to show that these articulated concerns were irrational." *Salahuddin*, 467 F.3d at 275 (quoting *Ford*, 352 F.3d at 595) (punctuation omitted).

[8]     The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.' " *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. May 6, 2016) ("We have not yet decided whether a prisoner asserting a free-exercise claim must, as a threshold requirement, show that the disputed conduct substantially burdened his sincerely held religious beliefs."); *Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim). In the absence of any controlling precedent to the contrary, I have applied the substantial-burden test in this matter.

**\*8** In this case, plaintiff has not alleged who issued the misbehavior report and it is not attached to the complaint. An inmate "has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997). While a false misbehavior report may give rise to a claim under § 1983 "when done in retaliation for the exercise of a

constitutional right," *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015), here there is no such allegation. While the deprivation of religious meals in SHU may be sufficient to state a claim, *see Williams v. Does*, 639 Fed.Appx. 55, 56 (2d Cir. 2016); *Skates v. Shusda*, No. 9:14-CV-1092 (TJM/ DEP), 2016 WL 3882530, at \*\*4-5 (N.D.N.Y. May 31, 2016), here there is no indication that the defendants had any personal involvement in that conduct. The allegations, without more, fail to plausibly suggest that any defendant burdened plaintiff's right to freely practice his religion. Thus, plaintiff's First Amendment claims against are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Fourteenth Amendment

#### 1. Equal Protection/Discrimination

Plaintiff claims that the September 30, 2013 assault was racially motivated. *See* Compl. at 6, 12. "When verbal harassment and simultaneous physical abuse ... are considered together, [courts] have little doubt concluding that plaintiff's allegations [are] sufficient to state a § 1983 claim for discrimination on the basis of race. *Cole v. Fischer*, 379 Fed.Appx. 40, 43 (2d Cir. 2010). "Under the Fourteenth Amendment's Equal Protection clause, a plaintiff may be able to recover for a physical assault that would not meet the objective threshold for Eighth Amendment excessive force claims, if the defendant's conduct was motivated by racial or religious discrimination." *Bhuiyan v. Wright*, No. 9:06-CV-409 ATB, 2011 WL 1870235, at \*9 (N.D.N.Y. May 13, 2011) (citation omitted).

At this juncture, plaintiff has sufficiently plead a Fourteenth Amendment equal protection claim to warrant a response from Copestick and Schieber. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

#### 2. Due Process

Plaintiff claims that defendants violated his due process rights when they failed to replace plaintiff's eyeglasses. *See* Compl. at 10. Plaintiff also asserts that his Fourteenth Amendment rights were violated because he was improperly confined to the SHU without a hearing as a result of a

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 20 of 110
Houston v. Collerman, Not Reported in Fed. Supp. (2016)
2016 WL 6267968

false misbehavior report. *See id.* at 10. During his SHU confinement, was allegedly unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from mental health programs. *See id.*

### a. Property Claim

The Supreme Court has held that the negligent or intentional deprivation of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (An alleged loss of property, "whether intentional or negligent – will not support a due process claim redressable under § 1983 if 'adequate state post-deprivation remedies are available.' ") (quoting *Hudson*, 468 U.S. 533). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Because plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983. *See Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983) (per curiam); *see also Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 360, 473-74 (S.D.N.Y. 1998) (dismissing the plaintiff's claim that defendants destroyed his eyeglasses in violation of his due process rights). Thus, plaintiff's due process claims related to his eyeglasses are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. SHU Confinement

**\*9** To establish a due process claim, plaintiff must establish: "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citation and internal quotation marks omitted). In this case plaintiff alleges that the false misbehavior report resulted in a SHU sentence.[9]

[9]    The complaint contains conflicting factual allegations related to the length of plaintiff's SHU confinement. Plaintiff claims that after "one month of being housed in SHU," he was released. *See*

Compl. at 5. In the Third Cause of Action, plaintiff claims that he served "over 60 days in SHU." *See id.* at 9.

A prisoner "has a liberty interest that is implicated by SHU confinement if it 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *J.S. v. T'Kach*, 714 F.3d 99, 106 (2d Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). In making this determination courts are to consider, "among other things, the duration and conditions of confinement." *J.S.*, 714 F.3d at 106; *Davis v. Barrett*, 576 F.3d 129, 133 (2d Cir. 2009). The conditions of confinement are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis*, 576 F.3d at 134; *Palmer*, 364 F.3d at 66 n.4.

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer*, 364 F.3d at 65. Where the plaintiff is confined for "an intermediate duration –between 101 and 305 days – 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.' " *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65; *see Davis*, 576 F.3d at 133.[10]

[10]    The Second Circuit has noted that "[i]n the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short –less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual SHU conditions." *Palmer*, 364 F.3d at 65-66; *see Davis*, 576 F.3d at 133. Absent allegations in the complaint that the conditions of confinement were in some way

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 21 of 110

atypical, however, many courts in this Circuit have granted motions to dismiss claims by plaintiffs with confinement exceeding thirty days when the plaintiffs failed to allege that the conditions of confinement were in some way atypical. *See, e.g., Acevedo v. Fischer*, No. 12-CV-6866, 2014 WL 5015470 at *15 (S.D.N.Y. Sept. 29, 2014) (citing cases involving confinements of between forty and fifty days which were dismissed for failure to allege a protected liberty interest because there were no allegations of unusual confinement).

 **\*10** In this case, the duration of the confinement, 30 to 60 days, "was not long enough to constitute an atypical and significant deprivation by itself," and the Court therefore must "look to the conditions of confinement." *Palmer*, 364 F.3d at 66; *see also Davis*, 576 F.3d at 133. Plaintiff claims that while he was confined in the SHU, he was unable to participate in Ramadan, denied his religious meals, denied parole, and excluded from his mental health program. *See* Compl. at 5, 10; Dkt. No. 1-1 at 1.

It is well established that prisoners do not have a constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). "Where a state has created a statutory scheme for parole, the Due Process Clause protects prisoners insofar as they 'have a legitimate expectancy of release that is grounded in the state's statutory scheme.' " *Barna v. Travis*, 239 F.3d 169, 170–72 (2d Cir. 2001) (per curiam) (citing *Greenholtz*, 442 U.S. at 11–13). "New York's parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Barna*, 239 F.3d at 171. Plaintiff has also failed to plead that his inability to participate in mental health programs impacted a protected liberty interest. *See Nieves v. Prack*, No. 6:15-CV-6101, 2016 W L 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability ... to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is ... speculative and fails to allege interference with a protected liberty interest.") (citations omitted). Here, the complaint lacks facts establishing when, how many times, and who deprived plaintiff of the right to attend his mental health program. With respect to plaintiff's religious claims, courts have found that the deprivation of communal religious services does not constitute an atypical and significant hardship. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (finding that eighteen days in administrative segregation, including loss of exercise and access to religious services, did not constitute atypical and significant hardship); *Holland v.*

*Goord*, No. 05-CV-6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (holding the inability to attend Muslim services and celebrate the end of Ramadan while confined in the SHU for seventy-seven days is not an atypical hardship).

Even assuming that plaintiff had pled facts sufficient to show that his confinement imposed an atypical and significant hardship, however, and therefore pled the existence of a valid liberty interest, the complaint fails to state a claim based upon the Fourteenth Amendment and due process. It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). In this case, a hearing regarding the charges was held within two days of plaintiff's receipt of the misbehavior report. Plaintiff does not allege that he was denied any procedural due process during that hearing. Moreover, the complaint lacks facts suggesting that any named defendant issued the misbehavior report or presided over the disciplinary hearings. Based upon the aforementioned, plaintiff's Fourteenth Amendment claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See Livingston v. Kelly*, 561 F.Supp.2d 329, 332 (W.D.N.Y. 2008) (dismissing plaintiff's false-report claims because the plaintiff failed to allege that the disciplinary hearings on the reports did not meet constitutional due process standards).

### E. Failure to Respond to Grievances and Failure to Investigate

 **\*11** Plaintiff also claims that his constitutional rights were violated because the facility grievance program is "never followed." *See* Compl. at 11. There is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00. Civ. 2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *Mimms v. Carr*, No. 09-CV-5740, 2011 W L 2360059, at *10 (E.D.N.Y. June 9, 2011) ("It is well-established that

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 22 of 110

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

prison grievance procedures do not create a due-process-protected liberty interest.") (citing cases). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

To the extent that plaintiff attempts to assert a separate constitutional claim based upon the Inspector General's failure to investigate, the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. *Bernstein v. New York*, 591 F.Supp.2d 448, 460 (S.D.N.Y. 2008) (collecting cases); *Torres v. Mazzuca*, 246 F.Supp.2d 334, 341-42 (S.D.N.Y. 2003) (Prisoners do not have a due process right to a thorough investigation of grievances.); *DeShaney v. Winnebego Soc. Servs.*, 489 U.S. 189, 196 (1989) (The Due Process Clause confers no right to governmental aid, even where that aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual); *Pine v. Seally*, No. 9:09-CV-1198, 2011 W L 856426, at *9 (N.D.N.Y. Feb. 4, 2011) ("the law is ... clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials") (citing *Bernstein*, 591 F.Supp.2d at 460).

In this regard, plaintiff's claims do not involve a constitutional violation and are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F. Cause of Action for Criminal Charges/Perjury

"New York does not recognize a common law cause of action for [...] perjury." *Harris v. Summers*, No. 5:14-CV-0013 (LEK/DEP), 2014 W L 1340032, at *5 (N.D.N.Y. Apr. 3, 2014) (citing *Carvel v. Ross*, No. 12-CV-0722, 2011 W L 856283, at *12 (S.D.N.Y. Feb. 16, 2011) (dismissing the plaintiff's perjury claim because "there [is] no private right of action" for perjury)). Moreover, plaintiff's claim is not actionable because it is well-settled that a private citizen does not have a constitutional right to bring a criminal complaint against another individual. *Harper v. New York Child Welfare Comm'rs*, No. 3:12-CV-0646 (NAM/DEP), 2012 WL 3115975, at *4 (N.D.N.Y. May 14, 2012) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Consequently, plaintiff's request to charge defendants with "perjury" is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### G. Injunctive Relief Against DOCCS

Plaintiff demands injunctive relief directing DOCCS to require "each officer" to wear body cameras to prevent future assaults and other related injunctive relief. *See* Compl. at 10-12. Plaintiff is presently confined at Mid-State C.F. and therefore, plaintiff's request for injunctive relief involving changes to the operation of security at Elmira C.F., is dismissed as moot. *See Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *23 (S.D.N.Y. March 8, 2012) (dismissing the plaintiff's claim for injunctive relief because the plaintiff had been released from prison).

**\*12** Even assuming plaintiff's request is broader and intended to encompass all DOCCS facilities, the request is nonetheless improper and subject to dismissal. The PLRA provides "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of the particular plaintiff." 18 U.S.C. § 3626(a)(1)(A). "[A] proposed order directing the installation of securities cameras – is beyond the narrow scope permitted by the PLRA." *Barrington v. New York*, 806 F.Supp.2d 730, 750 (S.D.N.Y. 2011) (dismissing the plaintiff's request for injunctive relief seeking an order directing Green Haven to install security cameras as overly broad and unnecessary to correct the alleged past violations of his rights). Accordingly, plaintiff's request for injunctive relief is dismissed.

### VI. Conclusion

**ORDERED** that plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**; [11] and it is further

[11]     Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form, and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 23 of 110

Houston v. Collerman, Not Reported in Fed. Supp. (2016)

2016 WL 6267968

**ORDERED** that the following claims are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) plaintiff's § 1983 claims for monetary damages against DOCCS; (2) constitutional claims based upon the failure to adhere to the grievance policy and investigate; and (3) plaintiff's claims related to perjury and filing criminal charges against defendants; and it is further

**ORDERED** that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment claims against defendants for deliberate indifference to plaintiff's serious medical needs; (2) First Amendment freedom of religion claims; (3) Fourteenth Amendment due process claims; and (4) claims for injunctive relief against DOCCS [12]; and it is further

[12]   If plaintiff wishes to pursue any claim dismissed without prejudice, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

**ORDERED** that DOCCS is **DISMISSED** as a defendant herein; and it is further

**ORDERED** that the following claims survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response: (1) the Eighth Amendment use of excessive force claims against defendants Copestick and Schieber; (2) the Eighth Amendment failure-to-intervene claim against defendant Collerman; (3) the First Amendment retaliation claims against defendants Copestick and Schieber; and (3) the Fourteenth Amendment equal protection claims against Copestick and Schieber; and it is further

**ORDERED**, that the Clerk shall issue summons and forward them, along with copies of the Complaint, to the United States Marshal for service upon the remaining defendants. The Clerk shall forward a copy of the Summons and Complaint to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**\*13 ORDERED**, that a response to the complaint be filed by the remaining defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure;

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), the Clerk of the Court is directed to provide plaintiff with copies of opinions from Westlaw and the Federal Appendix cited in this Decision and Order; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on plaintiff in accordance with the Local Rules.

Dated: October 26, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6267968

---

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 24 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)
2021 WL 3518439

2021 WL 3518439
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 04/13/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, 841 Western Avenue, Apartment 2A, Albany, New York 12203, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, UNITED STATES MAGISTRATE JUDGE

#### I. In Forma Pauperis

*1 Plaintiff pro se Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. See Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty Against Adethia Keshia Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

The Court has reviewed plaintiff's IFP application and determines that she financially qualifies to proceed IFP for purposes of filing only.[1]

---

[1]    Plaintiff is still financially responsible for any other fees or costs she may incur.

#### II. Legal Standards

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting her to proceed with her action. As plaintiff is representing himself, the court must afford plaintiff special solicitude; thus, it is to consider her claims "liberally" and 'interpret them 'to raise the strongest arguments that they suggest.' " Cold Stone Creamery, Inc. v. Gorman, 361 F. App'x 282, 286 (2d Cir. 2010) (summary order) (quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006)).

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought ....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

*2 Further, Rule 10 of the Federal Rules provides in pertinent part that:

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 25 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3518439

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III. Initial Review

### A. Plaintiff's Complaint

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, et seq. On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." Id.

Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. Included with the exhibits to the complaint is an Equal Employment Opportunity Commission ("EEOC") dismissal notice [2] noting that plaintiff's EEOC charge was not timely filed and the EEOC was closing its file. Dkt. No. 1-1. The remainder of the exhibits appended to the complaint appear to be an 80-page letter relating to apparent visa fraud that plaintiff sent to The US Department of Justice; the United States Department of Homeland Security, Immigration and Customs Enforcement; and the Federal Bureau of Investigation; as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff. Dkt. No. 1-2 at 81-82.

[2]     It appears that the EEOC dismissal notice is dated September 10, 2020. Dkt. No. 1-1.

*3 The supplement plaintiff filed on March 15, 2021, is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. Id. The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy,

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 26 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3518439

New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021, appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." See dkt. no. 7.

Plaintiff's complaint discusses Allison Carolyn Rattray, the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. Id. Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill the employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." Id. at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," force plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. Id. at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom stables has visual and audio devices inside of them." Id. at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. See generally Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican

> police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was born on the day the crucifixion was celebrated, that is Easter and Good Friday.

Id. at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC FirstCarribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

Id. at 14.

As for plaintiff's causes of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 27 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)
2021 WL 3518439

of the global organ Donor list. The
staff is Allison Carolyn Rattray.

**\*4**  Dkt. No. 1 at 69. As for a second cause of action is

employment discrimination – I chose a
career path to be an Attorney-At-Law.
Allison Carolyn Rattray (maiden name
Smith) my (former) then manager at
CIBC had be fired; told me that (1) I
am not worthy to be an Attorney-at-
Law because of my Race (2) I was not
worthy to be in the same Profession
as her. She has been defaming my
character ever since.

Id. at 70. Third cause of action is listed as employment
discrimination - compensation: denied increases in my salary
verbally communicated to be by Ms. Cherlyn Blackman
my Senior Manager of 3% in 2004; Denied Promotion
communicated to be my Human Resources Regional Director,
Jerime Cjnttihs-Bell; denied fringe benefits that accompanied
my five (5) CIBC Achievers awards – my salary was split
and part paid to my aunt." Id. In the prayer for relief, plaintiff
requests:

(1) an Injunction(s) for Criminal
Indictment(s) of Allison Carolyn
(Smith) Rattray, Corporate Secretary
and Legal Counsel CIBC for her
forced Prostitution of The Plaintiff and
Others; (2)An Injunction to prevent
and stop all Prostitution or abuse of
The Plaintiff, (3) Restitution(s) by
CIBC for lost Incomes and fringe
benefits[; and] (4) Job Reference letter
from CIBC and an apology and my
land Title Deed.

Id. at 71.

**B. Analysis**

First, plaintiff's complaint fails to meet the pleading
requirements of Rules 8 and 10. Her complaint does not
present a short and plain statement of the claim showing that
she is entitled to relief. FED. R. CIV. P. 8. Further, she does
not present her claims in numbered paragraphs, limited to one
"circumstance" per paragraph. FED. R. CIV. P. 10. Instead,
her complaint is a lengthy, disjointed, difficult to follow
narrative. Her complaint clearly "presents far too a heavy
burden in terms of defendants' duty to shape a comprehensive
defense and provides no meaningful basis for the Court to
assess the sufficiency of their claims." Gonzales, 167 F.R.D.
at 355.

Second, plaintiff's claims, insofar as she seeks to bring them
under Title VII are (1) barred by the statute of limitations,
and (2) fail to state a claim for employment discrimination in
violation of Title VII. [3] To the extent plaintiff suggests that
she was discriminated against in violation of Title VII insofar
as she was told that she was inadequate due to her race or
denied promised promotions because of her race, dkt. no. 1 at
70, even if plaintiff could provide additional factual support
and clarification for the alleged discrimination, plaintiff
provides that the alleged discrimination occurred as early
as 1995 until 2004, and would be beyond the statute of
limitations of Title VII. Indeed, plaintiff's entire employment
with defendant occurred outside of the statute of limitations as
she suggests that her employment began in January 1995 and
that she was terminated in March 2009. Dkt. No. 1 at 52-53.
Thus, the complained-of actions occurred more than 300 days
prior to when plaintiff appears to have filed a complaint with
the EEOC. See Gunning v. New York State Just. Ctr. for
Prot. of People with Special Needs, No. 1:19-CV-1446 (GLS/
CFH), 2020 WL 5203673, at \*3 (N.D.N.Y. Sept. 1, 2020)
("Title VII's statute of limitations bars claims based upon
events that occurred more than 300 days prior to filing a
charge of discrimination with a state or local employment
agency, and, therefore, "[a] plaintiff may bring a claim under
Title VII only for acts of discrimination that occurred within
the statutory period set by 42 U.S.C. § 2000e–5(e)(1).")
(quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 220
(2d Cir. 2004)). The undersigned notes that plaintiff does not
indicate when she filed a complaint with the EEOC. However,
she submits the EEOC's dismissal letter, dated September
10, 2020, which states that plaintiff did not timely file a
complaint with the EEOC. Dkt. No. 1-1. As plaintiff likely
filed her EEOC complaint in 2020, [4] appears to have been

2021 WL 3518439

last employed by defendant in 2009, and complains of alleged employment discrimination occurring as early as 1995, her filing of an EEOC complaint in 2020 is clearly more than 300 days after the alleged discrimination occurred. Thus, any cognizable Title VII claims arising out of her employment with defendant are barred by the statute of limitations.

[3]     A plaintiff establishes "a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class." Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) overruled on other grounds Zarda v. Altitude Express, Inc., 883 F.3d 100 (2d Cir. 2018).

[4]     As the EEOC dismissal notice is dated September 10, 2020, the Court makes the reasonable inference that plaintiff filed her EEOC complaint some time in 2020.

**\*5** However, even if the statute of limitations was not an issue, plaintiff's claims still must fail because plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails establish this Court's jurisdiction under federal question or diversity jurisdiction.[5] Plaintiff makes several disjointed, confusing claims about being sold as a prostitute against her will by defendant's employees and other nonparties, defendant's employees and others murdering innocent people, defendant's employees drinking plaintiff's blood, and being stalked and prostituted by various officials from Jamaica and employees of defendant's company. See generally dkt. nos. 1, 4, 6, 7. Plaintiff makes several allegations against her former supervisor, Ms. Rattray, and says the various physical wrongdoings Ms. Rattray committed against plaintiff were all due to "The employment agreement between The Plaintiff and CIBC FirstCarribean Jamaica." Dkt. No. 1 at 60-61. Although plaintiff's submissions seem to suggest that she was employed by defendant at some point in time, and that a supervisor told her she could not be a lawyer due to her race and denied promised salary increases for unclear reasons, nothing about the factual allegations pleadings suggest that she presents a valid employment discrimination claim under Title VII or any other statute.

[5]     Even if this Court were to assess this case as seeking to proceed under diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the plaintiff has also failed to set forth a cognizable state law claim. Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) (quoting 28 U.S.C. § 1332(a)) (noting that diversity jurisdiction "confers original jurisdiction on the federal district courts with respect to 'all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States.' ").

The Court is at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in murder scheme that is somehow related to her Easter birthday. See Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

Further, to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction. See generally Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); McFadden v. Ortiz, 5:12-CV-1244(MAD/ATB), 2013 WL 1789593 (N.D.N.Y. Apr. 26, 2013) (noting that there is no private right of action to enforce either state or federal criminal statutes).

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 29 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3518439

Next, plaintiff files an "emergency motion" for the Death Penalty, [6] which appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a lease [sic]," and other similar allegations. See Dkt. No. 5. As discussed above, this Court does not have the authority or jurisdiction to sua sponte impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial.

[6]      This "emergency motion" notes that it is presented to the United States Supreme Court, but contains a caption including this Court. It is unclear if this is a document plaintiff intends to submit before this Court, or before the United States Supreme Court. See dkt. no. 5.

  *6  Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may sua sponte dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, 99-MC-0304, 99-MC-0408, 1999 WL 1061841, at *2 (D. Conn. Nov. 8, 1999) (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint."). Thus, although the Court must show special solicitude to pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and is to exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.

Even if, arguendo, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." See Bennett v. Mnuchin, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing Denton v. Hernandez, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describe[e] fantastic or delusional scenarios."); Brown v. New York State Educ. Dept., 8:18-CV-169 (TJM/CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing pro se plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be clearly futile.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be granted for purposes of filing only; and it is

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3518439

**RECOMMENDED**, that plaintiff's complaint (dkt. no. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be **DISMISSED**; and it is further

**RECOMMENDED**, that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be **DISMISSED AS MOOT**.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [7]

[7]   If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3518439

---

**End of Document**          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   7

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 31 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3204860

2021 WL 3204860
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Myrna Althia Alicia WALKER, Plaintiff,

v.

CIBC LIMITED, Defendant.

1:20-CV-1337 (TJM/CFH)
|
Signed 07/29/2021

**Attorneys and Law Firms**

Myrna Althia Alicia Walker, Albany, NY, Pro Se.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

**\*1** This case was before the Hon. Christian F. Hummel, United States Magistrate Judge, for an initial review of plaintiff's complaint and other filings pursuant to 28 U.S.C. § 1915(e)(2)(B). Judge Hummel recommends that plaintiff's complaint (dkt. no. 1) be dismissed with prejudice; that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed; and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *See* April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Plaintiff did not file objections directed to Judge Hummel's recommendations, and the time to do so has expired. Plaintiff did, however, file an amended complaint. For the reasons that follow, the Court adopts Judge Hummel's recommendations, and independently reviews plaintiff's amended complaint and finds it fails to assert viable causes of action.

## II. DISCUSSION

### a. Complaint

As Judge Hummel explains, plaintiff *pro se* Myrna Althia Alicia Walker purported to commence this action on October 28, 2020, by submitting a complaint and application to proceed in forma pauperis ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 1 ("Compl."); Dkt. No. 2. On March 15, 2021, plaintiff submitted a supplement to her complaint. Dkt. No. 4. On April 6, 2021, plaintiff submitted an additional filing entitled "Emergency Petition for the Death Penalty

Against Adethia Keisha Fitten and Others on the Principle Found in the Law of Necessity." Dkt. No. 5. On April 7, 2021, plaintiff submitted an additional 86 pages to supplement to her complaint. Dkt. Nos. 6, 7. On April 8, 2021, plaintiff submitted additional exhibits and a letter requesting to file those exhibits under seal. Dkt. No. 8.

Plaintiff purports to bring this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000, *et seq.* On her form Title VII complaint, she indicates that defendant discriminated against her due to her race and color, religion, sex, and "my date of birth – Easter." Compl. at 2. Plaintiff further indicates, through checking the boxes on the form complaint, that defendant terminated her employment, failed to promote, engaged in unequal terms and conditions of employment, retaliated against her, and "forced prostitution; [i]dentity theft, which is used to do Bank frauds & Poisonings." *Id.* Plaintiff's complaint, inclusive of exhibits, is 158 pages long. Dkt. No. 1. The exhibits include an 80-page letter relating to apparent visa fraud that plaintiff sent to the US Department of Justice, the United States Department of Homeland Security, Immigration and Customs Enforcement, and the Federal Bureau of Investigation, as well as an incident report dated May 29, 2019, regarding an apparent rape of plaintiff.

The supplement plaintiff filed on March 15, 2021 is 112 pages long. Dkt. No. 4. The supplement appears to be filings from a complaint plaintiff had before the Supreme Court, Rensselaer County against Unity House of Troy and Joseph Posa. *Id.* The "emergency motion," filed on April 4, 2021, is 22 pages long, with 70 additional pages of exhibits. Dkt. No. 5. These exhibits are (1) various transfer orders and orders of protection plaintiff either sought or obtained against various individuals in family court proceedings in different counties (dkt. no. 5-1); (2) a residential lease agreement from July 2018, for a property in Troy, New York, with landlord Joseph Posa (dkt. no. 5-2); (3) records from a proceeding before the Rensselaer County Supreme Court in a case captioned Myrna Althia Alicia Walker vs. "Change of Name" Heidi Elizabeth Zuach (dkt. no. 5-3); and (4) a lease agreement dated May 2, 2017, between Capital Group Management LLC and plaintiff for a property in Troy, New York (dkt. no. 5-4). The submission filed on April 7, 2021, is 59 pages long and includes various orders of protection, a USPS tracking number report, a Unity House Domestic Violence Services Transitional Housing Program Handbook, a form from the Rensselaer County Department of Social Services, earnings statements, a New York State

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 32 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3204860

incident report from 2018, an eviction notice, a letter from the Unity House Transitional Housing program, a "notice" letter, and a "birth registration" form. Dkt. No. 6-6. The exhibits filed on April 7, 2021 appear to be letters plaintiff sent to the New York State Department of Labor, United States Department of Homeland Security, Immigration and Customs Enforcement, and the EEOC, apparently related to "pandemic unemployment compensation benefits." *See* dkt. no. 7.

**\*2** Plaintiff's complaint discusses Allison Carolyn Rattray, allegedly the Corporate Secretary and Legal Counsel of defendant CIBC First Caribbean International Bank (Jamaica) Limited. Dkt. No. 1 at 3. Plaintiff contends that Ms. Rattray kills unidentified people "with her married name" and drinks plaintiff's blood. *Id.* Apparently, plaintiff contends that Ms. Rattray is or was her "employer" who "uses the drinking blood of the employee to kill employing the employment agreement and the incomes paid by direct deposit as the consideration for the blood that is drank before the killings and the doomings if [sic] innocent persons." *Id.* at 4. Plaintiff also appears to suggest that Ms. Rattray and her husband, "Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica," forced plaintiff to use "illegal psychotropic medicines," cocaine, and alcohol. *Id.* at 5. Plaintiff refers to an employment agreement she signed with Ms. Rattray in 1995 and appears to suggest that since that date, Ms. Rattray "has been stalking the Plaintiff inside her bedroom, bathroom mirror, on her cell phone from 1995 even until today October 20, 2020 even the bathroom staples [sic] has visual and audio devices inside of them." *Id.* at 6. The Complaint then appears to proceed to explain why Ms. Rattray and her various family members are carrying out unspecified killings. *See generally* Dkt. No. 1. Plaintiff further suggests that through her employment with defendant, both defendant and the Commercial Division of the Supreme Court of Jamaica

> has been using me as a sex doll; as sex services; as sex product also incorporating The University of the West Indies Hospital to do surgeries; using illegal force of The Jamaican police; using the illegal Force of the Jamaican Army; using the illegal force of the Jamaican parliament to have men from any where have sex with The Plaintiff because The Plaintiff was

> born on the day the crucifixion was celebrated, that is Easter and Good Friday.

*Id.* at 13. Plaintiff asks the Court for

> an Injunction to stop, restrain and prevent Allison Carolyn Rattray (maiden name Smith), Corporate Secretary and Legal Counsel, CIBC First Carribean Jamaica; her husband, Barrington Andrew Rattray, Senior Judge, The Commercial Division, The Supreme Court of Jamaica, King Street, Kingston, Jamaica, West Indies Deryke Smith, her brother; Lacelles Smith retired lecturer The University of the West Indies, Jamaica, West Indies; and the Rhoda Ford children and others from practicing their religion in a way that results in the death or harm or injury of The Rights of The Plaintiff and or the mother of The Plaintiff and or the siblings of The Plaintiff; and or any member of The Public, which includes anyone in the global community.

*Id.* at 14.

As for plaintiff's first cause of action, plaintiff lists:

> forced religion imposed on The Plaintiff whom is the employee by The Employer, CIBC Limited. The Forced Religion imposed on Myrna Althia Alicia Walker [ ] to kill innocent Persons. The daily murders of innocent Persons is used to supply the demands of the global organ Donor list. The staff is Allison Carolyn Rattray.

Dkt. No. 1 at 69. As for a second cause of action is

employment discrimination – I chose a career path to be an Attorney-At-Law. Allison Carolyn Rattray (maiden name Smith) my (former) then manager at CIBC had me fired; told me that (1) I am not worthy to be an Attorney-at-Law because of my Race (2) I was not worthy to be in the same Profession as her. She has been defaming my character ever since.

*Id.* at 70. The third cause of action is listed as

employment discrimination - compensation: denied increases in my salary verbally communicated to me by Ms. Cherlyn Blackman my Senior Manager of 3% in 2004; Denied Promotion communicated to me by Human Resources Regional Director, Jerime Cjnttihs-Bell; denied fringe benefits that accompanied my five (5) CIBC Achievers awards – my salary was split and part paid to my aunt.

*Id.* In the prayer for relief, plaintiff requests:

(1) an Injunction(s) for Criminal Indictment(s) of Allison Carolyn (Smith) Rattray, Corporate Secretary and Legal Counsel CIBC for her forced Prostitution of The Plaintiff and Others; (2) An Injunction to prevent and stop all Prostitution or abuse of The Plaintiff; (3) Restitution(s) by CIBC for lost Incomes and fringe benefits[; and] (4) Job Reference letter from CIBC and an apology and my land Title Deed.

*Id.* at 71.

Judge Hummel found (a) that plaintiff's complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8 and 10, *see* Dkt. 10 at 8-9; (b) plaintiff's claims under Title VII (1) are barred by the statute of limitations, and (2) fail to state a claim for employment discrimination in violation of Title VII, *see id.* at 9-10; and (c) apart from the Title VII claims, "plaintiff's claims fail to state any cognizable legal claim under the United States Constitution, federal statute, or state law, and ultimately fails [to] establish this Court's jurisdiction under federal question or diversity jurisdiction." *Id.* at 10. Judge Hummel indicated that he was

**\*3** at a loss as to how the allegations in the complaint relate to a valid employment discrimination claim or any valid legal claim. Plaintiff presents a difficult to comprehend series of allegations against various individuals – many of whose connections to her apparent former employer is difficult, if not impossible, to comprehend – who she alleges forced her into prostitution, performed plastic surgeries on her against her will, installed "spying devices" into plaintiff's body, forced her to undergo various injections, and involved plaintiff in a murder scheme that is somehow related to her Easter birthday. *See* Dkt. No. 1 at 56-60. Plaintiff also sets forth unexplained allegations that appear to involve Ms. Rattray and others, such as "an abuse of a veteran of the United States Army by the said Allison Carolyn Rattray" (dkt. no. 1 at 54). Plaintiff submits dozens of pages of exhibits and supplements that appear to relate to cases filed in other courts, orders of protection obtained in other courts, unemployment insurance issues, police reports, and documents sent to various federal agencies. See dkt. nos. 4, 5, 6, 7. The relevance of this deluge of documents is entirely unclear.

*Id.* at 11.

Judge Hummel also concluded that to the extent plaintiff requests injunctions (dkt. no. 1 at 71) to prevent defendant's employees from prostituting or harming plaintiff or seeks some kind of prosecution of defendant's employees for criminal conduct, this Court does not have authority to direct persons to cease engaging in illegal activity through a civil suit as it is not a law enforcement agency. *Id.* at 11-12.

As to plaintiff's "emergency motion" for the Death Penalty, Judge Hummel found that it appears to ask the United States Supreme Court to enforce the death penalty against various individuals who plaintiff contends engaged in "drug assisted surgeries on The Plaintiff herein to induce The Coronavirus

2021 WL 3204860

ahead of the proposed mass vaccination of the US public, which is set for May 1, 2021[,]" implanting maggots into plaintiff's bones, releasing poisons into plaintiff's body, "install[ing] television" and "Netflix Television" into plaintiff's eye and spinal cord, "alter[ing]" plaintiff's "joints to make [her] walk in [sic] all four" to be "displayed as a naked dog on a leash [sic]," and other similar allegations. *See* Dkt. No. 5. Judge Hummel concluded that "this Court does not have the authority or jurisdiction to *sua sponte* impose the death penalty in a civil case nor can it seek the criminal prosecution of individuals or at the request of a plaintiff or decide the ultimate punishment if convicted after a criminal trial." Dkt. 10 at 12.

Judge Hummel concluded that although the Court must show special solicitude to *pro se* litigants, and is to exercise "extreme caution ... in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond, ..." *id.* at 14 (quoting *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted)), the Court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis. Id.* Judge Hummel concluded:

> Even if, *arguendo*, the statute of limitations was not a jurisdictional bar and plaintiff had been able to establish this Court's jurisdiction, the undersigned would still recommend dismissal with prejudice on its initial review as plaintiff's complaint is "factually frivolous." *See Bennett v. Mnuchin*, 6:20-CV-243 (BKS/TWD), 2020 WL 1674068 (citing *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)) (holding that a court may dismiss a factually frivolous claim when the allegations are "clearly baseless," including claims that "describ[e] fantastic or delusional scenarios."); *Brown v. New York State Educ. Dept.*, 8:18-CV-169 (TJM/ CFH), 2018 WL 1865547, at *2 (N.D.N.Y. Mar. 19, 2018) (dismissing *pro se* plaintiff's complaint with prejudice where "it is clear that no federal claim can be stated on these facts[.]"). Accordingly, the undersigned recommends dismissal with prejudice pursuant to 28 U.S.C. § 1915(e) (2)(B)(i) as any leave to amend would be clearly futile.

**\*4** *Id.* at 14. As indicated above, Judge Hummel also recommends that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) be dismissed, and that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) be dismissed as moot. *Id.* at 15.

After examining the record, this Court has determined that the recommendations in the Report-Recommendation and Order are not subject to attack for plain error or manifest injustice. Further, even if plaintiff's amended complaint is treated as an objection, the Court has completed a *de novo* review and has determined to adopt Magistrate Judge Hummel's recommendations for the reasons stated in his report.

### b. Amended Complaint

As indicated, plaintiff filed an amended complaint after Judge Hummel recommended that the complaint be dismissed with prejudice. After a review of the amended complaint, the Court finds that it too must be dismissed with prejudice.

Plaintiff's amended complaint is a form Title VII complaint. *See* dkt. no. 11. She indicates that the defendant is "CIBC Limited/Michael Capatide CEO CIBC." *Id.* at ¶ 3(b). [1] Plaintiff checks the boxes indicating that the defendant discriminated against her on account of her "race or color," "religion," "sex (or sexual harassment)," "national origin," and "other" indicating on the line that follows: "my right to marry; my right to life; my right to work and provide for my daily living expenses." *Id.* at ¶ 6. Where plaintiff is asked to indicate what the complained-of conduct involves, she checked the boxes for "failure to employ," "termination of employment," "failure to promote," "unequal terms and conditions of employment," "retaliation," and "other acts as specified below" after which she writes: "I am being sex trafficked by CIBC First Caribbean staff in lieu of my salary." *Id.* at ¶ 7. In the section of the amended complaint asking for the facts underlying her claims, plaintiff asserts she is being sex trafficked because she was born on Easter and that the sex trafficking is in lieu of her salary paid to her by CIBC First Caribbean Jamaica." *Id.* ¶ 8. She also asserts that "the force" of the Jamaican Police, the Jamaican Judiciary, the Jamaican Hospital, and the University of the West Indies are conspiring with her "Walker relatives used to commit crimes with my identity using identity theft of Myrna Suzette Walker employed by Jamaican government Judge Barrington Andrew Rattray & Allison Carolyn Rattray." *Id.* In addition, she asserts that "Adethia Keisha Fitten is physically cutting me to create presumed consent for the crimes organized by Judge Barrington Andrew Rattray." *Id.*

[1]     At paragraph 3(a) asking to identify the defendant, plaintiff writes: "Not Applicable"

The First Cause of Action alleges "forced organized criminality using the salary that was paid to the plaintiff by

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 35 of 110

Walker v. CIBC Limited, Not Reported in Fed. Supp. (2021)

2021 WL 3204860

CIBC First Caribbean Jamaica January 1, 1995 to March 28, 2009." It also asserts that Myrna Suzette Walker "is a thief," and that "Allison Carolyn Rattray ... hired Myrna Suzette Walker and her five (5) children and Adethia Keisha Fitten to steal and to say that the stealing was done by the plaintiff." Plaintiff also appears to indicate that "to do the stealing," Myrna Suzette Walker "and others" repeatedly physically injure plaintiff. As discussed by Judge Hummel, these allegations do not provide plaintiff with a timely Title VII cause of action, *see, e.g.,* Am. Compl. attach. 4, dkt. no. 11-4 at 1, [2] nor do they provide a basis for the relief plaintiff seeks. *See* Dkt. 11, at 5. [3]

[2]      Dkt. no. 11-4 is a letter from Maureen Kielt, Director of the EEOC Buffalo Local Office to plaintiff in the matter of *Walker v. CIBC* confirming that plaintiff indicated that her "last date of harmed occurred on March 24, 2009, when [she] was terminated," thus making her EEOC administrative claim against CIBC untimely. Dkt. No. 11-4 at 1.

[3]      In the Prayer for Relief, plaintiff requests the Court to grant the following relief:
          1. The plaintiff <u>do not</u> [sic] want to be a party to the religious killing business of Myrna Suzette Walker; her five children; and CIBC First Caribbean Jamaica staff, Allison Carolyn Rattray and her husband Judge Barrington Andrew Rattray, Supreme Court of Jamaica;
          2. The plaintiff do not [sic] want cocaine nor any thing to ingest from anyone, by force or otherwise.
          3. The plaintiff wants full restitution socially, physically, professionally.
          Dkt. 11, at 5 (emphasis in original).

**\*5**  The Second Cause of Action asserts violations of the "Human Rights Act of 1998." The Human Rights Act of 1998 appears to be a law or act of Parliament in the United Kingdom. *See Brady v. Wks. Med. Ctr.*, No. 19-CV-00655-SM, 2019 WL 6529870, at *2 (D.N.H. Nov. 12, 2019)("A law in effect in the United Kingdom bears that title.")(citing Human Rights Act 1998, ch. 42, http://www.legislation.gov.uk/ukpga/1998/42/contents), *report and recommendation approved*, No. 19-CV-655-SM, 2019 WL 6529459 (D.N.H. Dec. 4, 2019); *Simpson v. Dauphin Cty. Hous. Auth.*, No. 1:16-CV-01747, 2017 WL 2375702, at *2, n. 4 (M.D. Pa. Apr. 26, 2017) ("Simpson also references a 'Human Rights Act of 1998,' which as best we can tell

refers to an Act of Parliament of the United Kingdom, not applicable in this jurisdiction."), *report and recommendation adopted*, No. 1:16-CV-1747, 2017 WL 2362510 (M.D. Pa. May 31, 2017). The Human Rights Act of 1998 does not provide plaintiff with a viable cause of actions against the defendant for any events occurring in the Northern District of New York over which this Court would have jurisdiction. *See Brady*, 2019 WL 6529870, at *2.

The Third Cause of Action is confusing but appears to be a claim seeking unpaid wages. *See* dkt. no. 11 at 4 (stating at the start of Third Cause of Action: "The right to my paycheck."). Plaintiff asserts that her aunt Myrna Suzette Walker "assisted by CIBC First Caribbean staff Allison Carolyn Rattray has been falsely selling me as a whore in lieu of my current income(s) from JC Penney, Aerotek, Walmart, Fidelis Care and more." However, Myrna Suzette Walker, Allison Carolyn Rattray, JC Penney, Aerotek, Walmart, or Fidelis Care are not defendants in this action. Further, plaintiff does not assert when it was that she worked at JC Penney, Aerotek, Walmart, or Fidelis Care, or when or where it was that Myrna Suzette Walker and Allison Carolyn Rattray purportedly took actions preventing plaintiff from receiving her wages from these employers. The claim in this regard fails to assert a viable cause of action under Title VII. In addition, in nearly incomprehensible fashion plaintiff ends the Third Cause of Action by asserting: "The rapes of me by co-workers is [sic] recorded and published. Walmart staff a [sic] man named Donnell she [sic] gave permission to live in my apartment as well as Fidelis Care Health Insurance staff- Rashid Rardon." These allegations fail to provide a sufficient basis for the Court to discern any viable cause of action under Title VII or any other law or statute over which the Court would have jurisdiction.

Accordingly, for the reasons set forth above plaintiff's amended complaint will be dismissed. Because the allegations in the amended complaint are factually frivolous, and because plaintiff filed an amended complaint that did not cure the pleading defects pointed out by Judge Hummel, dismissal will be with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as any leave to amend would be futile.

### III. CONCLUSION

For the reasons discussed above, the Court **ACCEPTS AND ADOPTS** Judge Hummel's recommendations in the April 13, 2021 Report-Recommendation & Order, dkt. no. 10. Thus, it is hereby

2021 WL 3204860

**ORDERED** that plaintiff's complaint (dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED** that plaintiff's "Emergency Motion for the Death Penalty" (dkt. no. 5) is **DENIED and DISMISSED**; and it is further

**ORDERED** that plaintiff's letter motion to file exhibits under seal (dkt. no. 8) is **DENIED and DISMISSED as moot**.

Based on the Court's review of the amended complaint, it is hereby

**ORDERED** that plaintiff's amended complaint (dkt. No. 11) is **DISMISSED with prejudice**.

The Clerk of the Court may mark this file as closed.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3204860

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1303706
Only the Westlaw citation is currently available.
United States District Court, D. Minnesota.

CITI MORTGAGE, INC., Plaintiff,

v.

Daniel HUBBARD, Margaret Hubbard,
and Paul Ernest Sellors, Defendants.

Civil No. 13–144 (JRT/JSM).
|
Signed March 31, 2014.

**Attorneys and Law Firms**

Cameron A. Lallier and Thomas A. Harder, Foley &
Mansfield, PLLP, Minneapolis, MN, for Plaintiff.

Daniel Hubbard, Aurora, CO, pro se.

Margaret Hubbard, Aurora, CO, pro se.

Paul E. Sellors, Minneapolis, MN, pro se.

### MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

JOHN R. TUNHEIM, District Judge.

**\*1** This case involves a dispute between Defendants
Daniel Hubbard, Margaret Hubbard, and Paul Sellors
(collectively, "Defendants") and Plaintiff Citi Mortgage,
Inc. ("CitiMortgage") wherein CitiMortgage seeks relief
on the basis of a fraudulent federal court order created
by Defendants. United States Magistrate Judge Janie S.
Mayeron issued a Report and Recommendation ("R &
R") recommending that the Court dismiss the action and
all pending motions for lack of subject matter jurisdiction
because CitiMortgage has failed to either raise a federal
question or establish diversity jurisdiction by demonstrating
an amount in controversy greater than $75,000. The Court
will adopt the R & R over CitiMortgage's objections,
concluding that CitiMortgage has failed to establish a basis
for the Court's jurisdiction, and will dismiss the action without
prejudice.

## BACKGROUND

The relationship between CitiMortgage and Defendants
began with a mortgage on a property in Colorado and
CitiMortgage's attempt to foreclose on the property after
mortgagors Daniel and Margaret Hubbard failed to make
payments. (Aff. of Thomas Harder, Ex. D, July 3, 2013,
Docket No. 44; Compl. ¶ 6, Jan. 16, 2013, Docket No. 1.)

In September 2012, CitiMortgage received a document that
purported to be an order for trial to begin on September
21, 2012, in the "United States of America District Court,
District of Minnesota" in a case between Daniel and Margaret
Hubbard against CitiMortgage, which was signed by "Judge
Paul Ernest Sellors, District Court Justice." (Compl., Ex. A
("Sellors Order").) CitiMortgage also received documents
from Defendants challenging the authority of the United
States government and the foreclosure of the mortgage.
(Harder Aff. Ex. B–1 at 2–10, July 3, 2013, Docket No. 40;
Harder Aff., Ex. B–2, July 3, 2013, Docket No. 41; Harder
Aff., Ex. B–3, July 3, 2013, Docket No. 42.)

CitiMortgage brought this action alleging that the Sellors
Order was fraudulent and seeking to declare the Order void,
to enjoin Defendants from serving falsified documents, and
seeking damages for the costs of responding to Defendants'
filings. (Compl. at 4–6.) After CitiMortgage filed its
Complaint, Defendants filed multiple entries on the docket,
none of which are relevant to the instant Order. CitiMortgage
filed a motion for summary judgment and the Magistrate
Judge held a hearing on the motion, but Defendants did not
appear. (See Mot. for Summ. J., July 3, 2013, Docket No.
36; Minute Entry, Sept. 3, 2013, Docket No. 57.) After the
hearing CitiMortgage moved for an Order to Show Cause why
an order should not issue prohibiting Defendants from filing
any further lawsuits except under certain conditions. (Mot. for
Order to Show Cause, Sept. 9, 2013, Docket No. 59.) After
this motion, Defendants began submitting additional filings,
including one on September 17, 2013, and two on October
2, 2013. (Notice of Collusion to Deny Access to One of the
Courts, Sept. 17, 2013, Docket No. 63; Response to Docket
No. 64, Oct. 2, 2013, Docket No. 65; Notice of Am. Unlimited
Civil Action, Oct. 2, 2013, Docket No. 66.) Among other
things, these filings challenged the jurisdiction of the Court on
the basis that there was not $75,000 in controversy as required
for diversity jurisdiction. (See, e.g., Notice of Collusion to
Deny Access to One of the Courts at 3; Response to Docket
No. 64 at 2.)

**\*2** The Magistrate Judge issued an Order on September 24, 2013, continuing the hearing on CitiMortgage's motion for summary judgment until October 8, 2013. (Order, Sept. 24, 2013, Docket No. 64.) Defendants did not appear at the continued summary judgment hearing. (Minute Entry, Oct. 8, 2013, Docket No. 67.) After the hearing, Defendants filed a motion for summary judgment (Defs.' Mot. for Summ. J., Oct. 31, 2013, Docket No. 68), which CitiMortgage moved to strike (Mot. to Strike Pleading, Nov. 21, 2013, Docket No. 69). Defendants filed several responses and documents in response to CitiMortgage's motion to strike (*see* Response to Mot. to Strike, Dec. 6, 2013, Docket No. 73; Notice Praecipe for Judgment of Non Pros, Dec. 18, 2013, Docket No. 74; Demand for Disclosure and Discovery, Dec. 18, 2013, Docket No. 75), some of which again raised a challenge to the amount in controversy (*see* Resp. to Mot. to Strike at 3.) CitiMortgage filed a "Notice of No Reply" stating that it would not respond to Defendants' filings because "Defendants have failed to state any articulable reason or legal argument for denying the relief requested by the Plaintiff." (Notice of No Reply, Dec. 18, 2013, Docket No. 77.)

The Magistrate Judge issued an R & R on January 22, 2014, concluding that CitiMortgage failed to establish a basis for federal jurisdiction. (R & R, Jan. 22, 2014, Docket No. 78.) [1] The R & R concluded that there is no federal question jurisdiction because the face of CitiMortgage's Complaint raises no federal issue or claim and any violation of federal criminal law by Paul Sellors did not give rise to a private cause of action by CitiMortgage. (R & R at 17–19.) The R & R also concluded that there is no diversity jurisdiction because CitiMortgage had not shown by a preponderance of the evidence that the amount in controversy is more than $75,000: the Complaint listed the damages amount as $10,000 and CitiMortgage made no other showing. (*Id.* at 19–21.) Defendants filed no objections to the R & R. CitiMortgage filed a limited objection, challenging only the R & R's conclusion that the court lacks jurisdiction. (Objections to R & R, Feb. 4, 2014, Docket No. 79.)

[1]  The R & R concluded that it would recommend granting all of the relief that CitiMortgage seeks, but for its conclusion that the Court lacks jurisdiction over this case. (R & R at 21 n.19.)

**ANALYSIS**

**I. STANDARD OF REVIEW**

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed.R.Civ.P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed.R.Civ.P. 72(b)(3).

**II. FEDERAL QUESTION JURISDICTION**

Federal question jurisdiction under 28 U.S.C. § 1331 "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.,* 561 F.3d 904, 912 (8th Cir.2009) (internal quotations omitted). CitiMortgage's Complaint plainly does not include any federal question on its face: It lists the causes of action as "Declaratory Judgment" (seeking to have the fraudulent Sellors Order declared void), "Injunctive Relief" (seeking an order enjoining Defendants from serving any false or fraudulent papers or pleadings on CitiMortgage), and "Damages" (seeking $10,000 for the injuries CitiMortgage has incurred in responding to Defendants' pleadings). (Compl. at 4–6.) The only mention of federal law in the Complaint is that **Defendants** "allege a claim under the Constitution of the United States," but as the Magistrate Judge observed, Defendants have invoked the Constitution only as the basis for the authority of the fraudulent order. (*See* R & R at 16, 19.) CitiMortgage objects, arguing that because of this invocation of the United States Constitution, the relief CitiMortgage seeks is a declaration that the signer does not have such authority under Article III of the Constitution. But that is not inherently a federal question—CitiMortgage presents no reason why a competent state court of general jurisdiction could not conclude as a factual matter that the signer did not have such authority and consequently declare the order void.

**\*3** CitiMortgage makes other arguments in support of federal question jurisdiction but none are availing. First, CitiMortgage points to the All Writs Act, 28 U.S.C. § 1651, as a basis for the Court's authority to grant the relief it seeks. But the All Writs Act is not a jurisdiction-conferring statute, rather, the Act provides courts with authority to issue writs in matters for which the Court **already has** jurisdiction. *See Klay v. United Healthgroup, Inc .,* 376 F.3d 1092, 1099 (11th Cir.2004) ("The [All Writs] Act does not create any substantive federal jurisdiction. Instead, it is a codification of the federal courts' traditional, inherent power to protect

the jurisdiction they already have, derived from some other source." (internal citation omitted)). None of the cases cited by CitiMortgage suggest that the All Writs Act can serve as an independent source of federal jurisdiction.

Second, CitiMortgage argues that Defendants in their filings have raised several federal statutory issues, such as an assertion of rights under the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* But federal question jurisdiction must be raised on the face of the complaint and cannot be established through counterclaims. *Vaden v. Discover Bank,* 556 U.S. 49, 60 (2009) ("Nor can federal jurisdiction rest upon an actual or anticipated counterclaim."). Thus, the Court concludes that the R & R properly determined that the Court does not have jurisdiction on the basis of a federal question under 28 U.S.C. § 1331.[2]

[2]    CitiMortgage does not appear to object to the R & R's conclusion that any violation of federal criminal statutes by the Defendants in falsifying the court order gives rise to federal question jurisdiction (*see* R & R at 17–18 (citing 18 U.S.C. §§ 505, 912)), and that conclusion was not clearly erroneous. *See Thompson v. Thompson,* 484 U.S. 174, 179 (1988) (unless "congressional intent [to confer a private right of action based on a statute] can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist" (internal quotation marks omitted)).

## III. DIVERSITY JURISDICTION

"The district courts of the United States ... are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (internal quotations omitted). Congress has granted "district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens." *Id.* (citing 28 U.S.C. § 1332). However, "[t]o ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Id.*

"[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Kopp v. Kopp,* 280 F.3d 883, 884 (8th Cir.2002) (alteration and quotations omitted). If the amount in controversy alleged by the party asserting diversity jurisdiction is challenged, "the party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *James Neff Kramper Family Farm P'ship v. IBP, Inc.,* 393 F.3d 828, 831 (8th Cir.2005) (internal quotations omitted). Thus, "[t]he district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000. *Kopp,* 280 F.3d at 885.

**\*4** Here, CitiMortgage alleges diversity jurisdiction in its Complaint, stating that the "Court has jurisdiction over this action based on the diversity between the parties and the amount in controversy which the Defendants have alleged to be over $75,000.00." (Compl.¶ 3.) Later in the Complaint, however, CitiMortgage lists the amount of damages it seeks as $10,000.00 "or such other amount as may be proven in this matter." (*Id.* at 6.) Defendants challenge CitiMortgage's asserted diversity jurisdiction in several filings. (*See* Notice of Collusion to Deny Access to One of the Courts at 3; Response to Docket No. 64 at 2; Defs.' Mot. for Summ. J. at 2; Resp. to Mot. to Strike.) Although these filings were submitted fairly late in the course of the proceedings before the Magistrate Judge (who had already held one hearing on CitiMortgage's motion for summary judgment before the first of these was filed, at which Defendants did not appear, and held another hearing on October 8, 2013, at which Defendants again failed to appear), challenges to the court's subject matter jurisdiction may be raised at any time. *4:20 Commc'ns, Inc. v. Paradigm Co.,* 336 F.3d 775, 778 (8th Cir.2003) ("As parties may not expand the limited jurisdiction of the federal courts by waiver or consent, subject matter jurisdiction issues may first be raised at any time, even on appeal.").

Thus, after Defendants challenged the amount in controversy supporting diversity jurisdiction, the burden fell to CitiMortgage to prove by a preponderance of the evidence that the amount was greater than $75,000. *James Neff Kramper Family Farm P'ship,* 393 F.3d at 831 ("The burden thereafter fell upon ... the party invoking federal jurisdiction, to show by a preponderance of the evidence the claims originally asserted by Kramper could, that is might, legally satisfy the amount in controversy requirement."). But CitiMortgage made no attempt to prove that the amount in controversy satisfies the jurisdictional requirement.

CitiMortgage filed two responses: a motion to strike Defendants' motion for summary judgment and a Notice of No Reply. The motion to strike includes no argument about the amount in controversy and no attached affidavits to support any such argument. (*See* Mot. to Strike.) The Notice of No Reply states that CitiMortgage "hereby declines to reply to any response of Paul Ernest Sellors and Daniel Hubbard and Margaret Hubbard, Defendants Pro Se filed in this matter by the Defendants. Defendants have failed to state any articulable reason or legal argument for denying the relief requested by the Plaintiff." (Notice of No Reply at 1.)

Only after the R & R concluded that CitiMortgage had failed to establish any basis for the Court's jurisdiction did CitiMortgage address Defendants' challenge to diversity jurisdiction. In its objections, CitiMortgage makes several arguments that the amount in controversy exceeds $75,000: (1) that the lawsuit actually involves a dispute between the parties over the underlying mortgage, which is the fair market value of the property, and also includes the value of eighteen months of mortgage payments that Defendants owe CitiMortgage, (2) that CitiMortgage has actually incurred at least $37,815.03 in legal fees in responding to Defendants' numerous and fraudulent filings, (3) that the value of the injunctive and declaratory relief CitiMortgage seeks exceeds $75,000, and (4) that the value of Defendants' "counterclaims" exceeds $75,000. (Objections to R & R at 4–9.)

 **\*5**  The Court concludes that none of these arguments suffice to establish by a preponderance of the evidence that the amount in controversy in this litigation exceeds $75,000. First, the underlying mortgage is not in dispute in this particular case, although it may be disputed in other proceedings between these parties. This lawsuit, as alleged by CitiMortgage in its Complaint, is about the damages CitiMortgage has suffered on account of the Sellors Order and Defendants' other filings, not about the mortgage or foreclosure. (*See, e.g.,* Compl. ¶ 16 ("The Hubbards are asserting frivolous claims against the Plaintiff based on a legal theory that the present government of this country is a bankrupt corporation."); *id.* ¶¶ 18–19 ("The Plaintiff has the right to be free from spurious pleadings and papers captioned as if the document was actually issued by this court or any other court of competent jurisdiction when the document is the fabrication of the Defendants," and "seeks a declaratory judgment determining ... that the papers and pleadings have no validity and that no actions are pending against the Plaintiff."); *id.* ¶¶ 22–23 ("The Hubbards have

served multiple documents and claims upon the Plaintiff and will continue to do so in the future" and "[i]t costs the Plaintiff time and money to review and respond to these spurious pleadings."). Nothing in the Complaint suggests that this lawsuit is about anything more than the injuries CitiMortgage has suffered on account of the Sellors Order and Defendants' frivolous filings.

To the extent that CitiMortgage argues that the Defendants have brought the underlying mortgage into this dispute as a compulsory counterclaim such that the value of the mortgage should be included in the amount in controversy, nothing in the Defendants' filings suggests that they seek any relief related to the mortgage or its status. Rather, their filings seem to primarily revolve around the power of the Court and whether they can be forced to participate in legal proceedings before the Court. (*See, e.g.,* Notice of Collusion to Deny Access to One of the Courts at 2–6 (listing multiple complaints related to apparent denial of opportunity to pursue action in state court under case number 27–cv–13–14379 and lack of jurisdiction of federal court); Response to Docket No. 64 at 2–4 (arguing that CitiMortgage has no standing because it is "property" and an "inanimate plaintiff" and that the action must be "remanded back to the Minnesota State Court"); Defs.' Mot. for Summ. J. at 2–5 (repeating arguments regarding CitiMortgage's standing and court's authority).) Although some of their filings reference the mortgaged property, Defendants do not make arguments about the validity of property rights or the mortgage or foreclosure, but rather about the respective parties' and courts' authority to participate in lawsuits regarding the property. (*See* Response to Docket No. 64 at 4 (arguing that CitiMortgage has "no standing relative to the soil known as Land" and listing the relevant address of the property).) [3]

[3]    One paragraph in one filing is arguably a claim for a declaration of property rights regarding the mortgaged property. (*See* Am. Unlimited Civil Action at 6 (demanding judgment that "Injured Claimant hereby has the right to settle this trespass for the modest amount of fifty ounces of .999 pure gold or the United States Federal Reserve Note equivalent at the time of demanded judgment or $65,000 to be paid to each Injured Claimant and for any interest Trespassers/Defendants may believe to have in [property address]" (formatting omitted)).) But even if this raises a dispute that would involve the fair market value of the mortgage or property, this would not likely be a compulsory counterclaim

under Federal Rule of Civil Procedure 13(a)(1), arising "out of the transaction or occurrence that is the subject matter of the opposing party's claim", because CitiMortgage's lawsuit is limited to relief on account of the fraudulent court filing. Thus, even if the Court were to adopt the rule from other circuits (not yet adopted by the Eighth Circuit) that damages for a compulsory counter claim should be counted for diversity jurisdiction purposes, *see* Al–Cast Mold & Pattern, Inc. v. Perception, Inc., 52 F.Supp.2d 1081, 1082–83 (D .Minn.1999) (reviewing circuit split but concluding that "counterclaims do not satisfy the jurisdictional amount"), the Court would not consider the value of the property or mortgage on account of this paragraph.

**\*6** The Court observes that the payments CitiMortgage has not received during the eighteen months since it stopped receiving payments may reasonably be considered part of this controversy if, as CitiMortgage argues in its Objections, it has held off on the foreclosure for that time period because of the Sellors Order. (*See* Objections to R & R at 6.) But not only does CitiMortgage not actually seek this relief in its Complaint, but CitiMortgage has also made no argument or showing of what those payments are worth. Thus, the Court cannot consider them as part of the amount in controversy because CitiMortgage has not established an amount or value for them by a preponderance of the evidence.

Second, CitiMortgage has not proven its claim that it has incurred over $37,000 in costs attributable to actions by Defendants listed in the Complaint by a preponderance of the evidence. CitiMortgage has not supported this number with any affidavits or other evidence required to satisfy its burden in light of Defendants' jurisdictional challenge. *See* Martin v. State Farm Fire & Cas. Co., 826 F.Supp.2d 1133, 1137–38 (D.Minn.2011) (finding no diversity jurisdiction even where party submitted affidavits as proof of amount in controversy after it was challenged, concluding that "they have proffered only two items in an attempt to satisfy their burden, neither of which is availing" because the affidavits contradicted other evidence and did "not disclose any dollar amount for their claimed losses"). Although CitiMortgage offers in its Objections to submit affidavits in support of this number, CitiMortgage failed to do so before the Magistrate Judge and instead filed an affirmative statement that it had no further argument in response to Defendants' filings. (Notice of No Reply at 1.) Unlike Defendants, CitiMortgage is not *pro se*, and can be reasonably expected to make all necessary

arguments and showings before the Magistrate Judge. *Cf.* Ridenour v. Boehringer Ingelheim Pharms., Inc., 679 F.3d 1062, 1067 (8th Cir.2012) ("[Plaintiff] was required to present all of his arguments to the magistrate judge, lest they be waived.")

Furthermore, even if CitiMortgage had properly submitted evidence of the $37,000 in costs it has incurred, that amount does not reach the $75,000 threshold Congress established for diversity jurisdiction and the prospect that such costs could double without the relief CitiMortgage seeks here is speculative and therefore insufficient to support diversity jurisdiction, as "[s]peculation and belief that plaintiff's damages exceed $75,000.00 are insufficient to meet the ... burden of proof under both the 'preponderance of evidence standard' and the 'legal certainty' standard" for diversity jurisdiction." Hill v. Ford Motor Co., 324 F.Supp.2d 1028, 1036 (E.D.Mo.2004) (finding no jurisdiction, where party offered "nothing to this Court other than its unsupported allegation that ... the Court should presumably assume that the amount in controversy exceeds the jurisdictional minimum" and concluding that "[h]aving the Court presume that this case involves 'potential damages exceeding $75,000.00 without offering one shred of evidence regarding potential damages would be nothing more than speculation on the part of defendant (and the Court)").

**\*7** This same reasoning applies to CitiMortgage's argument that the value of the relief it seeks exceeds $75,000, *see* James Neff Kramper Family Farm P'ship, 393 F.3d at 833 ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." (internal quotations omitted)), because the $37,000 could increase to include the "potential fees and costs which will necessarily be incurred if Defendants['] abusive litigation practices are not curtailed" (Objections to R & R at 8). But again, as CitiMortgage admits, this is purely speculative and therefore insufficient to support diversity jurisdiction. (*See id.* (arguing that "[i]n theory the value of this benefit sought by [CitiMortgage] is unlimited" and acknowledging that "an argument could be made [that] such value is speculative").) [4]

4       The Court recognizes CitiMortgage's request for an opportunity to provide supplemental briefing and evidence on these issues, particularly the costs already borne in responding to Defendants' filings and the value of the relief CitiMortgage seeks. (Objections to R & R at 12.) However, given

that Defendants raised the issue of jurisdiction in at least three filings before the decision by the Magistrate Judge and CitiMortgage affirmatively declined to respond at the time, (*see* Notice of No Reply at 1), and failed to submit appropriate evidence establishing the amount in controversy in its objections to this Court, the Court declines to afford CitiMortgage another opportunity to address this issue.

The Court thus concludes that CitiMortgage has failed to show by a preponderance of the evidence that the amount in controversy in this litigation is greater than $75,000. The Court recognizes the significant burden that Defendants' frequent filings impose on CitiMortgage and its counsel (and the considerable resources expended by the clerk of this Court and the Magistrate Judge in receiving the numerous filings). However, the Court cannot grant relief in a case for which it does not have jurisdiction. *Cf. Kessler v. Nat'l Enters., Inc.,* 347 F.3d 1076, 1078 (8th Cir.2003) ("Given the considerable resources and time exhausted by the federal courts and the parties in this action, we would like to ignore NEI's belated jurisdictional challenge. Unfortunately, we cannot. Having considered the jurisdictional challenge, we reluctantly agree with NEI that federal diversity jurisdiction is lacking." (internal citations omitted)).

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, Plaintiff's Objections to the Report and Recommendation [Docket No. 79] are **OVERRULED** and the Report and Recommendation [Docket No. 78] is **ADOPTED.** Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, Permanent Injunction, and Declaratory Relief [Docket No. 36] is **DENIED.**

2. Plaintiff's Motion for Order to Show Cause [Docket No. 59] is **DENIED.**

Defendants' Motion for Summary Judgment [Docket No. 68] is **DENIED.**

Plaintiff's Motion to Strike Pleading [Docket No. 69] is **DENIED as moot.**

**IT IS FURTHER HEREBY ORDERED** that:

5. This matter is **DISMISSED** due to lack of jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. Plaintiff's Complaint [Docket No. 1] is **DISMISSED without prejudice.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

*REPORT AND RECOMMENDATION*

JANIE S. MAYERON, United States Magistrate Judge.

This matter came before the undersigned on plaintiff's Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief [Docket No. 36], Motion for an Order to Show Cause [Docket No. 59], Defendants' Motion for Summary Judgment [Docket No. 68], and plaintiff's Motion to Strike [Docket No. 69]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

**I. PROCEDURAL AND FACTUAL BACKGROUND**

**\*8** Plaintiff CitiMortgage is a commercial financial institution that originates and services residential mortgages. Complaint, ¶ 1 [Docket No. 1]. Defendants Margaret and Daniel Hubbard entered into a mortgage loan in the amount of $266,000 with Argent Mortgage for property in Centennial, Colorado ("Property"). Affidavit of Thomas Harder in Support of Motion for Summary Judgment ("Harder Aff."), Ex. D (note) [Docket No. 44]. Argent Mortgage later assigned the note and mortgage to CitiMortgage. Plaintiff's Motion for Summary Judgment, p. 3 [Docket No. 36]. As mortgagee, CitiMortgage foreclosed on the Property. Complaint, ¶ 6.

On or about September 11, 2012, CitiMortgage received a purported order for trial in the United States District Court, District of Minnesota. Complaint, Ex. A; Harder Aff., Ex. A.[1] This purported order was captioned as a proceeding against CitiMortgage and its CEO, Vikram Pandit. *Id.* The order appeared to be stamped by the Clerk of Court for the District of Minnesota. *Id.* CitiMortgage's counsel in Texas received the order on September 17, 2012, and forwarded it to Foley & Mansfield, its local counsel in Minnesota, to investigate. Plaintiff's Memorandum in Support of Motion for Summary Judgment ("Pl. SJ Mem."), p. 1 [Docket No. 37]. CitiMortgage subsequently received documents from

Citi Mortg., Inc. v. Hubbard, Not Reported in F.Supp.3d (2014)

2014 WL 1303706

defendants Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors asserting various theories about the United States government being "cancelled" and protesting the foreclosure of the Hubbard's mortgage. [2] Harder Aff., Ex. B–1, pp. 2–10 [3] ("Notice of Right to Cancel" and "Notice of Revocation of Power of Attorney & Revocation of Signature Affidavit" directed to CitiMortgage, letter to CitiMortgage's counsel "rejecting" summons issued in the instant case); B–2, pp. 1–4 (document entitled "Official Announcement, The Disclosure 1111.1" [4]); B–3, p. 1 (document entitled "Work Associates, My Agents, And My Private Land and Property" signed by Paul E. Sellors), p. 2–4 (letter from Sellors addressed to "Mr. Tunheim" [5] of the "alleged" United States District Court, District of Minnesota, "rejecting" the summons issued in the instant case."). According to CitiMortgage, Sellors fabricated the order setting trial because defendants disputed the validity of the mortgage against the Property. Pl. SJ Mem., p. 3.

[1] The Order is signed by "Judge Paul Ernest Sellors District Court Judge" and is stamped by the Clerk of Court. While patently fabricated, the "order" has some indicia of authenticity, such as a case number that mimics the style of case numbers assigned in this district–12–CV–0008–PES.

[2] Defendants appear to be members of the Sovereign Citizens Movement. According to the FBI, the "Sovereign Citizens" movement is based on a theory that the "United States government [USG] is bankrupt and without tangible assets; therefore, the USG is believed to use citizens to back U.S. currency. Sovereign citizens believe the USG operates solely on a credit system using American citizens as collateral. Sovereign exploit this belief by filing fraudulent financial documents charging their debt to the Treasury Department." *El v. AmeriCredit Fin. Servs., Inc.,* 710 F.3d 748, 750 (7th Cir.2013) (quoting Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 3 (Nov.2010), http:// info.publicintelligence.net/ FBISovereignCitizens.Pdf). *See also Cooper v. United States,* 104 Fed. Cl. 306, 313–314 (2012) (explaining that "an individual who identifies himself with the Sovereign Citizen Movement considers himself to be his own sovereign, not a United States citizen, and therefore 'believe[s] that [he

is] not subject to government authority.' *Gravatt v. United States,* 100 Fed.Cl. 279, 282 (2011). Members of this movement think that [t]he federal government ... has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (*i.e.,* the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.") (citation omitted).

[3] The Court is referencing the page numbers assigned through CM/EFC.

[4] Defendants' documents are nearly incomprehensible. For example, the following is an excerpt from a communication from Daniel Hubbard to CitiMortgage, dated October 2, 2012:

The Public Trust does give Absolute Gratitude and Grace in Absolute Love and Peace to the BE'ings known as "Poof," "American Kabuki," "Kauilapele" and Brian for serving the highest good of The One in unconsciously revealing the point of origin of "the boots on the ground" attempting to implement these purported "INTERIM GOVERNMENTS," slavery systems reorganized under CODE of canceled ENTITY and its CONSTITUTION, UNITED STATES OF AMERICA unlawfully and illegally purporting to be NESARA, NESARA LAW, with authority to release prosperity funds, inclusive of those in St. Germaine's Trust.

Harder Aff., ¶ 4; Ex. B–2 [Docket No. 41].

[5] Sellors is referring to the Honorable John Tunheim.

CitiMortgage commenced the instant action seeking a declaratory judgment that the Order Setting Trial is fraudulent, enjoining defendants from serving false or fraudulent papers or pleadings on CitiMortgage in the future, and awarding CitiMortgage $10,000 in damages. Complaint, ¶¶ 15–29. CitiMortgage alleged this Court had jurisdiction based on diversity and federal question, and "inherent jurisdiction over papers and pleadings published in its name

2014 WL 1303706

and purporting to be official demands from the United States judicial system." *Id.,* ¶¶ 3–5.

Defendants responded to CitiMortgage's Complaint with pleadings that purported to require this Court to prove it is a legitimate court, demanding payment of gold or silver to respond to CitiMortgage's discovery requests, and threatening the use of a militia against any party that violates what they view as their rights. *See, eg.,* Response to Summons [Docket No. 8] (letter directed to "Mr. Tunheim and Ms. Graham"[6] from Daniel Hubbard stating that he refused to acknowledge the summons unless Judge Tunheim and Magistrate Judge Graham met certain conditions, such as providing a bond and an "original accommodation agreement."); Opportunity to Cure [Docket No. 12] (document by Sellors "rejecting" CitiMortgage's complaint based on various absurd theories); Take Notice of the Following for Your Foreign, Commercial Corporate Reference [Docket No. 13] (document excerpting various unrelated court cases); Banks and "Governments" Foreclosed Worldwide [Docket No. 14] ("Notice" that all banks and governments, including the United States government, have been "cancelled" and all debts of all people everywhere have been terminated); Courtesy Notice [Docket No. 15] ("Notice" directed to Mr. Richard Sletten, Clerk of Court of the United States District Court, District of Minnesota, that all "charters" of governments, including the United States government, have been "cancelled"); Letter to Counsel for CitiMortage [Docket No. 16] (letter "rejecting" subpoena served by CitiMortgage unless counsel produced seventeen itemized documents, which defendant Sellors then states cannot be produced); Sovereign Authority [Docket No. 22] ("reservation of rights" by Daniel Hubbard in which he declares that he is not a United States citizen "or a 14th amendment citizen").

[6]     Hubbard is referring to the Honorable Judge John Tunheim and the Honorable Magistrate Judge Jeanne Graham.

**\*9** CitiMortgage served requests for admission on defendants on or about May 8, 2013, and received no response other than a return copy of CitiMortgage's discovery with the words "I do not accept this offer to contract. I do not consent to these proceedings" and signed by Daniel Hubbard "without prejudice UCC1:308" written across the first page. Harder Aff., Ex. C.

On July 3, 2013, CitiMortgage moved for summary judgment, declaratory judgment and injunctive relief. [Docket No. 36].

This motion sought: (1) a declaration that the Order Setting Trial is counterfeit and intended to deceive CitiMortgage; (2) an order permanently enjoining defendants from continuing to counterfeit court documents; and (3) attorney's fees of $10,000 for time spent investigating and responding to defendants' counterfeit orders. Pl. SJ Mem., pp. 7–14. CitiMortgage served the moving papers by mail on the defendants. Affidavit of Thomas A. Harder in Support of Order to Show Cause on Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief ("Harder Aff. II"), ¶ 2 [Docket No. 61].

Defendants responded to CitiMortgage's motion with a document entitled "Objection to Trespassers Request for Summary–Judgment/DeclaratoryJudgment/Injunctive– Relief" [Docket No. 49]. Defendants stated that CitiMortgage lacked standing, was "attempting to use this court to legitimize a frivolous unfounded action," and was "attempting to criminalize an invitation to settle the Trespassers' supposed contentions in a people's court." *Id.,* p. 1.

On July 26, 2013, defendants served a Minnesota state court complaint against CitiMortgage's attorneys Thomas Harder and Cameron Lallier, CitiMortgage's chief executive officer, and Foley & Mansfield, PLLP (the "Foley–Citi Action"). Harder Aff. II, ¶ 3. The Foley–Citi Action defendants believed that this lawsuit was brought in retaliation for CitiMortgage's instant lawsuit. Memorandum of Law in Support of Defendants' Motion to Dismiss, p. 3 [Civ. No. 13–2189 (JRT/JSM), Docket No. 5]. The defendants in the Foley–Citi Action removed the matter to this Court. Notice of Removal [Civ. No. 13–2189, Docket No. 1].

In its decision recommending dismissal of the Foley–Citi Action without prejudice (for the reason that defendants were not properly served) the Court described the suit as follows:

> Plaintiffs' Complaint is very unclear, but alleged that plaintiffs were bringing an "Unlimited Civil Action" against defendants for violating the Preamble to the Bill of Rights, the First Amendment, "18 U.S.C. § 47 FRAUD AND FALSE STATEMENTS," and 18 U.S.C. § 13 "CIVIL RIGHTS."
>
> The Complaint alleged that the defendants, "in their capacity as agents of the State," colluded to defraud and harm the plaintiffs, who refer to themselves as "Claimants" or "Injured Claimants." Complaint, p. 4, ¶ 1. Specifically, plaintiffs alleged that defendants committed

2014 WL 1303706

fraud by making "unfounded entries" into the public record regarding a non-existent foreclosure. *Id.,* p. 5, ¶ 4. Plaintiffs further alleged that defendants abused their "public office" by persuading United States officials into violating "United States organic and Code ordinances, thereby conspiring to deny Injured Claimant's natural rights." *Id.,* ¶ 5. As relief, plaintiffs sought fifty ounces of .999 pure gold or a Federal Reserve Note equivalent to $65,000 to be paid to each injured claimant, and for any interest in real property located in Colorado, which the Court assumes is the foreclosed property. *Id.*

**\*10** Report and Recommendation, Dec. 4, 2013. [13–cv– 2189 (JRT/JSM), Docket No. 17] footnotes omitted). [7]

[7]   Plaintiffs' objections to this Report and Recommendation are pending before Judge Tunheim. [Docket Nos. 17, 18].

On August 22, 2013, defendant Sellors filed another lawsuit in state district court, in which he named multiple federal judicial officials and federal and state law enforcement officers as defendants, including President Obama and Attorney General Holder, and sought an award in the sum of $6,394,960, paid with 4737 "Total ounces of .999 pure gold." ("Government Officials Lawsuit"). Harder Aff. II, ¶ 6; *Paul Ernest of the House of Sellors, v. Barack Obama, et. al.,* Civ. No. 13–2484 (SRN/JSM), Docket No. 1, pp. 19–20. This suit arose out of Sellors' criminal indictment in the District of Colorado, 13–cr–140–CMA. [8]   The government defendants removed this suit to Federal District Court on September 11, 2013. Notice of Removal. [Civ. No. 13–2484 (SRN/JSM), Docket No. 1]. Motions to dismiss by these defendants are currently pending. Docket Nos. 5, 18.

[8]   Sellors was indicted in Colorado and found guilty for using a forged and counterfeit seal of the "United States of America District Court, District of Minnesota" to authenticate fraudulent documents, including an order to set trial by jury, an order of custody, and orders to reschedule jury trials. *United States of America v. Paul Ernest Sellors,* 13–cr–140–CMA (D.Colo.); http://www . fbi.gov/denver/pressreleases/2013/ sentencing-set-for-paul    -sellors-after-jury-finds- hi      m-guilty-of-usingcounterfeit-united-states- courtseal. On November 15, 2013, judgment was entered against Sellors, remanding him into custody to serve a sentence of eighteen months for

each of the three counts on which he was convicted, to be served concurrently. Judgment in a Criminal Case. [13–cr–140–CMA (D.Colo.), Docket No. 141].

Defendants did not appear at the hearing on CitiMortgage's Motion for Summary Judgment held before this Court on September 3, 2013. Court Minutes [Docket No. 57]. At the summary judgment motion hearing, counsel for CitiMortgage modified the relief CitiMortgage was seeking, asking that defendants be prohibited from filing any suit *pro se* or alternatively, they be prohibited from filing *any* suit without a court order allowing them to do so. CitiMortgage argued that defendants were given notice of this expanded scope of relief because CitiMortgage had described it in its Reply to defendants' response to the motion for summary judgment, and the Reply was served on defendants. *See* Docket No. 55. The broader relief was based on defendants' more recent filings in state court, which CitiMortgage described as "continual and contumacious." Pl. Reply, p. 2. For example, counsel for CitiMortgage attempted to meet and confer with defendants. *Id.* According to counsel "[t]he outcome of that attempt was the serving and filing of a[n] action in state court .... " (*i.e.* the Foley–Citi Action). *Id.*

This Court continued the hearing so that an Order to Show Cause could issue, which would attach a copy of a proposed Report and Recommendation drafted by CitiMortgage, explicitly describing for defendants the relief sought by CitiMortgage and that could be granted if they did not appear.

On September 9, 2013, CitiMortgage moved for an Order to Show Cause why an order should not issue prohibiting defendants from filing any further lawsuits except in accordance with certain conditions. [Docket No. 59]. [9]

[9]   The Court originally contemplated issuing an Order to Show Cause, thus CitiMortgage filed its Motion for An Order to Show Cause. Ultimately, the Court issued an Order, not an Order to Show Cause. [Docket No. 64].

On September 17, 2012, defendants filed a document entitled "Notice of Collusion to Deny Access to One of the Courts of the Freely Associated Compact States" [Docket No. 63]. Defendants alleged that CitiMortgage's counsel Harder used his position as an officer of the court to:

Citi Mortg., Inc. v. Hubbard, Not Reported in F.Supp.3d (2014)
2014 WL 1303706

> circumvent the Articles of Confederation, the Constitution of the United States, the Minnesota constitution, the Federal Codes, the state known as Minnesota and the people's unalienable rights to further trespass on Injured Claimants and the free people of this soil known as Minnesota."

**\*11** *Id.,* p. 2. Defendants sought to have the Court consider Rule 11 sanctions against Harder because he gave false information to the federal district court, apparently concerning jurisdiction over the instant lawsuit. *Id.,* pp. 3–4. Defendants contended that there was no federal question jurisdiction pursuant to 28 U.S.C. § 1331, and that Harder made false representations regarding the amount in controversy to support the claim for diversity jurisdiction. *Id.,* p. 3. Specifically, defendants asserted that Harder had only demanded $10,000 in damages in CitiMortgage's Complaint, which did not meet the jurisdictional threshold of $75,000, and that to the extent that CitiMortgage claimed it was harmed by defendants' filings, CitiMortgage had not proven that the harm it suffered supported the jurisdictional threshold amount.

On September 24, 2013, this Court issued an Order stating that it had continued the hearing on CitiMortgage's Motion for Summary Judgment until October 8, 2013, and at that hearing, the Court would address whether the following relief should be granted:

> 1. Declaratory judgment in favor of the plaintiff CitiMortgage, Inc. determining that the purported order attached to the Complaint as Exhibit A [Docket No. 1–1] is counterfeit and offered for a fraudulent purpose.

> 2. A permanent injunction enjoining defendants Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors from creating any fraudulent or counterfeit pleadings, papers, orders, or other documents purporting to be from or involving any federal or state court action and serving any pleadings, papers, orders or other document purporting to be from or involving any federal or state court action, except by personal service on the Plaintiff in accordance with the Federal Rules of Civil Procedure.

> 3. An injunction preventing Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors from filing any civil action in this or any other federal court, or any state court against CitiMortgage, Inc. or any of its officers or employees without first obtaining leave of this court. In seeking leave to file, defendants must certify that the claim or claims they wish to present are new claims never before raised and disposed of on the merits by any federal court. Defendants must also certify that the claim or claims are not frivolous, malicious, or brought in bad faith. Additionally, Defendants must cite or affix a copy of the attached Order to any motion for leave to file a claim. Failure to comply strictly with the terms of this injunction will be sufficient grounds for summarily denying leave to file or dismissing any action filed.

4. An injunction preventing defendants Daniel Hubbard, Margaret Hubbard and Paul Ernest Sellors from filing any civil action in the United States District Court for the District of Minnesota without first obtaining leave of this Court. In seeking leave to file, Defendants must certify that the claim or claims they wish to present are new claims never before raised and disposed of on the merits by any federal court. Defendants must also certify that the claim or claims are not frivolous, malicious, or brought in bad faith. Additionally, Defendants must cite or affix a copy of the attached Order to any motion for leave to file a claim. Failure to comply strictly with the terms of this injunction will be sufficient grounds for summarily denying leave to file or dismissing any action filed.

> **\*12** 5. Defendants shall be jointly and severally liable to the plaintiff in the amount of $, as set forth in the Affidavit of Cameron A. Lallier filed on the day of the hearing in this matter. [10]

[10]    Lallier did not file an affidavit.

6. Any violation of the terms of the attached Order will be deemed contempt of Court and may subject Defendants to contempt proceedings.

> 7. This Court shall retain jurisdiction to enforce the terms of the attached Order, including by means of contempt proceedings.

This Court ordered that defendants' response be filed on or before October 4, 2013. Order, p. 2 [Docket No. 64]. Attached to this Order was a proposed Order prepared

by CitiMortgage's counsel explicitly describing the relief CitiMortgage would seek at the continued hearing. *Id.*

On October 2, 2013, defendants filed a response. Response as Ordered by Magistrate Janie S. Mayeron in Document No. 64 ("Def.Response") [Docket No. 65]. Defendants claimed that CitiMortgage lacked standing because it is "property" and not a citizen and thus cannot be a plaintiff in a lawsuit. *Id.,* pp. 2–3. Defendants also challenged the district court's jurisdiction, claiming that CitiMortgage failed to prove that there was at least $75,000 at issue. [11] *Id.,* p. 2.

[11]    Defendants also complained about CitiMortgage's removal of the Foley–Citi Action to federal court. Def. Response, pp. 3–4.

Also on October 2, 2013, defendants filed a document entitled "AMENDED CIVIL ACTION/common-law action" [Docket No. 66]. This document appeared to be a copy of the Complaint in the Foley–Citi Action, but with the case number of the instant lawsuit written by hand on the pleading. *Id.*

Defendants did not appear at the continued summary judgment hearing on October 8, 2013. Court Minutes [Docket No. 67].

Following the hearing, on October 31, 2013, defendants filed a document entitled "Demand for Summary Judgment" [Docket No. 68] in which they demanded summary judgment in their favor because CitiMortgage had not objected to the "undeniable" facts defendants presented in their Response. This pleading essentially restated the "facts" described in defendants' Response—that CitiMortgage is property and not a citizen, and that CitiMortgage improperly removed the Foley–Citi Action to federal court. *Id.,* pp. 1–4. Defendants sought an order that CitiMortgage lacked standing "relative to the soil known as land you and other corporations reference as ... 20734 E. Dorado Place–Centennial, Colorado ...." and ordering Lallier, Harder, and the owners of CitiMortgage and Jane Fraser (who are not parties in the instant action) to pay each of the "injured claimants" the amount of $65,000. *Id.,* pp. 4–5.

On November 21, 2013, CitiMortgage moved to strike defendants' purported summary judgment motion, arguing that the motion raised issues and named parties not at issue in the instant suit, the motion failed to comply with Federal Rule of Civil Procedure 56, and the pleading was untimely because the Court already had CitiMortgage's Motion for Summary

Judgment under advisement. Motion to Strike Pleading and Response to Demand for Summary Judgment, pp. 1–5 [Docket No. 69]. CitiMortgage argued that defendants' claims regarding standing were meritless and, at any rate, the motion appeared to seek relief in connection with the Foley–Citi Action, not the instant action. *Id.,* p. 5. CitiMortgage sought to strike the pleading under Rule 12(f). Memorandum of Law in Support of Motion to Strike, pp. 3–4. According to CitiMortgage, there was no basis for the relief requested—defendants have no interest in the Colorado property, and the Court cannot grant relief against non-parties Harder, Lallier and Jane Fraser in the instant action. *Id.,* pp. 7–8.

**\*13**   On December 6, 2013, this Court issued an Order requiring defendants to serve and file a response to CitiMortgage's Motion to Strike Pleading and Response to Demand for Summary Judgment on or before December 18, 2013. Order, p. 1 [Docket No. 72]. The Court also permitted CitiMortgage to file a reply to its Motion to Strike Pleading. *Id.,* pp. 1–2.

On December 6, 2013, defendants filed a document entitled "Response to Document 69 and Motion to Strike Plaintiff's Pleading" [Docket No. 73]. This "gist" of this pleading was that CitiMortgage failed to establish that there was at least $75,000 in controversy because that amount was based on the Order Setting Trial that CitiMortgage claimed was fraudulent. *Id.,* p. 3. Further, CitiMortgage failed to refute defendants' claim that CitiMortgage was "property" and not a citizen for the purposes of standing. *Id.*

On December 18, 2013, defendants filed a document entitled "Notice Praecipe for Judgment of Non Pros with Relief Granted Against Cameron Lallier and Thomas Harder and Jane Fraser and the Owners of CitiMortgage, Inc." [Docket No. 74]. [12] This pleading demanded that CitiMortgage file a verified complaint in the instant action, signed by CitiMortgage's corporate officers or owners within twenty-one days of the date of defendants' notice or defendants would reserve the right to move the Court for "Praecipe for Judgment of Non Pros." [13] *Id.,* p. 2. Defendants appeared to believe that the Complaint in the instant action was required to be verified and signed by corporate representatives of CitiMortgage.

[12]    The Court will not address these pleadings (Docket Nos. 74, 75] in this Report and Recommendation. They are irrelevant to CitiMortgage's motion for summary judgment.

[13]    As best as this Court can determine, a "Praecipe to Enter Judgment of Non Pros" is particular to the Pennsylvania Civil Practice Rules and relates to a plaintiff's failure to file a complaint after service of the complaint on the defendant. 231 Pa.Code Rule 237.1.

Also on December 18, 2013, defendants filed a document entitled "Demand for Disclosure and Discovery" [Docket No. 75]. Defendants sought, among other items of information, a copy of the "Verified Authority" from the owners of CitiMortgage allowing Harder to speak on its behalf; a copy of the source relied on to establish the jurisdiction threshold of $75,000; a copy of the Congressional Act establishing CitiMortgage's standing; and the property and monetary damages CitiMortgage claimed to have suffered. *Id.,* pp. 1–2.

CitiMortgage did not file a substantive reply to defendants' response to CitiMortgage's Motion to Strike. *See* Reply Memorandum of Plaintiff on Motion to Strike Pleading and Response to Demand for Summary Judgment [Docket No. 77] (stating only that CitiMortgage was not replying to defendants' response because defendants "failed to state any articulable reason or legal argument for denying the relief requested by the Plaintiff.")

## III. DISCUSSION
As it must, the Court first addresses defendants' arguments regarding standing and jurisdiction.[14]

[14]    Defendants are *pro se.* Consequently, the Court holds defendants to a pleading standard that is "less stringent than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

### A. *Standing*
To establish standing, a plaintiff must demonstrate: (1) an "injury in fact," which is concrete and particularized, and which is "actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the complained-of conduct; and (3) it is "likely," and not "merely speculative" that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60 (1992) (internal quotations omitted). CitiMortgage alleged that defendants harmed it by serving the fraudulent Order Setting Trial and forcing CitiMortgage to expend time and resources to ascertain the legitimacy of that

document. Complaint, ¶¶ 7–12. This is the particularized injury contemplated by *Lujan.* There is no question that the relief CitiMortgage seeks will redress this injury.

*\*14* Further, corporations can bring suits in federal court. *See* Fed.R.Civ.P. 17(b)(2) (providing that a corporation's capacity to sue or be sued is determined "by the law under which it is organized."). Indeed, for the purposes of diversity jurisdiction, a corporation is a citizen of its state of incorporation and the state where its "principle place of business" is located. 28 U.S.C. § 1332(c)(1). Nonetheless, for reasons described below, CitiMortgage does not have standing to prosecute a violation of 18 U .S.C. § 919 in the guise of a civil lawsuit.

### B. *Jurisdiction*
CitiMortgage asserted that this Court has both diversity jurisdiction and federal question jurisdiction, along with "inherent jurisdiction."[15] Complaint, ¶¶ 3–5. The Complaint does not flesh out the jurisdictional statements, but merely states that "this Court has jurisdiction over this action based on the diversity between the parties and the amount in controversy which the Defendants have alleged to be over $75,000." *Id.,* ¶ 3. As to federal question jurisdiction, the Complaint alleged that "this court has jurisdiction over this action based on a federal question. The Defendants allege a claim under the Constitution of the United State of America in an action purportedly pending in this court. Article III, Section 2 gives the federal courts original jurisdiction over Constitutional claims." *Id.,* ¶ 4. CitiMortgage appeared to be referencing the fraudulent Order Setting Trial, which stated that "pursuant to the Constitution which is the Supreme Law of the Land this Article III Court verifies that the party signing below states that the case is ready and set for trial." Complaint, Ex. A.

[15]    This Court has no idea what CitiMortgage means by this Court's "inherent jurisdiction." "Federal Courts are courts of limited, not general, jurisdiction." *Thomas v. Basham,* 931 F.2d 521, 522 (8th Cir.1991).

Defendants have challenged CitiMortgage's claims of jurisdiction based on federal question and diversity jurisdiction. Specifically, defendants argued that federal question jurisdiction could not be based on a document —the Order Setting Trial—that CitiMortgage claimed was fraudulent. Notice of Collusion, p. 3 [Docket No. 63]. As for diversity jurisdiction, defendants maintained that

CitiMortgage has not established the jurisdictional threshold of $75,000. *See* Def. Response, p. 2.

### 1. Federal Question Jurisdiction

At the hearing on October 8, 2013, CitiMortgage's counsel stated that the primary basis of jurisdiction was federal question, based on Sellors' violation of a federal statute. Sellors was convicted in Colorado of violating 18 U.S.C. § 505, Use of a Counterfeit Seal of a United States Court.[16] The Complaint cited 18 U.S.C. § 912 .[17] Complaint, ¶ 25.

16      This provision states:

>    Whoever forges the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined under this title or imprisoned not more than five years, or both.

17      This provision states:

>    Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency, or officer thereof, and acts as such, or in such a pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years or both.

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Under the well pleaded complaint rule, a federal question must appear on the face of the plaintiff's complaint to create federal question jurisdiction." *Johnson v. MFA Petroleum Co.,* 701 F.3d 243, 247 (8th Cir.2012) (citing *Caterpillar v. Williams,* 482 U.S. 386, 392 (1987)). The phrase "arising under" means generally that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260 (1916). "The complaint must identify the statutory or constitutional provision under which the claim arises, and allege sufficient facts to show that the case is one arising under federal law." *Martinez v. United States Olympic Comm.,* 802 F.2d 1275, 1280 (10th Cir.1986). Both 28 U.S.C. §§ 1331 and 1332 are "restricted to conveying jurisdiction over civil actions." *Kaw Nation v. Springer,* 341 F.3d 1186, 1188 (10th Cir.2003). As a general matter, crimes are prosecuted by the government, not by private parties. *See Connecticut Action Now, Inc. v. Roberts Plating Co.,* 457 F.2d 81, 86–87 (2d Cir.1972). Private individuals do not have the right to prosecute defendants for alleged violations of federal criminal statutes. *Whatley v. United Parcel Serv., Inc.,* 2009 WL 3756624, at *10 (E.D.Mo.2009) (citing *In re Persico,* 522 F.2d 41, 54 (2d Cir.1975); *Uka v. Mama's Bar & Grill Rest.,* 2006 WL 1752293, at *10 (E.D.Mo.2006)). Consequently, "[a]s a general rule, a civil plaintiff has no standing to assert a claim arising under a criminal statute." *Winkle v. Sargus,* Civ. No. 2:14–0003, 2014 WL 111173, at *1 (S.D.Ohio Jan. 10, 2014) (citing *Chrysler Corp. v. Brown,* 441 U.S. 281, 316 (1979) ("[T]his Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.' ")).

**\*15**   Neither the criminal statute cited by CitiMortgage in its Complaint, 18 U.S.C. § 919, nor the statute under which Sellors was prosecuted in Colorado, 18 U.S.C. § 505, grants a private right of action, either express or implied. Therefore, an alleged violation of a criminal statute cannot furnish a basis for jurisdiction pursuant to § 1331. *Masoud v. Suliman,* 816 F.Supp.2d 77, 80 (D .C.Cir.2011) (citing *Leggett v. Powers,* Civ. No. 09–558, 2009 WL 4032664, at *1 (D.D.C. Nov. 20, 2009) ("Plaintiff's harassment claim against [the defendant] does not present a federal question under [28 U.S.C.] § 1331, and he cannot bring a private right of action based on defendant's alleged criminal behavior."); *Rockefeller v. U.S. Court of Appeals Office, for Tenth Circuit Judges,* 248 F.Supp.2d 17, 23 (D.D.C.2003) (finding that "plaintiff is precluded from asserting any claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action.").

Additionally, CitiMortgage's allegation that federal question jurisdiction is proper based defendants' statement in the fraudulent Order Setting Trial is rejected. Contrary to CitiMortgage's characterization of the statement as a "claim" (Complaint, ¶ 4), defendants invoked the Constitution only as the basis for Sellors' authority to sign the fraudulent order.

For all of these reasons, this Court finds that there is no federal question jurisdiction over CitiMortgage's Complaint.

### 2. Diversity Jurisdiction

There is no dispute that there is diversity of citizenship between CitiMortgage, a New York corporation, the Hubbards, who are citizens of Colorado and Sellors, a Minnesota resident. Complaint, ¶¶ 1, 2. The problem here is that the amount alleged in the Complaint as damages —$10,000—falls far short of the jurisdictional minimum required to support a claim of diversity jurisdiction.

The proponent of diversity jurisdiction has the burden of proving that the amount in controversy exceeds the jurisdictional minimum." *Bell v. Hershey Co.,* 557 F.3d 953, 956 (8th Cir.2009). "[A] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, but the complaint will be dismissed if it appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount. If the defendant challenges the plaintiff's allegations of the amount in controversy, then the *plaintiff must establish jurisdiction by a preponderance of the evidence." Scottsdale Ins. Co. v. Universal Crop Protection Alliance, LLC,* 620 F.3d 926, 931 (8th Cir.2010) (citations omitted) (emphasis added).

" 'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.' " *James Neff Kramper Family Farm P'ship v. IBP, Inc.,* 393 F.3d 828, 833 (8th Cir.2005) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)); *see also Usery v. Anadarko Petroleum Corp.,* 606 F.3d 1017, 1018 (8th Cir.2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue."); *Jackson v. American Bar Ass'n,* 538 F.2d 829, 831 (9th Cir.1976) ("Where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented.").

**\*16** CitiMortgage based jurisdiction on the amount "which the Defendants have alleged to be over $75,000." Complaint, ¶ 3. CitiMortgage did not elaborate on this statement in any of its subsequent pleadings and the Court was left to guess as to what CitiMortgage had in mind.[18]

---

18    Perhaps CitiMortgage was referencing the value of the underlying mortgage that was foreclosed, which appeared to trigger the fraudulent Order Setting Trial. Not only would this be pure speculation, but the Court fails to see how the value of the Hubbards' mortgage has anything to do with the relief sought by CitiMortgage in this suit.

More significantly and fatal to its claim of diversity jurisdiction, CitiMortgage only alleged $10,000 in damages, (Complaint, ¶ 29) and when challenged by defendants, did not provide this Court with any evidence to suggest that it could meet the $75,000 threshold. Neither did CitiMortgage attempt to establish through an affidavit or other form of evidence that the value of the right it sought to establish through its claims for declaratory judgment and injunctive relief met or exceeded the jurisdictional threshold. The fact is that defendants challenged CitiMortgage's statement of diversity jurisdiction and it was up to CitiMortgage to show by a preponderance of evidence that such jurisdiction exists. It failed to do so. Therefore, the Court has no choice but to conclude that it lacks jurisdiction over CitiMortgage's Complaint and that the matter must be dismissed for want of jurisdiction.[19]

---

19    Had this Court concluded that jurisdiction was proper under § 1331 or § 1332, it would have recommended granting in part CitiMortgage's Motion for Summary judgment. Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celeotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249– 50 (1986); *see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1219 (8th Cir.1999). Declaratory judgment is appropriate when "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Minnesota Lawyers Mut. Ins. Co.v. Antonelli, Terry, Stout & Kraus, LLP,* 355 Fed. Appx. 698, 701 (4th Cir.2009) (citations omitted).

2014 WL 1303706

It is uncontested that following the foreclosure of the Hubbards' home in Colorado, the Hubbards created and signed the fabricated order ostensibly issued from this District Court directing CitiMortgage to appear for trial in this Court, and Sellors signed the order as the Judge. Complaint, Ex. A; Harder Aff ., Ex. A. On that basis, plaintiff would be entitled to summary judgment and declaratory judgment finding that the order is counterfeit.

Permanent injunctive relief is appropriate when a plaintiff shows (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, LLC,* 547 U .S. 388, 391 (2006) (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–313 (1982)). In determining whether a party faces a threat of irreparable harm, the Court considers the likelihood of future violations and whether an "injunction is necessary to prevent future violations." *United States v. Articles of Drug,* 825 F.2d 1238, 1248 (8th Cir.1987). Consequently, "a defendant's voluntary cessation 'is an important factor bearing on the question of whether a court should exercise its power to enjoin defendant.' " *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.,* 83 F.Supp.2d 1016, 1020 (D.Minn.2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 283 (1982)).

In response to the instant action and CitiMortgage's Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief, defendants have filed numerous incomprehensible pleadings, (*e.g.* Docket Nos. 8, 12, 13–16, 22, 23, 24, 26–34, 36, 63, 66 68, 74, 75); have commenced two actions in state court—one against CitiMortgage's attorneys and another against a variety governmental officials—which have every indicia of being frivolous; and have peppered various pleadings in this case with theories unfounded in the law such as the sovereign citizen political theory, (Docket Nos. 49, 63, 65, 66). *See United States v. Hart,* 701 F.2d 749 (8th Cir .1983) (finding the justification of sovereign citizenship to be

frivolous where the defendant used it to justify filing "common law liens" against the properties of three federal Internal Revenue Service employees); *see also United States v. Hardin,* 489 Fed. Appx. 984, 986, 2012 WL 4840794, at *1 (8th Cir.2012); *Coppedge v. Deutsche Bank Nat'l Trust,* 511 Fed. Appx. 130, 132 (3rd Cir.2013) (stating that plaintiffs "sovereign-citizen-based averments, which frequently rely on attacks on the judiciary and invocations of alchemistic, archaic, and irrelevant formalism, are unlikely to bring him relief in *any* court of law ....") (emphasis in original); *United States v. Schneider,* 910 F.2d 1569, 1570 (7th Cir.1990) (describing defendant's proposed "sovereign citizen" defense as having "no conceivable validity in American law."); *Duwenhoegger v. King,* Civ. No. 10–3965(PAM/ JSM), 2012 WL 1516865, at *14 (D.Minn. Feb. 13, 2012) (holding "any argument by plaintiff that he is not subject to the laws of Minnesota or the United States because he is a "Sovereign Citizen" is frivolous.") (citations omitted).

If CitiMortgage had established jurisdiction, this Court would have concluded that all of the elements necessary for permanent injunctive relief are present. CitiMortgage suffered irreparable injury by having to devote resources to respond to defendants' repeated and frivolous filings in this matter. Monetary damages are insufficient to compensate CitiMortgage, as it is a virtual certainty that such damages will never be paid. In balancing the hardships between CitiMortgage and defendants, it is evident that CitiMortgage has suffered and will continue to suffer hardship in having to respond to defendants' pleadings, while the hardship to defendants is negligible. It is not a hardship to be enjoined from filing meritless, harassing lawsuits, fraudulent orders and nonsensical pleadings. Finally, the public interest would be served by enjoining future similar behavior by defendants. The public has right to rely on the orderly administration of justice, which has been undermined by defendants' counterfeit order, frivolous and unintelligible pleadings, disrespectful references to the federal judiciary, and rejection of the Federal Rules of Civil Procedure. *See e.g.* Harder Aff., Ex. C (defendants' response to CitiMortgage's Request for Admissions, stating "I do not accept this offer to

contract. I do not consent to these proceedings."). Additionally, there is no sign that defendants intend to voluntarily cease their frivolous lawsuits.

It also is well accepted that where a party has demonstrated a pattern of frivolous, repetitious, malicious, vexatious, or harassing litigation, and where such litigation is likely to continue in the absence of equitable intervention, the court has the authority to enjoin that party from filing, continuing, or otherwise litigating his frivolous claims. *See,* 28 U.S.C. § 1651(a). *See also,* *Sassower v. Carlson,* 930 F.2d 583, 584 (8th Cir.1991) (requiring plaintiff who filed repeated, vexatious lawsuits naming as defendants the district court clerk and magistrate judge who issued a Report and Recommendation stating that his claims in another suit were frivolous, to seek leave of court before filing any further suits in the District of Minnesota); *Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co.* 271 F.Supp.2d 142 (D. D.Cir2003) (granting defendants' motion for an order prohibiting plaintiff from filing additional complaints without leave of court); *Urban v. United Nations,* 768 F.2d 1497, 1500 (D.C.Cir.1985) (stating that the courts have "an obligation to protect and preserve the sound and orderly administration of justice"). "In fashioning a remedy to stem the flow of frivolous actions, a court must take great care not to unduly impair a litigant's constitutional right of access to the courts." *Urban,* 768 F.2d at 1500. However, in appropriate circumstances a court may issue a very broad injunction. *Id.* (enjoining plaintiff from "filing any civil action in this *or any other federal court of the United States* without first obtaining leave of that court) (emphasis added); *In re Green,* 669 F.2d 779, 787 (D.C.Cir.1981) (ordering that litigant "may not file *any* civil action without leave of court.") (emphasis added), abrogated on other grounds, *Hurt v. Social Sec. Admin.,* 544 F.3d 308, 310 (C.A.D.C.2008).

Our order is admittedly severe. But we believe severity is called for at this time. This court does not intend to be burdened and harassed by the frivolous and malicious filings that have become the trademark of [the litigant]. We hope the genuine prospect of further incarceration that our order raises will send a clear message to [the litigant] to observe strictly the terms and conditions of this order or else risk another postponement of his release from prison. We are not relying on any hope of reforming [the litigant], or of appealing to his reason; we are saying point-blank that if he continues to show his contempt for the orderly judicial process, that process will accord him further time in prison as summarily as the law allows.

669 F.2d at 787.

Therefore, again assuming that the Court had determined it enjoyed jurisdiction over this action, the Court would have recommended the following relief:

(1) The order setting trial attached as Exhibit A to the Complaint be declared void.

(2) Defendants be permanently enjoined from creating, serving or filing in any state or federal court, or in connection with any state or federal suit, any fraudulent or counterfeit pleadings, papers, orders, or other documents purporting to be from or involving any federal or state court action.

(3) Defendants be enjoined from filing any civil action in this court or any other federal or state court against CitiMortgage, Inc. or any of its officers or employees without first obtaining leave of the court in which they seek to commence an action. In seeking leave to file, defendants must certify that the claim or claims they wish to present are new claims never before raised and disposed of on the merits by any state or federal court. Defendants must also certify that the claim or claims are not frivolous, malicious, or brought in bad faith.

In explaining the need to deter those who abuse the judicial process, the court in *In re Green* stated:

## IV. RECOMMENDATION

For the reasons set forth above, it is recommended that:

(1) CitiMortgage's Motion for Summary Judgment, Declaratory Judgment and Injunctive Relief [Docket No. 36] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332;

(2) CitiMortgage's Motion for an Order to Show Cause [Docket No. 59] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332;

2014 WL 1303706

(3) Defendants' Motion for Summary Judgment [Docket No. 68] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332;

(4) CitiMortgage's Motion to Strike [Docket No. 69] be **DENIED** due to lack of jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332.

(5) This matter be dismissed without prejudice.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1303706

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3949040

2023 WL 3949040
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin HODGE, Jr., Plaintiff,
v.
Kenneth J. KAUFMANN, Defendant.

23-CV-3049 (LTS)
|
Signed June 12, 2023

**Attorneys and Law Firms**

Benjamin Hodge, Jr., Bronx, NY, Pro Se.

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, brings this action
invoking the Court's federal question jurisdiction. He alleges
that his former criminal defense counsel, Defendant Kenneth
Kaufmann, violated his rights under the Fifth, Sixth, and
Fourteenth Amendments to the U.S. Constitution. Plaintiff
was acquitted of all of the criminal charges brought against
him, after Defendant was replaced with new defense counsel.
By order dated April 13, 2023, the Court granted Plaintiff's
request to proceed *in forma pauperis*, that is, without
prepayment of fees.

STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts
screen complaints brought by prisoners who seek relief
against a governmental entity or an officer or employee of a
governmental entity. *See* 28 U.S.C. § 1915A(a). The Court
must dismiss a prisoner's *in forma pauperis* complaint, or any
portion of the complaint, that is frivolous or malicious, fails
to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such
relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v.
Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must
also dismiss a complaint if the Court lacks subject matter
jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original). But the "special solicitude" in *pro se* cases, *id.* at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

Rule 8 requires a complaint to include enough facts to state
a claim for relief "that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is
facially plausible if the plaintiff pleads enough factual detail
to allow the Court to draw the inference that the defendant is
liable for the alleged misconduct. In reviewing the complaint,
the Court must accept all well-pleaded factual allegations as
true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it
does not have to accept as true "[t]hreadbare recitals of the
elements of a cause of action," which are essentially just legal
conclusions. *Twombly*, 550 U.S. at 555. After separating legal
conclusions from well-pleaded factual allegations, the Court
must determine whether those facts make it plausible – not
merely possible – that the pleader is entitled to relief. *Id.*

BACKGROUND

Plaintiff alleges the following facts. He was charged with
felony crimes and prosecuted in the Supreme Court of the
State of New York, Bronx County. Kenneth Kaufmann served
as Plaintiff's defense counsel until October 3, 2019, when
Kaufmann was "relieved of his duties."[1] Plaintiff's pretrial
detention was longer than it should have been because
Kaufmann failed to obtain discovery or have an "appropriate
strategy for trial." (ECF 1 at 5.) For example, Kaufmann
failed to ask his investigator to interview key witnesses Raven
Pryor or Najirae Williams, even though Pryor was in the
custody of the New York City Police Department, and the
investigator could have interviewed them through the Bronx
County District Attorney's Office.

1    It is unclear from the facts alleged whether Plaintiff
requested that Kaufmann be relieved as defense
counsel.

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 55 of 110

Hodge v. Kaufmann, Not Reported in Fed. Supp. (2023)
2023 WL 3949040

**\*2** Kaufmann also failed to take appropriate action regarding forensic test results and failed to inform Plaintiff of important developments, including an allegedly inappropriate request from the Bronx County Assistant District Attorney. In addition, Kaufmann tried to argue to the state court that the search of Plaintiff's vehicle had been improper because the warrant did not issue until after the search; that Plaintiff had been improperly arrested without probable cause; and that detectives had made false statements in support of the warrant. Defense counsel also failed to timely obtain Plaintiff's medical records from Saint Barnabas Hospital, despite Plaintiff's having signed an authorization for disclosure. Kaufmann also misled Plaintiff about the identity of a prosecution witness and failed to recognize inconsistencies in witnesses' accounts of events. He also failed to take appropriate action regarding defects in the photo array identification procedure; failed to move to dismiss the charges for lack of evidence; and failed to provide accurate information about plea deal offers.

Plaintiff attaches a document reflecting that, on November 18, 2021, he was acquitted of the charges against him. Plaintiff sues Defendant Kaufmann, seeking damages from his former defense counsel on the ground that he violated Plaintiff's rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

## DISCUSSION

### A. Constitutional Violation

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." West v. Atkins, 487 U.S. 42, 48-49 (1988). Because Plaintiff invokes federal question jurisdiction and asserts violations of his constitutional rights, the Court construes Plaintiff's claims as arising under Section 1983.[2]

[2]    The facts can be understood, in some instances, as suggesting that defense counsel failed to raise constitutional arguments (for example, he allegedly failed to raise an argument that Plaintiff's rights under the Fourth Amendment were violated when his car was searched without a warrant), rather than allegedly violating Plaintiff's constitutional rights himself.

A claim for relief under Section 1983, however, must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties therefore generally are not liable under the statute. Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013) (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)); see also Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Absent special circumstances suggesting concerted action between an attorney and a state representative, see Nicholas v. Goord, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)), the representation of a defendant by counsel in state criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under Section 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. See Bourdon v. Loughren, 386 F.3d 88, 90 (2d Cir. 2004) (citing Polk Cnty. v. Dodson, 454 U.S. 312, 324-25 (1981)); see also Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of Section 1983). Defendant Kaufmann, in representing Plaintiff in criminal proceedings, thus does not qualify as a state actor, even if he was appointed by the state court to represent Plaintiff or is a public defender. Because a Section 1983 claim for the violation of constitutional rights can be asserted only against a state actor, and Defendant Kaufmann was not a state actor in acting as defense counsel, Plaintiff fails to state a claim on which relief can be granted under Section 1983. The Court therefore dismisses these claims. 28 U.S.C. § 1915(e)(2)(B)(ii).

### B. Supplemental State Law Claims

**\*3** A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of Plaintiff's state law claims.

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 56 of 110
Hodge v. Kaufmann, Not Reported in Fed. Supp. (2023)
2023 WL 3949040

*See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

**C. Leave to Amend**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**CONCLUSION**

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction of Plaintiff's state law claims and dismisses these claims without prejudice to Plaintiff's refiling them in an appropriate forum.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3949040

---

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.

434 Fed.Appx. 32
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Anthony Jerome McKNIGHT, Plaintiff–Appellant,

v.

Dawn Marie MIDDLETON et al., Defendants–Appellees.

No. 10–1664–cv.
|
Oct. 5, 2011.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, J.).

**\*33  UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Anthony Jerome McKnight, Philadelphia, PA, pro se.

Dawn Marie Middleton, Brooklyn, NY, pro se.

Eric T. Schneiderman, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Benjamin N. Gutman, Deputy Solicitor General, and Robert C. Weisz, Assistant Solicitor General, of counsel, for Appellees County of Kings Family Court, Robert Ratanski, John Doe, State of New York, Paula J. Hepner, and Other Unknown Persons, New York, NY.

Lisa L. Shrewsberry, Traub Lieberman Straus & Shrewsberry LLP, for Appellees Harold A. Mayerson, Mayerson Stutman Abramowitz Royer LLP, and Sophie Jacobi, Hawthorne, NY.

Janet Neustaetter, for Appellees Carol Sherman, Martha Schneiderman, and The Children's Law Center, Brooklyn, NY.

Dennis J. Dozis, Kaufman Borgeest & Ryan LLP, for Appellees Eileen Montrose and Louis Lauro, New York, NY.

PRESENT: WALKER, DENNY CHIN, RAYMOND J. LOHIER, JR., Circuit Judges.

***SUMMARY ORDER***

**\*\*1**  Plaintiff-appellant Anthony Jerome McKnight appeals from the district court's dismissal of his Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The 130–page Amended Complaint asserted 72 claims against defendants-appellees pursuant to, *inter alia,* 42 U.S.C. §§ 1981, 1982, 1983, 1985(3), 1986, and 1988, the First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendments, the Parental Kidnaping Prevention Act, the Americans with Disabilities Act, the Uniform Child Custody Jurisdiction and Enforcement Act, and federal and state wiretapping law, and for unlawful interference with his rights under a custody agreement, defamation, invasion of privacy, and intentional infliction of emotional distress. We assume the parties' familiarity with the underlying facts, procedural history of the case, and the issues on appeal.

This Court reviews *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

We have conducted an independent and *de novo* review of the record in light of these principles. We affirm the district court's judgment for substantially the reasons stated by the district court in its thorough and well-reasoned memorandum order.

We have reviewed McKnight's remaining arguments and find them to be without merit.

**\*34**  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED.**

**All Citations**

434 Fed.Appx. 32, 2011 WL 4582438

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4370272
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Malcolm BEY, Francique Bey, Rein Bey,
Drizzle Bey, Truth Bey, and Amicus Curiae
Bey, in propia persona, sui juris, Plaintiffs,

v.

State of NEW YORK, Nassau County Inc., Nassau
County Family Court, Nassau County Child Protective
Services, Edmund Dane, Suzanne Leahey, Elizabeth
Mcgrath, rosalie fitzgerald, john Coppola, Alton
Williams, David Sullivan, Kathleen Rice, David Gotimer,
Bruce Cohen, Merry–Lou Ferro, Cheryl Kreger, Warren
Freeman, and Jane Doe/John Doe 1–100, Defendants.

No. 11–CV–3296 (JS)(WDW).
|
Sept. 21, 2012.

**Attorneys and Law Firms**

Malcolm Bey, Francique Bey, Rein Bey, Drizzle Bey, Truth
Bey, Amicus Curiae Bey, Uniondale, NY, pro se.

Ralph Pernick, Esq., N.Y.S. Attorney General's Office,
Mineola, NY, for Defendants N.Y.S. Defendants.

Liora M. Ben–Sorek, Esq., Nassau County Attorney's Office,
Mineola, NY, for Defendants County Defendants.

Adam Daniel Levine, Esq., Matthew K. Flanagan, Esq.,
Catalano, Gallardo & Petropoulous, LLP, Jericho, NY, for
Defendant Bruce Cohen, Esq.

Jessica Zimmerman, Esq., Marian C. Rice, Esq., L'Abbate,
Balkan, Colavita & Contini LLP, Garden City, NY, for
Defendant Cheryl Kreger, Esq.

*MEMORANDUM & ORDER*

SEYBERT, District Judge.

**\*1** Presently pending before the Court are the following
motions: (1) Plaintiff Malcolm Bey's ("Mr.Bey") motions
to "set aside and vacate" this Court's Order dated July 28,
2011 (Docket Entries 19, 27); (2) Mr. Bey's motion for a

default judgment (Docket Entry 39); (3) a motion to dismiss
the claims against Defendants State of New York, Nassau
County Family Court, Judge Edmund Dane, Judge David
Sullivan, Rosalie Fitzgerald, and John Coppola (the "State
Defendants") (Docket Entry 25); (4) a motion to dismiss
the claims against Bruce Cohen (Docket Entry 29); and (5)
motions to dismiss the claims against Cheryl Kreger (Docket
Entries 18, 32).[1] For the following reasons, Mr. Bey's
motions to vacate and for a default judgment are DENIED and
the motions to dismiss are GRANTED (with the exception of
Defendant Kreger's letter-motion at Docket Entry 18, which
is DENIED AS MOOT).

[1]     There is also a motion pending at Docket Entry
23. This is not a motion, however, but rather an
opposition to Plaintiffs' motion to vacate. The Clerk
of the Court is directed to terminate the motion and
amend the docket entry to reflect that it is a "Letter
in Opposition" to Docket Entry 19.

*BACKGROUND*

The Plaintiffs in this action are Mr. Bey; his wife, Francique
Bey ("Mrs.Bey"), and their minor children, Rein Bey, Drizzle
Bey, Truth Bey, and Amicus Curiae Bey (the "Bey Children").
Mr. Bey commenced this action *pro se,* on behalf of himself,
his wife, and his children against Nassau County, Inc. [sic],
Nassau County Child Protective Services ("CPS"), Suzanne
Leahey, Elizabeth McGrath, Alton Williams, Nassau County
District Attorney Kathleen Rice, David Gotimer, Merry–
Lou Ferro, and Warren Freeman (collectively, the "County
Defendants"), the State Defendants, Mr. Cohen, and Ms.
Kreger arising out of petitions for child neglect that were
filed in Nassau County Family Court in 2009 and 2010. The
Court will briefly summarize the facts as stated in the
Complaint-which are presumed to be true for the purposes of
this Memorandum and Order-that are relevant to the pending
motions.

On or around June 4, 2009, the Bey Children were questioned
at school by CPS regarding suspected child abuse occurring
in the Bey home. (Compl.¶ 26.) The Bey Children were later
taken to the police station for further questioning. (Compl.¶
26.) Mrs. Bey was arrested, and the Bey Children returned
home with their father. (Compl.¶ 26.) The following day,
however, the Bey Children were removed from the home and
placed in foster care (Compl.¶¶ 27, 31), and on or around June

9, 2009 petitions for neglect were filed with the Family Court against Mr. and Mrs. Bey. (Compl.¶ 31.)

Shortly thereafter, CPS inspected the Bey home and, after finding it habitable for the Bey Children, returned them to their father. (Compl.¶ 32.) A temporary restraining order was issued against Mrs. Bey, however, and she was only allowed supervised visitation with her children. (Compl.¶ 32.) She was ordered to take parenting and anger management classes. (Compl.¶ 34.) During this time, Mr. Bey "lost work" because he could not afford daycare, and he and his family were eventually evicted from their home. (Compl.¶ 35.) In December 2009, the neglect petition against Mr. Bey was withdrawn. (Compl.¶ 36.)

**\*2** In April 2010, a new neglect petition was filed and a temporary restraining order issued against Mr. Bey. (Compl.¶ 37.) During the next few months, the Bey Children were repeatedly questioned by CPS at school and visited by CPS twice a month at home. (Compl.¶ 39.) On June 7, 2010, Mr. Bey attempted to file an "objection and counterclaim" in Family Court, but Defendant Coppola, the Family Court's Deputy Chief Clerk, refused to file it. (Compl.¶ 40.) Mr. Bey was able to successfully file it, however, a few days later. (Compl.¶ 41.)

Mr. Bey returned to Family Court several times during the next few months for appearances before Judge Dane related to the neglect petition. (Compl.¶ 42.) [2] The proceedings were repeatedly adjourned, and Mr. Bey eventually told Judge Dane that he would not be returning to court. (Compl.¶ 42.) Judge Dane warned him that failure to appear would result in a warrant being issued for his arrest. (Compl.¶ 42.)

[2]     It appears as though Judge Dane presided over Mr. Bey's neglect proceedings. It is unclear what role, if any, Judge Sullivan had in these proceedings.

On October 19, 2010, Mr. Bey went to the Family Court to file papers and bumped into his court-appointed attorney, Mr. Cohen, leaving Judge Dane's chambers. (Compl.¶ 44.) Mr. Cohen advised him that he had missed a court appearance that morning before Judge Dane and that it had been rescheduled for 2:00PM. (Compl.¶ 44.) When Mr. Bey returned that afternoon, however, he was arrested for failing to appear that morning and incarcerated. (Compl.¶ 44.)

In January 2011, Judge Dane extended the temporary restraining order issued against Mr. Bey and ordered that he

be mentally evaluated. (Compl.¶ 45.) Mr. Bey returned to court on March 15, 2011 for trial. CPS asked Mr. Bey to turn custody of the Bey Children over to CPS for one year, but Mr. Bey refused and his trial was adjourned to April 29, 2011. (Compl.¶¶ 46.48.) Around the same time, Mr. Bey requested copies of "everything in the court file." (Compl.¶ 47.) Defendants Fitzgerald, the Family Court's Chief Clerk, and Coppola gave him some documents but not others. (Compl.¶ 47.) Mr. Bey returned to court on April 29 and was asked to turn over custody of his children to CPS for six months, but he again refused. (Compl.¶ 49.) His trial was adjourned to May 13, 2011. (Compl.¶ 49.) On that date, he was again asked to give CPS custody of his children. (Compl.¶ 50.) This time, Ms. Kreger, the Bey Children's appointed law guardian, "attempt[ed] to coerce" him to agree to it, but he again refused. (Compl.¶ 50.) The trial was rescheduled to June 8, 2011 (Compl.¶ 51), and on June 15, 2011, Ms. Kreger spoke with the Bey Children at school about the alleged neglect (Compl.¶ 52.)

Mr. Bey commenced this action on July 8, 2011, asserting claims for, *inter alia,* violations of the Constitution (*e.g.,* due process and unreasonable search and seizure), various criminal statutes (*e.g.,* genocide and kidnapping), international treaties and provisions of the United Nations' Charter, as well as a claim under the Alien Tort Claims Act and claims for "breech [sic] of trust and fiduciary duty," for "use of statutes[,] ordinances, rules and policies of the corporate state of New York[,] not a rule of law against indigenous man," and fraud. He is seeking monetary, declaratory, and injunctive relief. Mr. Bey simultaneously filed an application for a temporary restraining order and preliminary injunction which was denied by this Court on July 13, 2011. [3]

[3]     The contents of Mr. Bey's application are incomprehensible; however, the Complaint asserts that he is seeking an order enjoining the Family Court proceeding and vacating any judgments issued to date.

**\*3** On July 28, 2011, this Court entered an Order that: (1) reminded Plaintiffs that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure they had to serve process on Defendants by November 7, 2011 or their Complaint would be dismissed; (2) advised Plaintiffs of their duty to keep the Court informed of any change of address; and (3) warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed without prejudice unless

counsel entered a notice of appearance on their behalf within thirty days. (Docket Entry 7.) No counsel has filed a notice of appearance on behalf of the Bey Children to date.

Presently pending before the Court are the following: (1) Mr. Bey's motions to vacate the July 28, 2011 Order, (2) motions to dismiss filed on behalf of the State Defendants, Mr. Cohen, and Ms. Kreger, and (3) Mr. Bey's motion for a default judgment against all Defendants. [4] Plaintiffs have not opposed the motions to dismiss.

[4]    The County Defendants did not move to dismiss but rather answered the Complaint on November 7, 2011 and asserted cross-claims against the other defendants for indemnification and/or contribution.

### DISCUSSION

Before discussing the merits of the pending motions, the Court must briefly address a threshold issue. Pursuant to Rule 11(a) of the Federal Rules of Civil Procedure, "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record ... or, by a party personally if the party is unrepresented." Since a non-attorney, *pro se* party may not represent another's interests, *see Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998), every *pro se* plaintiff must sign a copy of the operative complaint in order to be a party to the action, *see Lynch v. DeMarco,* No. 11–CV–2602, 2011 WL 3418390, at *2 (E.D.N.Y. July 29, 2011). Here, only Mr. Bey signed the Complaint; therefore, he is the only proper plaintiff in this action. If the Court does not receive a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order, all of her claims will be dismissed.

### I. *Motion to Set Aside and Vacate*

On September 19, 2011, Mr. Bey filed a motion requesting that the Court "take mandatory judicial notice that the order dated July 28, 2010[sic], signed by Judge Joanna Seybert is inconsistent with Stare decisis [sic] Supreme Court Ruling [sic] *Winkleman v. Parma Central School District,* 550 U.S. 516 (2007)" and "set aside and vacate [this] void order." (Docket Entry 19.) Mr. Bey filed a similar (albeit less clear) motion to "take mandatory judicial notice" and "set aside and vacate" the July 28, 2011 Order on October 31, 2011. (Docket Entry 27.) These motions are denied for three reasons.

*First,* to the extent that Mr. Bey is seeking to vacate a "final judgment, order, or proceeding" pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, his motion is premature as the July 28, 2011 Order is not a "final" order for the purposes of Rule 60(b). *See Byrne v. Liquid Asphalt Sys., Inc.,* 250 F.Supp.2d 84, 87 (E.D.N.Y.2003) ("Courts have held that a final judgment is needed to support a Rule 60(b) motion." (citation omitted)); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 526–27 (N.D.N . Y.1995) (finding that an order "dismissing some but not all of the defendants, and dismissing some but not all of plaintiff's claims, was interlocutory and thus not 'final' for the purposes of Rule 60(b)").

**\*4** *Second,* to the extent that Mr. Bey's motion is more properly construed as one for reconsideration under Local Civil Rule 6.3, his motion is time-barred. Local Civil Rule 6.3 requires motions for reconsideration to "be served within fourteen ¶ 4) days after the entry of the Court's determination of the original motion." Here, Mr. Bey waited almost two months after the Court issued its Order to file his first motion to vacate and another six weeks to file his second motion to vacate. Thus, both motions are time-barred and are, accordingly, DENIED. [5]

[5]    Mr. Bey argues that his motion is "timely because non attorneys are not bound by the same rules as attorneys." (Docket Entry 19, at 2.) This is not true. A plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (internal quotation marks and citation omitted).

*Finally,* Mr. Bey's argument in support of reconsideration is without merit. Mr. Bey argues that he and his wife may represent the interests of their infant children *pro se.* However, while a parent may bring a lawsuit on behalf of an infant child, it is well established that the parent cannot do so *pro se. See Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (holding that a father was not allowed to bring suit on behalf of his minor daughter without representation by counsel); *Berrios v. N.Y.C. Hous. Auth.,* 564 F.3d 130, 133 (2d Cir.2009) ("The fact that a minor or incompetent person must be represented by a next friend, guardian ad litem, or other fiduciary does not alter the principle ... that a non-attorney is not allowed to represent another individual in federal court litigation without the

assistance of counsel."). The Court warned Plaintiffs that the claims brought on behalf of the Bey Children would be dismissed unless counsel filed a notice of appearance by August 27, 2011. More than a year has passed and no lawyer has appeared on behalf of the Bey Children. Accordingly, their claims are DISMISSED without prejudice.

## II. *Motion for Default Judgment*

Also pending is Mr. Bey's motion for the entry of default and a default judgment against all Defendants. A party is entitled to an entry of default when the party against whom judgment is sought "has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). In the present case, counsel for Defendants either filed a motion to dismiss or an answer on behalf of every Defendant (*see* Docket Entries 25, 29, 32, 34), and the Clerk of the Court noted this on December 7, 2011 when he refused to enter a certificate of default against Defendants (Docket Entry 44). Thus, there is no basis for entering a default judgment in this case, and Mr. Bey's motion is DENIED.

## III. *Motions to Dismiss*

There are three motions to dismiss pending: one filed by the State Defendants, one filed by Cheryl Kreger, and one filed by Bruce Cohen. The Court will first discuss the applicable standard of review before turning to the merits of the pending motions.

### A. *Standard of Review under Rule 12(b)(6)*

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). *First,* although the Court must accept all of a complaint's allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris,* 572 F.3d at 72 (alteration in original) (quoting *Iqbal,* 556 U.S. at 678) (internal quotation marks omitted). *Second,* only complaints that state a "plausible claim for relief" survive a motion to dismiss. *Id.* (internal quotation marks and citation omitted). Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotation marks and citation omitted). While *pro se* plaintiffs enjoy a somewhat more liberal

pleading standard, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted), they must still comport with the procedural and substantive rules of law. *Colo. Capital v. Owens,* 227 F.R.D. 181, 186 (E.D.N.Y.2005).

### B. *The State Defendants' Motion to Dismiss*

**\*5** For the following reasons, the Court grants the State Defendants' motion to dismiss.

#### 1. *Claims against New York State and the Nassau County Family Court*

All of Mr. and Mrs. Bey's claims against the State of New York and the Nassau County Family Court are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." *Russell v. Dunston,* 896 F.2d 664, 667 (2d Cir.1990) (citations omitted); *see also Bd. of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). This bar precludes suits against states for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Cory v. White,* 457 U.S. 85, 90–91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *see also Atl. Healthcare Benefits Trust v. Googins,* 2 F.3d 1, 4 (2d Cir.1993). Therefore, all claims against the State of New York must be dismissed with prejudice.

The Nassau County Family Court is also immune from suit under the Eleventh Amendment because it is an arm of the State of New York. *Madden v. Vt. Sup.Ct.,* 8 F. App'x 128, 129 (2d Cir.2001) (finding that claims against the Vermont Supreme Court were barred by the Eleventh Amendment); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (finding that the New York state Unified Court System, of which a county court is a part, is an "arm of the State," and therefore entitled to Eleventh Amendment immunity); *Manko v. Steinhardt,* No. 11–CV–5430, 2012 WL 213715, at \*3 (E.D.N.Y. Jan. 24, 2012) (dismissing claim against the Kings County Supreme Court of the State of New York Clerk's Office because it was barred by Eleventh Amendment immunity as an arm of the State of New York).

Accordingly, the claims against the Nassau County Family Court must also be dismissed with prejudice.

2. *Claims against Judge Dane and Judge Sullivan*
The claims for monetary relief against Judge Dane and Judge Sullivan must be dismissed because "[i]t is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction," *Miller v. Cnty. of Nassau,* 467 F.Supp.2d 308, 312 (E.D.N.Y.2006) (citing *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Maestri v. Jutkofsky,* 860 F.2d 50, 52–53 (2d Cir.1988)), and that such "immunity is not overcome by allegations of bad faith or malice," *Mireles,* 502 U .S. at 11 (citation omitted); *see also Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ( "[I]mmunity applies even when the judge is accused of acting maliciously and corruptly."). Here, as all of the claims against Judge Dane and Judge Sullivan arise solely out of actions they allegedly took from the bench while presiding over various proceedings involving Mr. and Mrs. Bey, their alleged wrongful conduct falls squarely within the scope of absolute judicial immunity. Accordingly, all of Mr. and Mrs. Bey's claims for monetary relief are dismissed with prejudice.

**\*6** Mr. and Mrs. Bey are also seeking declaratory and injunctive relief, which do not fall within the ambit of judicial immunity. These claims, however, fail as a matter of law. *First,* Mr. and Mrs. Bey's claims for injunctive relief under Section 1983 are barred because "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Dorman v. Higgins,* 821 F.2d 133, 139 (2d Cir.1987). Further, to the extent that Mrs. Bey's constitutional claims arise out of the ongoing Family Court proceedings, they are barred either by the *Younger* abstention doctrine, *see Diamond "D" Const. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002) ( "*Younger* generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." (citing *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)); *Donkor v. N.Y.C. Human Res. Admin. Special Servs. for Children,* 673 F.Supp. 1221, 1224–27 (S.D.N.Y.1987), or the *Rooker–Feldman* doctrine, [6] *see Phifer v. City of N.Y.,* 289 F.3d 49, 57 (2d Cir.2002) ("This court may not review the family court's determinations regarding custody, neglect and visitation" if "those issues were decided by the family court after providing [the plaintiff] with a full and fair opportunity to litigate those issues").

[6]     Although it appears as though the Family Court proceedings against Mrs. Bey are ongoing and the neglect petitions filed against Mr. Bey have been dismissed (Kreger Decl. ¶ 7 n. 1), Mr. and Mrs. Bey are also seeking, *inter alia,* vacatur of the "judgments issued by The Family Court and Nassau County Court CPS" (Compl. at 42).

*Second,* Mr. and Mrs. Bey's claim for breach of the public's trust is not a cognizable cause of action. *See Brady v. Lynes,* No. 05–CV–6540, 2008 WL 2276518, at \*6 (S.D.N.Y. June 2, 2008).

*Third,* their claim under the Alien Tort Claims Act fails because they are not "aliens" within the meaning of the statute. *See Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002) (defining "alien" in the context of the Alien Tort Claims Act as a "foreign born person who has not qualified as a citizen of the country" (internal quotation marks and citation omitted)). Mr. and Mrs. Bey assert that they are "aliens" because they have declared their independence from the United States (*see* Mr. Bey's Aff. in Support of Prelim. Inj. ¶ 4 ("Indigenous Affiant declares independence from the USA and all sub-corporations thereof, and heretofore, herein and hereafter claims absolute power, authority and control over himself, without limitation, and herein states, for the record, that he is a free, sovereign indigenous political power holder ....); *see also* Compl. at 1 (Mr. Bey describing himself as a "Free Indigenous Sovereign Political Power Holder"); *id.* at 42 (requesting a "Declaratory Judgment verifying the lawful indigenous status of The Bey Family")); however, such arguments have been uniformly rejected by courts in this Circuit and others, *see, e.g., United States v. Hilgeford,* 7 F.3d 1340, 1342 (7th Cir.1993) ("The defendant in this case apparently holds a sincere belief that he is a citizen of the mythical 'Indiana State Republic' and for that reason is an alien beyond the jurisdictional reach of the federal courts. This belief is, of course, incorrect."); *Duwenhoegger v. King,* No. 10–CV–3965, 2012 WL 1516865, at \*14 (D.Minn. Feb. 13, 2012) ("[A]ny argument by plaintiff that he is not subject to the laws of Minnesota or the United States because he is a 'Sovereign Citizen' is frivolous." (collecting cases)); *M & I Marshall & Ilsley Bank v. Glavin,* No. 10–CV–0616, 2011 WL 322663, at \*1 (W.D.Wis. Jan. 31, 2011) ("This 'sovereign citizen' argument has been rejected repeatedly by courts.");

*United States v. Lumumba,* 741 F.2d 12, 14–15 (2d Cir .1984) (rejecting criminal defendant's argument that he is immune from prosecution due to his "proclaimed status" as "Vice President and Minister of Justice" of the "independent state" of "the Republic of New Afrika"—a self-created "Nation of Afrikans born in North America as a consequence of ... slavery" (alteration in original)).

**\*7** *Fourth,* any of Mr. and Mrs. Bey's claims arising under Title 18 of the United States Code necessarily fail because there is no private right of action under criminal statutes, *see, e.g., Sanchez v. Dankert,* No. 00–CV–1143, 2002 WL 529503, at \*10–11 (S.D .N.Y. Feb. 22, 2002) (collecting cases), and there is similarly no private right of action under international treaties or provisions of the United Nation's Charter, *see, e.g., id.* at \*11; *United States v. De La Pava,* 268 F.3d 157, 164 (2d Cir.2001) ("[T]here is a strong presumption against inferring individual rights from international treaties."); *Garza v. Lappin,* 253 F.3d 918, 924 (7th Cir.2001) ("[A]s a general rule, international agreements, even those benefitting private parties, do not create private rights enforceable in domestic courts."); RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES,,,, § 907 cmt. a. ("International agreements ... generally do not create private rights or provide for a private cause of action in domestic courts...."); *Joyner–El v. Giammarella,* No. 09–CV–3731, 2010 WL 1685957, at \*3 n. 4 (S.D.N.Y. Apr. 15, 2010) (finding that the United Nations' Universal Declaration of Human Rights and Declaration on the Rights of Indigenous Peoples do not create federal causes of action (citing *Sosa v. Alvarez–Machain,* 542 U.S. 692, 734, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004))).

*Finally,* Mr. and Mrs. Bey's claim that "any Laws[,] statutes, ordinances and rules made since 1867 are unconstitutional" because Congress "ceased to exist as a lawful deliberative body" after the South seceded from the Union during the Civil War is frivolous and entirely without merit.

Accordingly, all claims against Judge Sullivan and Judge Dane are hereby dismissed with prejudice. [7]

[7]    To the extent that Mr. and Mrs. Bey assert claims for declaratory relief arising under state law, the Court declines to extend supplemental jurisdiction, and those claims are dismissed without prejudice. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

3. *Claims against Defendants Fitzgerald and Coppola*
Defendants Fitzgerald and Coppola are also entitled to immunity because it is well established that "the clerk of the court and deputy clerks are shielded by an absolute quasijudicial immunity, particularly when they 'perform tasks that are an integral part of the judicial process.' " *McGann v. Lange,* No. 96–CV–0859, 1996 WL 586798, at \*2 (E.D.N.Y. Oct. 10, 1996) (quoting *Mullis v. U.S. Bankr.Ct.,* 828 F.2d 1385, 1390 (9th Cir.1987)); *see also Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding that the "court's inherent power to control its docket is part of its function of resolving disputes between parties" and is thus "a function for which judges and their supporting staff are afforded absolute immunity"). In this case, Mr. and Mrs. Bey allege that Defendant Coppola refused to file Mr. Bey's "objection and counter claim" (Compl.¶ 40) and that Coppola and Fitzgerald did not provide him with a copy of the entire court file upon request (Compl .¶ 47). Courts have found similar actions by court clerks to be shielded by absolute quasi-judicial immunity. *See, e.g., Rodriguez,* 116 F.3d at 66 (finding that clerks were entitled to quasi-judicial immunity for, *inter alia,* refusing an inmate's request for records on appeal); *Pukulin v. Gonzalez,* No. 07–CV–0412, 2007 WL 1063353, at \*2 (E.D.N.Y. Apr. 5, 2007) (finding that absolute judicial immunity extends to "the Clerk's Office['s] activities of filing and docketing legal documents"); *McKnight v. Middleton,* 699 F.Supp.2d 507, 525–26 (E.D.N.Y.2010) (granting immunity to Family Court clerk for claims arising out of his failure to process the plaintiff's motions); *Mullis,* 828 F.2d at 1390 (finding that clerk was entitled to quasi-judicial immunity for, *inter alia,* refusing to file a document with the court); *Stewart v. Minnick,* 409 F.2d 826, 826 (9th Cir.1969) (holding that quasi-judicial immunity shielded court clerk from suit arising out of his refusal to provide litigant with a portion of the trial transcript).

**\*8** Accordingly, and for the reasons discussed above, all claims against Defendants Fitzgerald and Coppola are dismissed.

C. *Defendant Cohen's Motion to Dismiss*
The only allegations in the Complaint against Defendant Cohen, who according to the Complaint was Mr. and Mrs. Bey's court-appointed attorney (Compl.¶ 19), are that on October 19, 2010, he advised Mr. Bey that he missed a court appearance and directed him to return to court at 2:00PM (Compl.¶ 44). Upon Mr. Bey's return to court later that day, he was arrested. (Compl.¶ 44 .) Defendant Cohen argues that the

claims against him must be dismissed because: (1) the Court lacks subject matter jurisdiction, (2) he was never properly served, and (3) the Complaint fails to state a claim.

The Court finds Defendant Cohen's jurisdictional arguments to be without merit as (1) the Complaint asserts claims for violations of the United States Constitution so this Court has subject matter jurisdiction, *see* 28 U.S.C. § 1331, and (2) allegations of improper service, without a sworn affidavit, are insufficient to establish improper service, *see United States v. Riser,* No. 10–CV–4550, 2011 WL 1004566, at *3 (E.D.N.Y. Mar. 16, 2011).

However, the Court finds that Mr. and Mrs. Bey have failed to state a cognizable claim for relief against Defendant Cohen. Their claims arising under Section 1983 fail because Defendant Cohen is not a state actor. *See Browdy v. Karpe,* 131 F. App'x 751, 753 (2d Cir.2005) ("[C]ourt-appointed attorneys 'performing a lawyer's traditional functions as counsel' to a defendant do not act 'under color of state law' and, therefore, are not subject to suit under 42 U.S.C. § 1983." (quoting *Rodriguez,* 116 F.3d at 65–66)). And to the extent that Mr. and Mrs. Bey attempt to cure this defect by conclusorily alleging that Defendant Cohen conspired with state officials, "[a] merely conclusory allegation that a private [party] acted in concert with a state actor does not suffice to state a § 1983 claim against [a] private [party]." *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (citation omitted); *accord Browdy,* 131 F. App'x at 753.

Accordingly, all constitutional claims (and for the reasons discussed above, all other claims) against Defendant Cohen must be dismissed.

### D. *Defendant Kreger's Motion to Dismiss*

Mr. and Mrs. Bey's claims against Defendant Kreger arise out of her appointment as the Bey Children's law guardian. Defendant Kreger argues that the claims asserted against her must be dismissed because: (1) she is protected by quasijudicial immunity; (2) Mr. and Mrs. Bey lack standing to assert claims against her; (3) Mr. and Mrs. Bey lack privity with her; (4) the claims are barred by the *Rooker–Feldman* doctrine; (5) the Complaint does not contain a short and concise statement of Plaintiffs' claims in violation of Rule 8 of the Federal Rules of Civil Procedure; and (6) the Complaint fails to state a claim upon which relief can be granted. Because the Court finds that Defendant Kreger is protected by quasi-judicial immunity, it will not address her other arguments.

**\*9** Courts in New York have consistently held that law guardians are entitled to absolute quasi-judicial immunity for actions taken within the scope of their appointment. *See Yapi v. Kondratyeva,* 340 F. App'x 683, 685 (2d Cir.2009); *Dowlah v. Dowlah,* No. 09–CV–2020, 2010 WL 889292, at *7 (E.D.N.Y. Mar. 10, 2010) (collecting cases); *see also Bluntt v. O'Connor,* 291 A.D.2d 106, 116–119, 737 N.Y.S.2d 471 (4th Dep't 2002) ("[M]ost courts that have considered suits by disgruntled parents against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasijudicial immunity to the attorneys for actions taken within the scope of their appointments." (collecting cases)).

Because all of the claims against Defendant Kreger arise out of activities taken within the scope of her appointment as the Bey Children's legal guardian (*i.e.,* participating in proceedings in Family Court (Comp.¶ 50) and interviewing the Bey Children about their parents (Compl.¶ 53)), her actions are protected by quasi-judicial immunity. Therefore, for this reason and the reasons discussed above, the Court GRANTS her motion, and all claims against Defendant Kreger are dismissed. [8]

8      Defendant Kreger also filed a letter motion asking this Court to *sua sponte* dismiss the claims asserted against her. (Docket Entry 18.) This motion is DENIED AS MOOT.

### *CONCLUSION*

For the foregoing reasons, it is hereby ORDERED that:

(1) The pending motions to dismiss are GRANTED (Docket Entries 25, 29, 32), and all claims (including cross-claims) against Defendants Sullivan, Dane, Kreger, Fitzgerald, Coppola, and Cohen are DISMISSED; [9]

9      With the exception of any claims for declaratory judgment arising under state law, all claims are DISMISSED WITH PREJUDICE.

(2) Ms. Kreger's letter motion asking the Court to *sua sponte* dismiss the claims against her (Docket Entry 18) is DENIED AS MOOT;

(2) Mr. Bey's motions to vacate (Docket Entries 19, 27) are DENIED, and all claims brought on behalf of Rein, Drizzle,

Truth, and Amicus Curiae Bey are DISMISSED without prejudice; and

(3) Mr. Bey's motion for a default judgment (Docket Entry 39) is DENIED; and

4) Mrs. Bey's remaining claims will be dismissed without prejudice unless the Court receives a copy of the Complaint signed by Mrs. Bey within thirty (30) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to terminate Judge Sullivan, Judge Dane, Ms. Kreger, Ms. Fitzgerald, and Mr. Cohen as Defendants and Rein, Drizzle, Truth, and Amicus Curiae Bey as Plaintiffs. The Clerk of the Court is also directed to terminate the motion at Docket Entry 23 (*see supra* page 2 n. 2) which is not a motion but rather Defendant Cohen's opposition to Plaintiff's motion to vacate. The Clerk of the Court is further directed to mail a copy of this Memorandum and Order to each of the *pro se* Plaintiffs.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4370272

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 67 of 110

2010 WL 2854456
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
W.D. New York.

Raymond HENDERSON, Plaintiff,
v.
David Glenn HEFFLER and Timothy Jones, Defendants.

No. 07–CV–0487C.
|
July 19, 2010.

**Attorneys and Law Firms**

David J. Seeger, Esq., Buffalo, NY, for Plaintiff.

Feldman Kieffer LLP (Stephen A. Manuele, Esq., of Counsel), Buffalo, NY, for Defendant Heffler.

Cheryl A. Green, Erie County Attorney (Jeannine M. Purtell, Assistant Erie County Attorney, of Counsel), Buffalo, NY, for Defendant Jones.

## BACKGROUND

JOHN T. CURTIN, District Judge.

**\*1** Plaintiff commenced this action with the filing of a complaint on July 27, 2007 (Item 1). He has alleged two causes of action against both defendants: pursuant to Title 42 U.S.C. § 1983 for the deprivation of due process, and a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). He has also alleged two claims against defendant Heffler only: the violation of New York General Business Law § 350–b and common law fraud. On August 15, 2007, defendant Jones filed a motion to dismiss the complaint or to stay the action on the authority of *Younger v. Harris,* 401 U.S. 37 (1971) (Item 5). In a Memorandum and Opinion filed July 24, 2008, the motion was denied (Item 12).

Defendant Heffler filed an answer to the complaint on August 20, 2007 (Item 6), and defendant Jones filed an answer on December 19, 2008 (Item 17). On September 30, 2009,

plaintiff filed a motion to compel answers to interrogatories (Item 41). Heffler filed a response to the motion to compel on October 6, 2009 (Item 43). The parties were directed to confer in an attempt to resolve any outstanding discovery disputes (Item 53). On November 3, 2009, the court allowed defendant Heffler the opportunity to file an amended answer, which was filed on November 5, 2009 (Item 45).

On January 5, 2010, defendant Heffler filed a motion for summary judgment (Item 50). Defendant Jones filed a motion for summary judgment on February 11, 2010 (Item 56). In an order filed May 7, 2010, the court directed plaintiff to file a response to the motions and to advise the court if there were any outstanding discovery disputes. Plaintiff was advised that if he did not so advise the court by May 21, 2010, the motion to compel would be dismissed as moot (Item 67). Plaintiff filed a response in opposition to the motions for summary judgment on May 12, 2010 (Item 68). Defendant Jones filed an affirmation in reply (Item 69), and defendant Heffler filed a reply memorandum (Item 71). Plaintiff did not advise the court that any further action should be taken on the plaintiff's motion to compel, and that motion (Item 41) is therefore dismissed as moot. Additionally, the court determined that oral argument on the motions for summary judgment was unnecessary. For the reasons that follow, the motions are granted, and the complaint is dismissed.

## FACTS [1]

[1]    The factual summary is taken from the parties' statements of material fact pursuant to Local Rule 56.1 (Items 50, Exh. F; 57; 68) and the exhibits thereto.

On February 23, 2006, plaintiff pleaded guilty to a violation of New York State Penal Law § 260.10–1, endangering the welfare of a child, a Class A misdemeanor, in the Amherst Town Court, Amherst, New York (Item 50, Exh. G). On June 8, 2006, he was sentenced to a three-year term of probation by the Hon. Mark Farrell. *Id.,* Exh. H. The Order of Probation provides that, "[a]t the direction of the Probation Officer," defendant was to "attend, actively participate and remain in sex offender treatment and comply with all the rules and regulations of the program." *Id.* Additionally, plaintiff was required to "[s]ubmit to any program of psychological or physiological assessment at the direction of the Probation Officer ...," including polygraph testing. *Id.* The conditions of probation were slightly modified in court on August 10, 2006

to allow plaintiff to have contact with family members under the age of seventeen with adult supervision. *Id.* The Order of Probation indicates that plaintiff was still required to be evaluated for sex offender treatment. *Id.* At the time, Judge Farrell stated that plaintiff must "undergo an assessment by a licensed treatment provider, and if they require treatment ... then he has to go to treatment." (Item 68, Exh. A. 18).

**\*2** Plaintiff was referred for evaluation for sex offender treatment at Horizon Health Services. Dr. Hak J. Ko found no major mental health issues and no consistent pattern of sex offense, but found that plaintiff "could benefit from [the] educational phase of sex offense treatment in view of his admission of exercising poor judgment." (Item 68, Exh. B). Plaintiff refused treatment and was discharged from the program (Item 57, Exh. D). As a result of his refusal to participate, plaintiff was charged with a violation of probation (Item 50, Exh. I).

At a hearing on May 10, 2007, Judge Farrell found that plaintiff was in violation of the terms of probation for his refusal to participate in the treatment program at Horizon and ordered him to appear the next day for treatment (Item 50, Exh. J, pp. 7–8). At that time, the Assistant District attorney conveyed a request of defendant Jones and asked if Judge Farrell would order an assessment by defendant Heffler. *Id.,* p. 9. Judge Farrell ordered "that we start from square one," that plaintiff submit to an evaluation by defendant Heffler, and that plaintiff's treatment would consist of "whatever is deemed appropriate" following the evaluation (Item 50, Exh. J, p. 10).

Plaintiff attended approximately six sessions with defendant Heffler, from May 11, 2007 until June 26, 2007 Item 50, Exh. K). He commenced this action on June 27, 2007 (Item 1). At that time, defendant Heffler ceased his assessment of plaintiff due to the conflict of interest (Item 50, Exh. L).

### DISCUSSION

#### 1. Summary Judgment Standard
Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2); *see also Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests

with the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson,* 477 U.S. at 255.

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). Summary judgment cannot be entered " 'if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *Yurman Design, Inc. v. Golden Treasure Imps., Inc.,* 275 F.Supp.2d 506, 508 (S.D.N.Y.2003). The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.,* 394 F.Supp.2d 543, 549 (W.D.N.Y.2005).

#### 2. Quasi–Judicial Immunity
**\*3** Defendants contend that they are immune from the plaintiff's claims under the doctrine of quasi-judicial immunity, which is a form of absolute immunity that applies to non-judicial officers when they perform judicial functions. In order to qualify, "[t]he proponent of a claim of absolute immunity bears the burden of establishing the justification of such immunity...." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 (1993). To determine whether a defendant is entitled to quasi-judicial immunity, the court must take a "functional approach" and examine the conduct at issue. *Cleavinger v. Saxner,* 474 U.S. 193, 201–02 (1985); *King v. Simpson,* 189 F.3d 284, 287–88 (2d Cir.1999); *Saint–Guillen v. United States,* 657 F.Supp.2d 376, 381 (E.D.N.Y.2009).

The Second Circuit has identified two situations in which this immunity applies. First, the immunity shields conduct that is functionally comparable to that of a judge. Therefore, a "parole board official is absolutely immune from liability for damages when he decide[s] to grant, deny, or revoke parole, because this task is functionally comparable to that of a judge." *Scotto v. Almenas,* 143 F.3d 105, 111 (2d Cir.1998) (citations and internal quotation marks omitted, modification in original). Second, the immunity also applies to tasks that are "integrally related" to judicial proceedings. *Mitchell v. Fishbein,* 377 F.3d 157, 172 (2d Cir.2004) (citing *Scotto,*

143 F.3d, 111–12). In deciding whether an actor is entitled to absolute immunity on the basis that his role is analogous to that of a judge, the court must evaluate the challenged proceedings in light of the "characteristics of the judicial process" set forth in *Butz v. Economou,* 438 U.S. 478 (1978). These factors include:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner,* 474 U.S. at 202 (citing *Butz,* 438 U.S. at 512); *see also DiBlasio v. Novello,* 344 F.3d 292, 297–98 (2d Cir.2003), *cert. denied,* 541 U.S. 988 (2004).

Defendant Heffler is entitled to absolute quasi-judicial immunity. He was appointed by the court to conduct an evaluation of plaintiff and to provide whatever treatment was indicated. Absolute immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators who conduct activities which are "inexorably connected with the execution of [court] procedures and are analogous to judicial action." *Scotto,* 143 F.3d at 111, quoting *Cleavinger,* 474 U.S. at 200. In *McKnight v. Middleton,* 2010 WL 1221431, *15 (E.D.N.Y. March 29, 2010),* court-appointed forensic evaluators and social workers were granted absolute quasi-judicial immunity for their actions in interviewing and consulting the parties in a Family Court proceeding and preparing a report to the court. The court found that the evaluators "did not initiate the child custody proceedings but were drawn in the dispute by the appointment of the Family Court. Thus, they functioned 'more like witnesses or assistants to the court than advocates.' " *Id.* (quoting *Hughes v. Long,* 242 F.3d 121, 126 (3d Cir.2001)). Similarly, in *Hunter v. Clark,* 2005 WL 1130488 (W.D.N.Y. May 5, 2005), the court found that court-appointed psychiatrists, who examined the plaintiff and submitted reports to the court regarding the plaintiff's competency to stand trial in a criminal proceeding, were entitled to absolute

immunity. Here, defendant Heffler was appointed by the court to evaluate plaintiff for sex offender treatment, and to provide the appropriate treatment. Defendant Heffler is entitled to absolute immunity from suit, and the complaint against him is dismissed in its entirety. [2]

[2]
> Even accepting plaintiff's argument that the defendants "agreed among themselves to dispense with standard evaluation, assessment and diagnostic tools in order to, in effect, pre-determine that Plaintiff was or is a sex offender requiring treatment for the purpose of depriving Plaintiff of liberty and property (the cost of a prolonged string of treatment sessions)" (Item 58, p. 7), such allegations of malice or bad faith do not overcome absolute quasi-judicial immunity. *See Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009).

**\*4** In the case of defendant Jones, the court finds that his supervision of plaintiff's probation is not "integrally related" to the judicial process. Under the "integrally related" test, "[t]he more distant a function is from the judicial process, the less likely judicial immunity will attach." *Scotto,* 143 F.3d at 111 (citations and internal quotation marks omitted, modification in original). Thus, the Second Circuit has granted quasi-judicial immunity to probation officers for preparing pre-sentence reports because, in preparing such reports, "a federal probation officer acts as an arm of the court and that task is an integral part of one of the most critical phases of the judicial process." *Dorman v. Higgins,* 821 F.2d 133, 137 (2d Cir.1987). In contrast, the Second Circuit found that a state parole officer's actions in preparing a parole violation report and in recommending that an arrest warrant issue were not entitled to absolute immunity because the conduct was "not performed under judicial direction and occurred before the initiation of parole revocation proceedings." *Scotto,* 143 F.3d at 112 (citations omitted). Likewise, in *Saint–Guillen,* the court denied absolute immunity for a probation officer's failure to adequately supervise a parolee. *Saint–Guillen,* 657 F.Supp.2d at 382 ("[S]upervisory conduct is investigatory in nature, and, therefore, comparable to the role of a police officer rather than that of a judge or prosecutor.").

Here, defendant Jones was not acting as an "arm of the court" and his actions were not performed under judicial direction. His supervisory conduct, in supervising plaintiff's sex offender evaluation with defendant Heffler, was investigatory in nature, and was intended to determine what,

if any treatment, was indicated. Accordingly, defendant Jones is not entitled to absolute quasi-judicial immunity for his supervision of plaintiff's probation.

### 3. Qualified Immunity

Although he does not enjoy absolute quasi—judicial immunity for his supervision of plaintiff's probation, defendant Jones enjoys qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity analysis involves two-steps: first, the court must determine whether the facts alleged make out a violation of a constitutional right. If the plaintiff establishes a constitutional violation, the court must then determine whether the conduct alleged violated "clearly established" statutory or constitutional rights of which a reasonable person would have known. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega,* 371 F.3d 110, 114 (2d Cir.2004). Additionally, "[t]he qualified immunity test is an objective one." *Zellner v. Summerlin,* 494 F.3d 344, 367 (2d Cir.2007). It looks to the circumstances confronting an official, not to the official's "subjective intent." *See Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

 **\*5** A recent case from the Eastern District of New York is instructive. In *Rose v. Goldman,* 2009 WL 4891810 (E.D.N.Y. December 9, 2010), the plaintiff was sentenced to probation based on a guilty plea to a nonsexual offense. The terms of plaintiff's probation did not require sex offender counseling, but he was directed by his probation officer to undergo sex offender therapy. Plaintiff only attended one forty-five minute session, and his subsequent failure to attend counseling as directed resulted in the filing of a charge of violation of probation. Even assuming that the probation officer violated plaintiff's constitutional rights by directing him to undergo sex offender counseling, the court found that this right was not clearly established as the Second Circuit has not addressed the issue, while the district courts have split. *Id.,* at \*6–7 (citing *Vega v. Lantz,* 2008 WL 3992651, at \*14 (D.Conn. August 25, 2008) ("[b]eing classified in prison as a sex offender not only invokes a constitutionally protected liberty interest but it causes a 'stigma-plus' "), and *Tinsley v. Goord,* 2006 WL 2707324, at \*5 (S.D.N.Y. September 20, 2006) (prisoner's classification as a sex offender did not implicate a constitutionally protected liberty interest)).

Here, plaintiff was directed to undergo sex offender evaluation, and Dr. Ko found that plaintiff "could benefit from the educational phase of the sex offense treatment in view of his admission of exercising poor judgment" (Item 68, Exh. B). Plaintiff refused to comply, and the court ordered that he be reevaluated, this time by defendant Heffler, and to undergo whatever treatment was indicated by the evaluation. To the extent that defendant Jones directed that plaintiff undergo sex offender evaluation by defendant Heffler, such an evaluation was objectively reasonable and did not violate a clearly established constitutional right. Moreover, plaintiff's allegations of bad faith do not reintroduce into the qualified immunity analysis an inquiry into the defendants' subjective intent. *See Norton v. Town of Islip,* 2010 WL 2070550, \*4 (2d Cir. May 25, 2010) (quoting *Anderson,* 483 U.S. at 641). Accordingly, defendant Jones enjoys qualified immunity from plaintiff's section 1983 claim. [3]

[3]    Defendant Heffler would also enjoy qualified immunity under this analysis as his evaluation was objectively reasonable under the circumstances and did not violate a clearly-established constitutional right.

### 4. HIPAA

Plaintiff concedes that HIPAA does not create a private cause of action and that his HIPAA cause of action against both defendants should be dismissed.

### CONCLUSION

Plaintiff's motion to compel (Item 41) is dismissed as moot. Defendant Heffler's motion for summary judgment is granted. The motion for summary judgment of defendant Jones is likewise granted, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment for defendants.

So ordered.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 2854456

**Henderson v. Heffler, Not Reported in F.Supp.2d (2010)**

2010 WL 2854456

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

Monte v. Vance, Not Reported in Fed. Supp. (2018)

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 72 of 110

2018 WL 11302546

2018 WL 11302546
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Frank M. MONTE, III, Plaintiff,

v.

Cyrus R. VANCE, Jr.; Ken Kern; Barbara D.
Underwood; Eric T. Schneidermann; Hon.
Ronald A. Zweibel; Hon Juan Merchan; Hon.
Mark Dwyer; Hon. Kirke Bartley; Larry Spolen,
New York County Defenders Services; Kevin
Michael Canfield; John Nicholas Iannuzzi; Dr.
Louise Mullan; Dr. Lawrence Siegal; Dr. Arkadiy
Chernyak; Michael Lewis Alperstein; State of New
York; Dr. Nancy Nichols-Goldstein, Defendants.

18-CV-9595 (LLS)
|
Signed 11/07/2018

**Attorneys and Law Firms**

Frank M. Monte, III, Oak Ridge, NJ, Pro Se.

Brian E. Lee, Ivone, Devine and Jensen, LLP, Lake Success,
NY, for Defendants.

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

**\*1** Plaintiff, acting *pro se*, brings this action under 42
U.S.C. §§ 1983 and 1985.[1] He asserts claims against
judges, prosecutors, defense attorneys, psychiatrists, and
others involved with his recent criminal proceedings for
allegedly violating his constitutional rights to due process
and equal protection. Plaintiff also seeks to impose criminal
charges on defendants under 18 U.S.C. §§ 241 and 242. The
Court dismisses the complaint for the reasons set forth below.

[1]     Plaintiff paid the filing fee for this action.

STANDARD OF REVIEW

The Court has the authority to dismiss a complaint, even
when the plaintiff has paid the filing fee, if it determines

that the action is frivolous, *Fitzgerald v. First E. Seventh
Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir. 2000) (*per
curiam*) (citing *Pillay v. INS,* 45 F.3d 14, 16-17 (2d Cir. 1995)
(*per curiam*) (holding that Court of Appeals has inherent
authority to dismiss frivolous appeal)), or that the Court
lacks subject matter jurisdiction, *Ruhrgas AG v. Marathon
Oil Co.,* 526 U.S. 574, 583 (1999). The Court is obliged,
however, to construe *pro se* pleadings liberally, *Harris v.
Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to
raise the "strongest [claims] that they *suggest,*" *Triestman v.
Fed. Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006)
(internal quotation marks and citations omitted) (emphasis in
original).

BACKGROUND

A jury in the Seventeenth Judicial Circuit Court, Broward
County, Florida, convicted Plaintiff Frank Monte of two
counts of aggravated stalking and violation of a protective
injunction. *Monte v. State,* 51 So. 3d 1196 (Fla. Dist. Ct.
App. 2011). Judge Miley Rodriguez-Powell presided over
that matter, and after the jury found Plaintiff guilty, she
sentenced him to six and one-half years' incarceration.

Plaintiff Monte moved to New York in November 2013.
(Compl. at 7.) He was arrested on February 11, 2014, and
charged in the New York Supreme Court, New York County,
Criminal Term, with aggravated harassment in the second
degree, harassment by phone, criminal contempt, and other
charges. (Compl. 2-1 at 61.) At his initial appearance before
Justice Zweibel, Plaintiff noted his intention to "speak on his
own behalf" rather than being represented by counsel. During
the course of his criminal proceedings, Plaintiff was referred
several times for a psychiatric evaluation.

Plaintiff alleges that in February 2014, attorney Larry Spollen
"coerced" him into meeting with Dr. Arkadiy Chernyak while
Plaintiff was detained at the Manhattan Detention Complex.
Both Spollen and Dr. Chernyak told Plaintiff that attempting
to act as his own attorney "would only result in a competency
exam." (*Id.* at 16.) On March 24, 2016, Justice Merchan
"upheld the status quo," even though Plaintiff "demanded
his Constitutional Right(s) to confront his accusers." (*Id.*)
Plaintiff met with Doctors Nichols-Goldstein and Mullan,
who also discouraged him from representing himself in the
criminal proceedings. At some point, attorney John Iannuzzi
was "foisted upon Mr. Monte" as court-appointed counsel,
as was attorney Kevin Canfield. Plaintiff complained about

Monte v. Vance, Not Reported in Fed. Supp. (2018)

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 73 of 110

2018 WL 11302546

the attorneys to Michael Alperstein, the Court's Assigned Counsel Plan Administrator, but he "refused to take any action to protect Mr. Monte's rights." (*Id.* at 18.)

**\*2** Plaintiff's criminal proceedings were transferred to a special state court part for veterans, including those with mental health or drug issues. Justice Dwyer held a hearing and "denied all requests by Plaintiff." (*id.* at 17.) On May 11, 2017, Justice Dwyer ordered Plaintiff released on his own recognizance because Plaintiff had "served more time in jail than he would have if he were duly convicted." (*Id.* at 18.) District Attorney Cyrus Vance and former New York State Attorney General Schneiderman allegedly "opposed Plaintiff's release" and opposed "every legal action" that Plaintiff filed. (*Id.*) After his release, Plaintiff moved to New Jersey.

Shortly thereafter, on August 2, 2017, Plaintiff was arrested in New Jersey, based on charges that on July 6, 2017, he called Judge Rodriguez-Powell's chambers and made threats. On July 5, 2018, Plaintiff filed *Monte v. Kessling*, No. 18-CV-11363 (D.N.J. July 13, 2018), naming as defendants the judges, attorneys, and police detectives involved in his recent arrest in New Jersey and criminal proceedings. [2]

[2]    According to the district court's order in *Monte*, No. 18-CV-11363 (D.N.J. July 13, 2018), Plaintiff was detained for three months before being released, but on July 2, 2018, charges against Plaintiff were reinstated.

Plaintiff brings this action against New York Supreme Court Justices Zweibel, Merchan, Dwyer, and Bartley; District Attorney Cyrus Vance, Jr., and Assistant District Attorney Ken Kern; the current and former New York State Attorneys General; defense counsel Larry Spollen, Kevin Canfield, and John Iannuzzi; mental health professionals Dr. Nancy Nichols-Goldstein, Dr. Louise Mullan, Dr. Lawrence Siegel, and Dr. Arkadiy Chernyak; the Acting Administrator of the state court's assigned counsel plan, Michael Alperstein; the State of New York; and New York Governor Andrew Cuomo. Plaintiff seeks a declaration that defendants' conduct is unconstitutional, an injunction against further unconstitutional actions, and damages.

## DISCUSSION

### A. Intervention in Criminal Proceedings

It is unclear whether criminal charges against Plaintiff remain pending. [3] The Court must dismiss any claims that Plaintiff asserts in which he asks the Court to intervene in his state criminal proceedings. In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that a federal court may not enjoin a pending state-court criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 401 U.S. 37); *see also Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013) ("*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."). Plaintiff alleges no facts showing bad faith, harassment, or irreparable injury with respect to his pending state-court criminal proceeding. The Court therefore cannot intervene in his criminal proceedings and dismisses such claims for injunctive relief and declaratory relief.

[3]    Plaintiff states in his complaint that a hearing was scheduled in his criminal matter for October 28, 2018. As of the date of this order, however, the Court did not locate public records of the New York State Unified Court System reflecting pending criminal proceedings.

The Court cannot dismiss Plaintiff's claims for damages under *Younger*: "[A]bstention and dismissal are inappropriate when damages are sought ... even when a pending state [criminal] proceeding raises identical issues and [the federal district court] would dismiss otherwise identical claims for declaratory and injunctive relief." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000); *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988) ("[E]ven if the *Younger* doctrine requires abstention ..., the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding."). The Court therefore considers below whether Plaintiff states a claim on which relief can be granted against any defendant.

### B. Eleventh Amendment Immunity

**\*3** "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the

states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims against the State of New York and Governor Andrew Cuomo in his official capacity are therefore barred by the Eleventh Amendment and are dismissed. [4]

[4]      Plaintiff also does not state a claim against Governor Cuomo in his personal capacity because he does not allege that Governor Cuomo was personally involved in any violation of Plaintiff's rights. All of Plaintiff's claims against Governor Cuomo are therefore dismissed.

**C. Judicial Immunity**

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). [5]

[5]      In addition, as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Plaintiff's allegations against Justices Zweibel, Merchan, Dwyer, and Bartley arise from their judicial acts in cases pending before them. Accordingly, Defendants are absolutely immune from suit on such claims. The Court therefore dismisses Plaintiff's claims against Justices Zweibel, Merchan, Dwyer, and Bartley based on absolute judicial immunity.

**D. Prosecutorial and Government Attorney Immunity**

Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (holding that absolute immunity is analyzed under "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it"). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009). "Absolute immunity ... is also extended to officials of government agencies 'performing certain functions analogous to those of a prosecutor....' " *DiBlasio v. Novello*, 344 F.3d 292, 296-97 (2d Cir. 2003) (citation omitted).

Here, Plaintiff's claims against Defendants Cyrus Vance, Kenn Kern, Barbara Underwood, and Eric Schneiderman are based on actions within the scope of Defendants' official duties and associated with the conduct of a trial. Therefore, these claims are dismissed based on absolute immunity. Because these claims are well "within the distinguishable heartland of immune prosecutorial conduct," the Court also dismisses these claims as frivolous. *Flagler v. Trainor*, 663 F.3d 543, 551 (2d Cir. 2011); *Collazo v. Pagano*, 656 F. 3d 131, 134 (2d Cir. 2011) (holding that claim against prosecutor is frivolous if it arises from conduct that is "intimately associated with the judicial phase of the criminal process").

**E. Private Parties**

 **\*4** A claim for relief under § 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Nicholas v. Goord*, 430 F.3d 652, 656 n.7 (2d Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)), the representation of a defendant by private counsel in state

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 75 of 110
Monte v. Vance, Not Reported in Fed. Supp. (2018)
2018 WL 11302546

criminal proceedings does not constitute the degree of state involvement or interference necessary to establish a claim under § 1983, regardless of whether that attorney is privately retained, court-appointed, or employed as a public defender. *See Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 324-25 (1981)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (holding that legal aid organization ordinarily is not a state actor for purposes of § 1983). As Defendants Larry Spollen, Kevin Canfield, and John Iannuzzi are private parties who are not employed by the state, even when appointed as criminal defense counsel, Plaintiff has not stated a claim against these defendants under § 1983.

**F. Claims Against Mental Health Professionals and Counsel Plan Administrator**

Quasi-judicial immunity extends to conduct that is functionally comparable to that of a judge. *See, e.g., Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) ("[A] parole board official is absolutely immune from liability for damages when he decide[s] to grant, deny, or revoke parole, because this task is functionally comparable to that of a judge."). Quasi-judicial immunity also applies to tasks that are "integrally related" to judicial proceedings. See, e.g., *Mitchell v. Fishbein*, 377 F.3d 157, 172-74 (2d Cir. 2004) (explaining that "[f]unctions that might be deemed integrally related to the judicial process when undertaken in the context of a particular case may be viewed as administrative when they are undertaken outside that context"). Thus, immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators who conduct activities that are "inexorably connected with the execution of [court] procedures and are analogous to judicial action." *Scotto*, 143 F.3d at 111.

Court-appointed forensic evaluators act as "arms of the court" and enjoy judicial immunity from federal civil rights liability as "a non judicial person who fulfills a quasi-judicial role at the court's request." *McKnight v. Middleton*, 699 F. Supp. 2d 507, 527 (E.D.N.Y. 2010) (granting absolute quasi-judicial immunity to evaluators and social workers for their actions in interviewing and consulting the parties in a Family Court proceeding and preparing a report to the court); *Hunter v. Clark*, No. 04-CV-0920, 2005 WL 1130488 (W.D.N.Y. May 5, 2005) (holding that court-appointed psychiatrists who examined the plaintiff and submitted reports to the court regarding his competency to stand trial in a criminal proceeding were entitled to absolute immunity); *Henderson v. Heffler*, No. 07-CV-0487C, 2010 WL 2854456, at *3 (W.D.N.Y. July 19, 2010) (psychiatrist appointed by the court

to evaluate plaintiff for sex offender treatment was entitled to quasi-judicial immunity when evaluating plaintiff for the court).

**\*5** Plaintiff alleges that mental health professionals Dr. Nancy Nichols-Goldstein, Dr. Louise Mullan, Dr. Lawrence Siegel, and Dr. Arkadiy Chernyak advised him that seeking to represent himself could lead the criminal court to make inquiry into his competency. These defendants are entitled to absolute quasi-judicial immunity for their conduct in evaluating Plaintiff's competency. [6]

[6]    Even if they were not immune from suit, Plaintiff's allegations that Defendants attempted to influence his choice about whether to represent himself do not state a claim that they violated his constitutional rights.

Plaintiff alleges that court administrator Michael Alperstein "refused to take any action to protect Mr. Monte's rights" when Plaintiff called "to report the malfeasance and nonfeasance" of defense counsel that was "foisted" on Plaintiff against his wishes. (Compl. at 19.) Court administrators enjoy quasi-judicial immunity for activities that are "inexorably connected with the execution of [court] procedures." *Scotto*, 143 F.3d at 111; *McKnight v. Middleton*, 699 F.Supp.2d 507, 525–26 (E.D.N.Y. 2010) (granting immunity to Family Court clerk). Here, Defendant Alperstein's actions were undertaken in the context of a particular case, and it therefore appears that he is immune from suit on this claim. [7]   The Court therefore dismisses Plaintiff's claims against Defendants Dr. Nancy Nichols-Goldstein, Dr. Louise Mullan, Dr. Lawrence Siegel, Dr. Arkadiy Chernyak, and Michael Alperstein based on absolute immunity.

[7]    Even if he were not immune from suit, Plaintiff's allegations regarding Defendant Alperstein fail to state a claim on which relief can be granted.

**G. Criminal Charges Under 18 U.S.C. §§ 241 and 242**

A private citizen cannot prosecute a criminal action in federal court. *See Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) (per curiam) (holding that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"). Federal prosecutors have discretion in determining whether to bring a criminal action, and they are "immune from control or interference by citizen or court." *Connecticut Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d

2018 WL 11302546

Cir. 1972). The Court therefore dismisses Plaintiff's claims asserting violations of criminal law.

## H. Supplemental State Law Claims

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state-law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

## I. Leave to Amend

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

**\*6** At the time that Plaintiff filed this complaint, the district court in New Jersey had already dismissed his suit in *Monte*

*v. Kessling*, No. 18-CV-11363 (D.N.J. July 13, 2018), in part based on judicial and prosecutorial immunity. It therefore appears that it was frivolous and malicious for Plaintiff to bring this action against judges and prosecutors for their acts intimately related to his criminal proceedings; he had already been advised that judges and prosecutors are immune from suit for such conduct. Accordingly, the Court warns Plaintiff that further duplicative or frivolous litigation in this Court may result in an order barring Plaintiff from filing new actions without prior permission. *See* 28 U.S.C. § 1651.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. The Court dismisses Plaintiff's claims for declaratory and injunctive relief under *Younger*, and dismisses Plaintiff's claims based on immunity from suit. The Court declines under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over any state law claims that Plaintiff may be asserting.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

## All Citations

Not Reported in Fed. Supp., 2018 WL 11302546

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Not Followed as Dicta   Doe v. Mastoloni,   D.Conn.,   February 12, 2016

508 Fed.Appx. 7
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1
AND THIS COURT'S LOCAL RULE 32.1.1. WHEN
CITING A SUMMARY ORDER IN A DOCUMENT
FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN
ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER"). A PARTY CITING A
SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

David W. ROBINSON, Plaintiff–Appellant,

v.

ALLSTATE INSURANCE COMPANY, State
of New York Department of Insurance, Charles
Bardong, Director, in his Individual and Official
Capacities, County of Yates, Ronald G. Spike,
Michael C. Christensen, Senior Investigator of County
of Yates Sheriff's Department, in his Individual
and Official Capacities, Village of Penn Yan,
Gene Mitchell, Chief of Police, in his Individual
and Official Capacities, Defendants–Appellees. [*]

[*]     The Clerk of the Court is directed to change the
caption as set out above.

No. 11–4348–cv
|
Jan. 22, 2013.

## Synopsis

**Background:** Plaintiff filed suit under §§ 1983 and 1985
against New York Department of Insurance, county officials,
and other officials. The United States District Court for the
Western District of New York, Larimer, J., dismissed claims
against Department of Insurance and official, 584 F.Supp.2d
617, then subsequently entered summary judgment in favor of

remaining defendants, 706 F.Supp.2d 320 and 821 F.Supp.2d
564. Plaintiff appealed.

**Holdings:** The Court of Appeals held that:

[1] New York Department of Insurance and official were
entitled to Eleventh Amendment immunity from suit under §§
1983 and 1985;

[2] allegations did not state claims against New York
Department of Insurance, county officials, and other officials
for conspiracy to deprive him of equal protection rights; and

[3] denial of plaintiff's request for additional discovery was
not abuse of discretion.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary
Judgment.

West Headnotes (3)

[1]     **Federal Courts**  ⚷  Agencies, officers, and
public employees

New York Department of Insurance and official
were entitled to Eleventh Amendment immunity
from suit under §§ 1983 and 1985. U.S.C.A.
Const.Amend. 11; 42 U.S.C.A. §§ 1983, 1985.

2 Cases that cite this headnote

[2]     **Conspiracy**  ⚷  Civil rights conspiracies

Plaintiff's allegations did not state claim against
New York Department of Insurance, county
officials, and other officials for conspiracy to
deprive him of equal protection rights, in action
brought under § 1985, absent any allegations
of facts demonstrating a meeting of minds
or animus. U.S.C.A. Const.Amend. 14; 42
U.S.C.A. § 1985(3).

34 Cases that cite this headnote

[3]     **Summary Judgment**  ⚷  Continuance

Denial of plaintiff's request for continuance of discovery in order to respond to summary judgment was not abuse of discretion, in action brought under §§ 1983 and 1985 against New York Department of Insurance, county officials, and other officials, where affidavit did not state specific facts that plaintiff sought to obtain. 42 U.S.C.A. §§ 1983, 1985; Fed.Rules Civ.Proc.Rule 56(d), 28 U.S.C.A.

5 Cases that cite this headnote

**\*8** Appeal from a judgment of the United States District Court for the Western District of New York (Larimer, J.).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED.**

**Attorneys and Law Firms**

Stephen Edward Laprade (Christina A. Agola, on the brief), Christina A. Agola PLLC, Rochester, NY, for Appellant.

Beverley S. Braun, Esq., Of Counsel, Jaeckle, Fleischmann & Mugel, LLP, Buffalo, NY, for Allstate Insurance Company.

Owen Demuth (Barbara D. Underwood, Solicitor General, Andrew D. Bing, Deputy Solicitor General, on the brief), for Eric T. Schneiderman, Attorney General of the State of New York, Albany, NY, for State of New York Department of Insurance and Charles Bardong, Director, in his Individual and Official Capacities.

David Ray Adams (Michael F. Perley, Esq., Tasha T. Dandrige–Richburg, Esq., Of Counsel, on the brief), Hurwitz & Fine, P.C., Buffalo, NY, for County of Yates, Ronald G. Spike, Michael C. Christensen, Senior Investigator County of Yates Sheriff's Department, in his Individual and Official Capacities.

Gerard E. O'Connor, Lippman O'Connor, Buffalo, NY, for Gene Mitchell, in his Individual and Official Capacities, and Village of Penn Yan.

Present: ROSEMARY S. POOLER, PETER W. HALL and DEBRA ANN LIVINGSTON, Circuit Judges.

**SUMMARY ORDER**

Plaintiff–Appellant David W. Robinson ("Plaintiff") appeals from the district court's (Larimer, J.) November 6, 2008 dismissal of claims against Defendants–Appellees ("Defendants") the State of New York Department of Insurance and Charles Bardong pursuant to Rules 12(b)(1) and 12(b)(6); March 30, 2010 grant of summary judgment in favor of Defendant Allstate Insurance and denial of a continuance of discovery pursuant to Rule 56(f) (renumbered Rule 56(d) in 2010); and September 23, 2011 grant of summary judgment in favor of all other Defendants and denial of a continuance of discovery. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6). Donoghue v. Bulldog Investors General P'ship, 696 F.3d 170, 173 (2d Cir.2012); Harris v. Mills, 572 F.3d 66, 71 (2d Cir.2009). "We consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris, 572 F.3d at 71. "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal **\*9** conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal brackets and quotation marks omitted).

"We review the grant of summary judgment de novo and will uphold the judgment if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." Lopes v. Dep't of Soc. Servs., 696 F.3d 180, 184 (2d Cir.2012) (internal quotation marks omitted). "The non-moving party may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998).

In this action, Plaintiff alleges violations of 42 U.S.C. § 1985(3) ( "Section 1985") by all Defendants. Plaintiff also alleges violations of 42 U.S.C. § 1983 ("Section 1983") and negligent failure to supervise employees against all Defendants except Allstate Insurance Company.

[1]    Plaintiffs' claims against Defendants the State of New York Department of Insurance and Charles Bardong are barred by the Eleventh Amendment. "The Eleventh Amendment prohibits the Judicial power of the United States from extending to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. This jurisdictional bar also immunizes a state entity that is an arm of the State, including, in appropriate circumstances, a state official acting in his or her official capacity." *In re Deposit Ins. Agency,* 482 F.3d 612, 617 (2d Cir.2007) (internal citations and quotation marks omitted).

[2]    Plaintiff's Complaint fails to state a Section 1985 claim against any Defendant. Plaintiff alleges that Defendants conspired to deprive him of equal protection in violation of Section 1985(3). In order to make out a Section 1985(3) claim, "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. Of Carpenters v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). "[A] plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord,* 340 F.3d 105, 110 (2d Cir.2003). Furthermore, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Britt v. Garcia,* 457 F.3d 264, 270 n. 4 (2d Cir.2006) (internal quotation marks omitted). [1]

[1]    In his brief on appeal, Plaintiff concedes that he fails to state a claim under Section 1985 and raises a Section 1983 conspiracy claim instead. Plaintiff has waived that argument by failing to raise it below. Although we have discretion to review issues raised for the first time on appeal "where necessary to avoid manifest injustice," *see In re Nortel Networks Corp. Sec. Litig.,* 539 F.3d 129, 133 (2d Cir.2008) (per curiam), we see no reason to exercise that discretion here.

Here, Plaintiff has failed to provide any factual basis supporting a meeting of the minds, merely making conclusory

statements that there was a conspiracy. Plaintiff has also failed to allege any animus.   *10  Plaintiff claims that he is a "class of one" who has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Ruston v. Town Bd. For Skaneateles,* 610 F.3d 55, 58 (2d Cir.2010) (internal quotation marks omitted). However, Plaintiff has failed to establish "that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Id.* at 60 (internal quotation marks omitted). Under either a motion to dismiss or a summary judgment standard, Plaintiff has failed to state facts sufficient for a Section 1985(3) claim.

Next, Plaintiff has not plausibly set forth either a claim for negligence or a claim for violation of his civil rights under Section 1983. Plaintiff does not offer anything more than conclusory allegations in support of his legal arguments. As the district court noted, "what [P]laintiff has offered is a set of largely unrelated factual allegations concerning his own unlawful activity and interactions with law enforcement ..., and a host of vague and unsupported claims that the defendants' actions, while facially constitutional, were somehow undertaken with improper motives."

[3]    Finally, the district court did not err in denying Plaintiff's motions for additional discovery. We review the denial of additional discovery for abuse of discretion. *Gualandi v. Adams,* 385 F.3d 236, 244–45 (2d Cir.2004). "To request discovery under [Rule 56(d) ], a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Id.* at 244. In this case, the Plaintiff's affidavit fails to state specific facts Plaintiff seeks to obtain, but merely repeats the allegations in the Complaint. Accordingly, the district court did not abuse its discretion in denying Plaintiff's requests.

We have considered Plaintiff's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

**All Citations**

508 Fed.Appx. 7

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

2018 WL 2561023
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Anthony BLUE, Plaintiff,
v.
The CITY OF NEW YORK, Cyrus R.
Vance, Jr., and Erica O'Brien, Defendants.

16-CV-9990 (VSB)
|
Signed 06/04/2018

**Attorneys and Law Firms**

Anthony Blue, pro se.

Morgan Chmiel McKinney, New York City Law Department, New York, New York, Counsel for Defendants.

**OPINION & ORDER**

Vernon S. Broderick, United States District Judge

*1 Plaintiff Anthony Blue brings this pro se action pursuant to 42 U.S.C. §§ 1983 and 1985 against the City of New York (the "City"), Police Officer Andre Williams (together with the City, the "City Defendants"), District Attorney Cyrus Vance, Jr., and Assistant District Attorney Erica O'Brian (the "DA Defendants," and collectively with the City Defendants, "Defendants"), alleging malicious prosecution, denial of his right to a fair trial, abuse of process, failure to intervene, conspiracy, and municipal liability, as well as numerous New York state law claims. Before me are motions to dismiss filed by the City Defendants and the DA Defendants. Because I find that Plaintiff's allegations are insufficient to survive a motion to dismiss, both the DA Defendants' and City Defendants' motions to dismiss Plaintiff's federal claims, as well as state law claims analyzed under the same legal standard, are granted and these claims are dismissed with prejudice because amendment would be futile. To the extent that Plaintiff's factual allegations can be construed to make out additional state law claims, I decline to exercise jurisdiction over these claims and they are also dismissed.

**I. Background** [1]

[1] The following factual summary is drawn from the allegations of Plaintiff's second amended complaint, filed August 15, 2017 ("Second Amended Complaint"), which I assume to be true for the purposes of this motion. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

On August 27, 2012, at or about 2:25 p.m., Plaintiff was arrested by Williams on the sidewalk at 615 West 164th Street, New York, New York. (SAC ¶¶ 14–15.) [2] He was then transported by patrol car to the 33rd Precinct of the New York City Police Department ("NYPD"). (Id. ¶ 16.) Once he arrived at the Precinct, Plaintiff was confined to a holding cell on the second floor. (Id. ¶ 17.) From the cell, he saw Williams and another police officer talking in the conference room adjacent to the cell. (See id. ¶ 18.)

[2] "SAC" refers to the Second Amended Complaint. (Doc. 40.)

The next day, August 28, 2012, Plaintiff observed Williams and other NYPD officers participating in a conference call with Vance and O'Brien. (Id. ¶ 20.) Plaintiff believes Vance and O'Brien instructed Williams to obtain a search warrant for Plaintiff's automobile and told Williams and the other officers to search Plaintiff's apartment. (See id. ¶¶ 20–21.) That night, Plaintiff observed Williams engage in a speaker phone conversation with Vance and O'Brien. (Id. ¶ 22.) According to Plaintiff, during this phone conversation Vance, O'Brien, and Williams discussed and drafted a search affidavit alleging that Plaintiff was involved in a "drug buy and bust operation" and that Plaintiff had drugs and a gun in his apartment. (Id.) Plaintiff was confined in his holding cell in the 33rd Precinct for over thirty-six hours. (Id. ¶ 23.)

*2 Williams and other NYPD officers searched Plaintiff's apartment and informed Vance and O'Brien that through this search they obtained jewelry, electronics, documents, and other miscellaneous items. (Id. ¶ 24.) Plaintiff believes that O'Brien then instructed Williams and another NYPD officer to draft false documents stating that a laptop and other items were recovered from Plaintiff's apartment and requested that they forward the items to the New York County District Attorney's Office. (Id. ¶ 25.) On or about August 29, 2012 at 11:00 a.m., Plaintiff was arraigned on the charge of attempted burglary. (Id. ¶ 28.) Bail was set at $40,000, but because

2018 WL 2561023

he could not pay, Plaintiff stayed in the New York City Department of Corrections. (*Id.* ¶ 29.)

Plaintiff was released on his own recognizance on August 31, 2012, and later that same day was arrested again at the direction of Vance and O'Brien. (*Id.* ¶ 30.) Plaintiff was taken to the 33rd Precinct and detained in a holding cell. (*Id.* ¶ 31.) At about 8:00 p.m., Plaintiff alleges he observed Williams and O'Brien engage in several speaker phone conversations in which they conspired to falsify documents and a felony complaint to charge Plaintiff with possession of stolen property. (*Id.* ¶ 32.) On September 1, 2012, Plaintiff was arraigned in Bronx County on the charge of possession of stolen property. (*Id.* ¶ 34.) Plaintiff also alleges that on or about September 16, 2012, he filed a complaint with the NYPD's Internal Affairs Bureau regarding Williams's interactions with Vance and O'Brien, but that the NYPD did not respond or investigate his complaint. (*Id.* ¶ 35.)

On or about March of 2013, a grand jury proceeding took place in which, according to Plaintiff, Williams gave false testimony that "he investigated an alleged burglary on June 5, 2012 and recovered a laptop" which was "taken from [Plaintiff's] home." [3] (*Id.* ¶ 37.) On March 25, 2013, an indictment charging plaintiff with six counts of burglary was filed in New York County ("Indictment"). [4] (*Id.* ¶ 43; *see also* McKinney Decl. Ex. B.) Specifically, the Indictment charged Plaintiff with six separate burglaries occurring on May 15, June 1, June 5, June 12, June 13, and June 19 of 2012. (*See* McKinney Decl. Ex. B.) Pursuant to this Indictment, Plaintiff was again arrested on or about May 15, 2013. (SAC ¶ 45.) Because Plaintiff was arrested in another state, he was transported to New York for his appearance in New York County Supreme Court. [5] (*Id.* ¶ 46.) Subsequently, Plaintiff moved to suppress certain physical evidence recovered from the searches and to dismiss the Indictment because it was based on evidence fabricated by Vance, O'Brien, and Williams, amongst others. (*See* Edelman-Reyes Decl. Ex. 10.) [6] Plaintiff alleges that Williams and other NYPD officers gave false testimony both during the suppression hearing conducted pursuant to *Dunaway/Mapp* and later during Plaintiff's jury trial. (SAC ¶¶ 50–54.) The jury trial commenced on October 1, 2015, and on October 15, 2015, a jury found Plaintiff guilty with respect to five of the six counts and not guilty with respect to the June 5, 2012 Burglary count (the "June 5 Burglary"). (*See id.* ¶ 55.)

[3] Plaintiff alleges that during the grand jury proceeding Williams and an additional NYPD officer gave false testimony at the behest of Vance and O'Brien. (SAC ¶¶ 37–38.) Plaintiff also claims that the charge of attempted burglary was dismissed by the grand jury and sealed in his favor, (*id.* ¶ 39), but then subsequently, when Plaintiff threatened to file a suit against them, Vance and O'Brien retaliated against him by manufacturing a fraudulent indictment to charge Plaintiff with the six burglaries, (*id.* ¶¶ 40–43).

[4] Plaintiff alleges that the court "issued an unauthorized nonexistent grand jury warrant without a judge's permission causing plaintiff to be arrested." (SAC ¶ 45.) Because on a motion to dismiss pursuant to Rule 12(b)(6) I may consider a document incorporated by reference into a complaint if that document is "integral to the complaint" in the sense that "a plaintiff has relied on the terms and effect of a document in drafting the complaint," *see Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotation marks omitted), I will consider the Indictment, (*see* McKinney Decl. Ex. B). "McKinney Decl." refers to the Declaration of Morgan C. McKinney in Support of Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b), filed September 29, 2017. (Doc. 50.)

[5] Plaintiff alleges that Vance and O'Brien continued to mislead the state court because they "knew they were acting outside of their jurisdiction and that no court impaneled a grand jury to vote on the bogus charges," but nonetheless submitted Williams's "false testimony grand jury minutes from the previous case that was dismissed and sealed, causing the court and plaintiff to believe that a grand jury had in fact indicted plaintiff on the false charges manufacture[d] in the fraudulent indictment filed by the defendants." (SAC ¶¶ 48–49.)

[6] "Edelman-Reyes Decl." refers to the Declaration of Karen Edelman-Reyes in Support of the DA Defendants' Motion to Dismiss, filed September 28, 2017. (Doc. 45.) I take judicial notice of the documents filed in the state court proceeding but do not make any determination as to the truth of the matters asserted therein. *See Kramer v.*

2018 WL 2561023

*Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

## II. Procedural History

**\*3** Plaintiff filed his complaint in this action on December 28, 2016 (the "Complaint"). (Doc. 2.) On June 16, 2017, the DA Defendants filed a motion to dismiss the Complaint. (Docs. 18–22.) On July 6, 2017, in response to the DA Defendants' motion to dismiss, Plaintiff filed an amended complaint (the "First Amended Complaint"), (Doc. 27), as well as a declaration in opposition to the DA Defendants' motion to dismiss, (Doc. 26). The DA Defendants filed a motion to dismiss the First Amended Complaint on July 24, 2017. (Doc. 29–33.) Plaintiff then filed the Second Amended Complaint on August 15, 2017. (Doc. 40.) On September 28, 2017, DA Defendants filed their motion to dismiss the Second Amended Complaint, together with their memorandum of law and supporting declaration. (Docs. 44–46.) The next day, September 29, 2017, the City filed a motion to dismiss the Second Amended Complaint, along with their memorandum of law and supporting declaration. [7] (Docs. 49–51.) Plaintiff filed his opposition to both the DA Defendants' and City Defendants' motions to dismiss along with a supporting declaration on October 20, 2017. (Docs. 53–54.) The DA Defendants filed their reply on November 8, 2017, (Doc. 57), and the City Defendants filed their reply on November 17, 2017, (Doc. 62).

[7]     Although Williams was named as a Defendant in the Second Amended Complaint, he had not yet been served at the time that Plaintiff filed his Second Amended Complaint. (*See* Doc. 60, at 1.) However, by letter dated November 15, 2017, counsel for the City informed me that it would also represent Williams in the instant action, and requested that I deem the City Defendants' motion to dismiss as Williams' response to the Second Amended Complaint. (*Id.*) I thus consider the City's motion to dismiss as the City Defendants' motion to dismiss, and will refer to this motion as the City Defendants' motion to dismiss for the remainder of this Opinion and Order.

## III. Legal Standards

### A. *Motion to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility ... depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ). In considering a motion to dismiss, a court may also "consider matters of which judicial notice may be taken under Fed.R.Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data." *Smith v. City of New York*, No. 12 Civ. 4572(KPF), 2013 WL 6158485, at *1 (S.D.N.Y. Nov. 25, 2013). "If a court takes judicial notice of documents pertinent to a motion to dismiss, it need not convert the motion to dismiss into a motion for summary judgment." *Jones v. Rivera*, No. 13-cv-1042 (NSR), 2015 WL 8362766, at *3 (S.D.N.Y. Dec. 7, 2015) (quoting *Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) ).

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 84 of 110

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

## B. *Section 1983*

**\*4** Section 1983 provides a civil claim for damages against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1703 (2015). Further, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

## C. *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/ Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) ). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

Plaintiff brings § 1983 and New York law claims against the City Defendants and DA Defendants for malicious prosecution, denial of a right to a fair trial, abuse of process, conspiracy, and failure to intervene. (*See generally* SAC.) Plaintiff also brings claims for conspiracy pursuant to 42 U.S.C. § 1985 and municipal liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*See id.*) All of Plaintiff's claims stem from his arrest and subsequent prosecution with regard to the June 5 Burglary. I consider each claim in turn below.

## A. *Malicious Prosecution*

### 1. Applicable Law

To state a malicious prosecution claim under § 1983, a plaintiff must allege the elements of a state-law malicious prosecution claim. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). The elements of malicious prosecution are: (1) the initiation of a prosecution against a plaintiff; (2) without probable cause; (3) begun with malice; and (4) resulting in a termination in the plaintiff's favor. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir. 1996).

In actions brought pursuant to § 1983, a plaintiff must also have suffered a sufficient post-arraignment deprivation of liberty implicating his Fourth Amendment rights. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) ("Additionally, there must be a post-arraignment seizure for a § 1983 malicious prosecution claim...."); *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000) ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure.' " (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) ) ). Thus, "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 439 (S.D.N.Y. 2010) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) ).

### a. Prosecutorial Immunity

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 85 of 110

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

**\*5**  Although the text of § 1983 does not include language with respect to immunities, "the Supreme Court has ruled that 'Congress did not intend § 1983 to abrogate immunities well grounded in history and reason.' " *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1147 (2d Cir. 1995) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) ). This includes prosecutorial immunity, which grants absolute immunity for state prosecutors and "creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a district attorney." *Id.* Under this doctrine, "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citations and internal quotation marks omitted); *see also Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case insofar as that conduct is intimately associated with the judicial phase of the criminal process." (citations and internal quotation marks omitted) ). The doctrine of absolute immunity for prosecutors is in place in order to ensure public trust in the prosecutor's office—"public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." *Shmueli*, 424 F.3d at 237.

A prosecutor's immunity is expansive, and as long as a prosecutor's conduct implicates the official prosecutorial function (*i.e.*, the initiation and pursuit of a criminal prosecution or any "prosecutorial activities intimately associated with the judicial phase of the criminal process"), and the prosecutor has a colorable claim of authority (*i.e.*, the prosecution is within that prosecutor's jurisdiction), absolute immunity will attach. *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987). "[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate," and this immunity would "even include ... allegedly conspiring to present false evidence at a criminal trial." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994); *see also Shmueli*, 424 F.3d at 237 (stating that prosecutors are entitled to absolute immunity even when conduct would be "reprehensible," including where there are allegations of knowing use of perjured testimony or deliberate withholding of exculpatory information). "[I]nvestigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution ... are shielded by absolute immunity when done by prosecutors." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

The absolute immunity accorded to prosecutors protecting them from malicious prosecution claims under § 1983 also protect them from malicious prosecution claims under New York law. *See Shmueli*, 424 F.3d at 238; *see also Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). Thus, if absolute immunity is conferred with respect to a § 1983 claim, the prosecutor is entitled to the same immunity for a New York state law claim.

### b. Probable Cause

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (internal citation and quotation marks omitted). This presumption may only be rebutted by "evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (quoting *Savino*, 331 F.3d at 72). "[I]t is the plaintiff who bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Savino*, 331 F.3d at 73. Thus, at the motion to dismiss stage, a plaintiff must plausibly allege that his indictment was procured through bad-faith police conduct. *See, e.g., Manganiello*, 612 F.3d at 162 (finding that an indictment was secured through bad faith or perjury where there is "some indication in the police records that, as to a fact crucial to the existence of probable cause, the arresting officers may have lied in order to secure an indictment" (internal quotation marks omitted) ); *Smalls v. City of New York*, 181 F. Supp. 3d 178, 187 (E.D.N.Y. 2016) (finding that although the plaintiff would likely need "more than bald assertions of perjury and fraud to survive summary judgment" the allegations in the complaint that a police officer "filed an accusatory instrument against him and fabricated grand jury testimony" is enough to survive a motion to dismiss).

### 2. Application

#### a. DA Defendants

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

**\*6** Here, Plaintiff brings claims against the DA Defendants under both § 1983 and state law for malicious prosecution with respect to the June 5 Burglary. More specifically, Plaintiff brings claims against Vance and O'Brien for malicious prosecution based on their "commencement and continued prosecution of the illegal judicial proceeding against plaintiff, including the arrest, imprisonment, post deprivation of liberty, and false charges against plaintiff" for the June 5 Burglary. (SAC ¶ 65.)

This, however, describes only "prosecutorial activities intimately associated with the judicial phase of the criminal process," Barr, 810 F.2d at 361, or those that are "associated with [the prosecutor's] function as an advocate," Dory, 25 F.3d at 83. The DA Defendants' alleged discussions with Williams all took place after Plaintiff's arrest and in connection with the prosecution of the six burglary counts in the Indictment. (See id. ¶¶ 15–55.) In addition, the DA Defendants had jurisdiction to prosecute Plaintiff for the burglaries pursuant to New York state statutes, as the burglaries all occurred within New York. Thus, even if the DA Defendants did, among other things, "manufacture[ ] false testimony, statements, evidence and documents" during Plaintiff's prosecution, (id. ¶ 55), absolute immunity would attach to the DA Defendants' actions. Therefore, Plaintiff's federal and state malicious prosecution claims against the DA Defendants are dismissed, as the DA Defendants are entitled to absolute prosecutorial immunity.

### b. City Defendants

Plaintiff also brings a claim against Williams for malicious prosecution based on the "commencement and continued prosecution of the illegal judicial proceeding against plaintiff, including the arrest, imprisonment, post deprivation of liberty, and false charges against plaintiff" for his June 5 Burglary charge. (SAC ¶ 65.) The City Defendants argue that this claim must be dismissed because Plaintiff has failed to sufficiently allege the elements of malicious prosecution claim under § 1983 and New York law. (See City Defs.' Mem. 5–6.) [8]

[8] "City Defs.' Mem." refers to the Memorandum of Law in Support of Defendant City of New York's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b), filed September 29, 2017. (Doc. 51.)

As an initial matter, although the indictment by a grand jury creates a presumption of probable cause, Manganiello, 612 F.3d at 162, I find that Plaintiff's allegations are sufficient to overcome this presumption at this stage of the proceeding. If true, Plaintiff's allegations plainly suggest that the Indictment was grounded in false evidence and Williams's perjured testimony. (See SAC ¶¶ 37–38.) Although Plaintiff will need to provide more than "bald assertions" to survive summary judgment, Smalls, 181 F. Supp. 3d at 187, at the motion to dismiss stage he has sufficiently rebutted the presumption of probable cause created by the Indictment.

However, Plaintiff has not established a deprivation of liberty implicating his Fourth Amendment rights. Because § 1983 is "designed to compensate injuries caused by ... constitutional deprivation," a plaintiff must sufficiently allege a deprivation of liberty amounting to a constitutional violation in order to make out a malicious prosecution claim. Singer, 63 F.3d at 116 (internal quotation marks omitted); see also Rohman, 215 F.3d at 215 ("Since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." (quoting Singer, 63 F.3d at 116) ); Holmes v. City of New York, No. 14 CV 5253-LTS-RLE, 2017 WL 519250, at \*3 (S.D.N.Y. Feb. 8, 2017) ("[A]n actionable deprivation of liberty must flow from the challenged prosecution, in order to ensure that the malicious prosecution claim is not merely one seeking review of a prosecutorial decision."). Where a plaintiff is required to make court appearances in connection with the criminal charges underlying the malicious prosecution claim, courts have found that the deprivation of liberty element is satisfied. See Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013) ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." (internal quotation marks omitted) ); Rohman, 215 F.3d at 215–16 (finding that the deprivation of liberty element was satisfied where the plaintiff had to return to court on at least five occasions and was required to "render himself at all times amenable to the orders and processes of the court"). If, however, the court appearances are attributable to other pending criminal charges against the plaintiff, court appearances are not sufficient to make out the necessary post-arraignment deprivation of liberty. See Coleman v. City of New York, 688 Fed.Appx. 56, 58 (2d Cir. 2017) (summary order).

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 87 of 110

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

**\*7** Here, although Plaintiff was acquitted for the June 5 Burglary, there is no question that he was convicted on the remaining five burglary charges brought against him in the same proceeding, and that throughout the pendency of the June 5 Burglary charge, he was also in custody pursuant to the other five charges. (*See id.* ¶ 55; *see also* City Defs.' Mem. 6.) Thus, Plaintiff has failed to allege a post-arraignment deprivation of liberty. *See Coleman*, 688 Fed.Appx. at 58 (finding that the "ongoing requirement of appearing in court" was not a sufficient deprivation of liberty when it was "not solely attributable to the ... charges [in question]" because "[e]ven if [those] charges had never been, [the plaintiff] still would have had the obligation to appear on account of the other criminal charges").

Because even absent the June 5 Burglary charge, Plaintiff would have been required to appear in court on account of the other five charges of which he was convicted, Plaintiff has failed to show the post-arraignment deprivation of liberty necessary for his malicious prosecution claim against Williams. Accordingly, the City Defendants' motion to dismiss with respect to Plaintiff's federal and state malicious prosecution claims is granted, and these claims are also dismissed.

**B. *Right to a Fair Trial***

**1. Applicable Law**

"It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." *Harris v. City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) (quoting *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ). Thus, a defendant's right to a fair trial is violated "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *see also Jovanovic v. City of New York*, 486 Fed.Appx. 149, 152 (2d Cir. 2012) (summary order) ("A person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."). A defendant whose rights have been violated in such manner may bring an action for damages pursuant to § 1983 for deprivation of a right to a fair trial separate from a claim for malicious prosecution. *See id.*; *see also Nibbs v. City of New York*, 800 F. Supp. 2d 574, 575

(S.D.N.Y. 2011) ("Pursuant to § 1983 and prevailing case law, denial of a right to a fair trial is a separate and distinct cause of action [from malicious prosecution].")). However, "there is no denial of a criminal defendant's right to a fair trial without prejudice to that defendant, i.e., a conviction." *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 472 (S.D.N.Y. 2009).

**2. Application**

Plaintiff alleges that the DA Defendants fabricated evidence and called Williams to the stand to testify falsely in the jury trial, depriving Plaintiff of his right to a fair trial under § 1983. (*See* SAC ¶¶ 52–58.) Specifically, Plaintiff claims that DA Defendants "tampered with alleged evidence by opening an evidence bag and altering a bag belonging to plaintiff's girlfriend by scribbling pen marks to make it appear similar to a complaining victims to influence the jury's decision." (*Id.* ¶ 54.) Further, Plaintiff alleges that Williams forwarded "false documents, statements and evidence" at the instruction of the DA Defendants, (*see id.* ¶ 106), and that both DA Defendants and Williams used these false documents and evidence during his criminal proceeding, (*see id.* ¶ 112).

I find that Plaintiff fails to make out a claim for denial of a right to a fair trial against either the DA Defendants or Williams. Plaintiff's only allegations are generalized and conclusory allegations that Williams "forwarded false documents, statements, and evidence to the New York County D.A.'s Office at the instructions, advice, and behest of [the DA Defendants.]" (*Id.* ¶ 106.) Putting aside the fact that Plaintiff's allegations are generalized and conclusory, even assuming the bag that Plaintiff alleges was falsified was forwarded by Williams to the DA Defendants and presented to the jury, Plaintiff has not plausibly alleged how or why the altered bag would influence the jury's ultimate determination of guilt. [9] Thus, Plaintiff has not plausibly alleged a claim for denial of a right to a fair trial, which requires a "police officer [to] create[ ] false information likely to influence a jury's decision" and "forward[ing of] that information to prosecutors." *Ricciuti*, 124 F.3d at 130; *see also Davenport*, 2017 WL 4356883, at \*18 (finding that a plaintiff's claim for denial of a right to a fair trial failed because "he [did] not present any evidence that [the investigative officer] forwarded incomplete evidence to the District Attorney's Office").

[9]    Plaintiff has made no plausible showing that, even assuming it had been forwarded to the

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

DA Defendants, the bag "was material to the prosecutor's case" and thus was likely to influence a jury's decision. *Davenport v. City of New York*, 15-CV-5890 (MKB), 2017 WL 4356883, at *18 (E.D.N.Y. Sept. 28, 2017).

**\*8** Finally, Plaintiff cannot show that he suffered any deprivation of liberty as a result of his prosecution for the June 5 Burglary because as stated above, Plaintiff was—and would have been—in custody pursuant to his other five burglary charges even absent the charge for the June 5 Burglary. Additionally, Plaintiff acknowledges that he was acquitted of his June 5 Burglary charge. (*See* SAC ¶ 55.) Plaintiff has thus failed to establish a deprivation of liberty as is required for a claim for denial of a right to a fair trial. *See Jovanovic*, 486 Fed.Appx. at 152.

Therefore, both the DA Defendants' and City Defendants' motions to dismiss with respect to Plaintiff's claim for denial of his right to a fair trial are granted, and these claims are dismissed.

### C. *Abuse of Process*

#### 1. Applicable Law

Abuse of process under both § 1983 and New York law requires a defendant to "(1) employ regularly issued legal process to compel performance or forbearance of some act, (2) with the intent to do harm without excuse or justification, (3) in order to obtain a collateral objective beyond the legitimate ends of the process." *Lopez v. City of New York*, 901 F. Supp. 684, 691 (S.D.N.Y. 1995); *see also Savino*, 331 F.3d at 76.

In order to successfully make out the third prong of an abuse of process claim, the plaintiff must show that "defendants acted with malice or with a collateral objective that was outside the legitimate ends of the legal process," and merely alleging that a defendant lacked probable cause is not enough. *See Savino*, 331 F.3d at 77; *see also Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 572 (S.D.N.Y. 2012). "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution," and there must be a "claim that [the defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77; *see also Coleman*, 585 Fed.Appx. 788 ("[R]etaliation for some offense

will not suffice as a collateral motive for the purposes of an abuse of process claim...."). Thus, if a defendant "uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process." *Rodriguez v. Vill. of Sleepy Hollow*, No. 13-CV-8465 (NSR), 2015 WL 4597446, at *8 (S.D.N.Y. July 29, 2015) (quoting *Hauser v. Bartow*, 273 N.Y. 370, 374 (1937) ).

#### 2. Application

Here, Plaintiff rests his claim regarding abuse of process on the allegation that the DA Defendants and Williams arraigned Plaintiff on false charges, caused him to be held in custody, manufactured a false indictment against him, and elicited false testimony in order to "retaliat[e] against plaintiff for filing complaints against them and to protect themselves from future law suits and loss of their jobs." (SAC ¶¶ 42–43; *see also id.* ¶¶ 91–97.) This is not, however, sufficient for an abuse of process claim, as it does not demonstrate that either Williams or the DA Defendants sought some collateral objective outside of the "legitimate ends of the process." *Dellutri*, 895 F. Supp. 2d at 572 (quoting *Savino*, 331 F.3d at 76). In fact, the Second Circuit in *Savino* specifically stated that alleging that a defendant is seeking to retaliate against a plaintiff is not enough to make out a claim for abuse of process. 331 F.3d at 77 ("[T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."). Because the Second Amended Complaint does not allege that Williams or the DA Defendants used the judicial processes for anything other than their proper purposes, both the DA Defendants' and City Defendants' motions to dismiss are granted as to Plaintiff's federal and state abuse of process claims.

### D. *Conspiracy*

#### 1. Applicable Law

**\*9** To prove conspiracy under § 1983, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

**Blue v. City of New York, Not Reported in Fed. Supp. (2018)**

2018 WL 2561023

*Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 287 (S.D.N.Y. 2013) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) ). Moreover, the plaintiff must prove an "actual violation of constitutional rights"—in other words, "the lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer*, 63 F.3d at 119. In addition, to state a claim for conspiracy pursuant to 42 U.S.C. § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) the purpose of which was to deprive a person or class of persons of equal protection of the laws or of equal privileges or immunities under the law; (3) actions by the defendants in furtherance of the conspiracy; (4) injury to plaintiff's person or property or deprivation of a right as a result of these actions; and (5) class-based discriminatory animus." *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007). A claim under § 1985(3) must be "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' " *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 829 (1983) ).

In order to survive a motion to dismiss, § 1983 and § 1985 conspiracy claims must "provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (internal quotation marks omitted). The plaintiff must also allege overt acts in which the defendants engaged to further the agreement, as well as an actual violation of the rights that defendants were alleged to have conspired to violate. *See id.* at 209. "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ).

Absolute prosecutorial immunity may shield prosecutors from a claim of conspiracy brought pursuant to § 1983 when they are acting within their role as an advocate. *See Pinaud*, 52 F.3d at 1148 ("[T]hough it may initially seem peculiar to hold that even a conspiracy among prosecutors is shielded by absolute immunity, the fact that such a conspiracy is certainly not something that is *properly* within the role of

a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it." (internal quotation marks omitted) ). "As this Court and other[ ] circuits have repeatedly held, since absolute immunity covers virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate, when the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy." *Id.* (citation and internal quotation marks omitted).

Further, even where a plaintiff has adequately alleged the elements of a conspiracy, under the doctrine of intracorporate conspiracy "officers, agents and employees of a single corporate entity are legally incapable of conspiring together" and thus cannot be held liable for conspiracy under § 1985(3) or § 1983. [10] *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (internal quotation marks omitted); *see also Randle v. Alexander*, 960 F. Supp. 2d 457, 475 (S.D.N.Y. 2013). There is an exception to this doctrine, however, where a plaintiff shows that the "individuals are motivated by an independent personal stake in achieving the corporation's objective." *Little*, 487 F. Supp. 2d at 442.

[10]   Although the Second Circuit recognizes this rule in the context of § 1985 conspiracy claims, it has not ruled whether the intracorporate conspiracy doctrine applies to § 1983 claims. *See Chamberlain*, 986 F. Supp. 2d at 388. Courts in this District, however, have applied the doctrine to bar conspiracy claims brought pursuant to § 1983. *See id.* ("Several District Courts in the Circuit have addressed the question, however, and have held that the rationale behind the intracorporate conspiracy rule—that there is no conspiracy if the conduct is essentially a single act by agents of a single entity acting with[in] the scope of their employment—applies with equal force in the Section 1983 context."); *Anemone v. Metropolitan Trans. Auth.*, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006) (collecting cases applying the intracorporate conspiracy doctrine to conspiracy claims brought pursuant to § 1983).

### 2. Application

**\*10**  Plaintiff alleges that (1) Williams conspired with the DA Defendants to "falsify statements, documents, testimony, affidavits, evidence and information" which was presented

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

to the grand jury, resulting in his arrest, (SAC ¶¶ 117–19); (2) the DA Defendants conspired with each other to fabricate an indictment against him, (*id.* ¶¶ 120–21); (3) Williams conspired with the DA Defendants to arrest Plaintiff on false charges to cover up the fraudulent act of filing a false indictment, (*id.* ¶ 122); and (4) Williams conspired with the DA Defendants to tamper with evidence, therefore depriving him of a fair trial, (*id.* ¶¶ 123–24). The City Defendants and DA Defendants argue that these claims are either barred by the intracorporate conspiracy doctrine or, in the alternative, that Plaintiff has failed to sufficiently allege the elements of conspiracy. (*See* DA Defs.' Mem. 16–18; City Defs.' Mem. 10–11.) [11]

[11]    "DA Defs.' Mem." refers to the Memorandum of Law in Support of District Attorney Cyrus R. Vance and Assistant District Attorney Erin O'Brien's Motion to Dismiss Pursuant to Federal Rule 12(b)(6), filed September 28, 2017. (Doc. 46.)

As an initial matter, Plaintiff's allegations that the DA Defendants conspired with one another to fabricate an indictment, (SAC ¶¶ 120–21), are dismissed based on absolute prosecutorial immunity, *see Pinaud*, 52 F.3d at 1148, and the intracorporate conspiracy doctrine, *see Hartline*, 546 F.3d at 99 n.3. During the time of the alleged conspiracy, the DA Defendants were acting in their capacity as advocates in connection with their prosecution of the six burglary counts, and thus the DA Defendants are protected by absolute immunity with respect to Plaintiff's § 1983 conspiracy claim. Even assuming the DA Defendants were not entitled to prosecutorial immunity, Plaintiff's § 1983 and § 1985 claims would be barred pursuant to the intracorporate conspiracy doctrine. Vance and O'Brien are both prosecutors in the New York County District Attorney's Office, and thus part of a single corporate entity. *See Hartline*, 546 F.3d at 99 n.3. Further, Plaintiff does not allege any facts that could support an inference that either prosecutor was motivated by an "independent personal stake" in the prosecution, *Little*, 487 F. Supp. 2d at 442, and therefore Plaintiff's claim does not fall under the exception to the intracorporate conspiracy rule. Accordingly, the DA Defendants' motion to dismiss is granted with respect to Plaintiff's claims that the DA Defendants conspired with one another, because the claims are barred by prosecutorial immunity for the § 1983 claim and the intracorporate conspiracy doctrine for the § 1983 and § 1985 claims.

In addition, Plaintiff has failed to allege that the conspiracies were in any way motivated by "racial or ... otherwise class-based, invidious discriminatory animus." *Mian*, 7 F.3d at 1088 (internal quotation marks omitted). Although Plaintiff alleges that at the time of his arrest, NYPD officers, including Williams, were "acting on defendant City of New York official policies and customs of arresting individuals of African American decent [sic] and manufacturing false evidence against individuals on the pretext of being involved in illegal activities," (SAC ¶ 15), this statement is conclusory and devoid of any factual support, and Plaintiff provides no evidence suggesting that Williams or the DA Defendants were acting with discriminatory animus with respect to the alleged conspiracies surrounding his arrest and prosecution. Therefore, all of Plaintiff's § 1985 conspiracy claims fail, and the DA Defendants' and City Defendants' motions to dismiss with respect to Plaintiff's § 1985 conspiracy claims are also granted in light of Plaintiff's failure to plausibly allege racial discriminatory animus.

Plaintiff contends that Williams and the DA Defendants conspired to (1) falsify and tamper with documents and (2) arrest Plaintiff on false charges in violation § 1983 by depriving him of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (*See* SAC ¶¶ 117–25.) With regard to the alleged conspiracies between the DA Defendants and Williams, I find that the intracorporate conspiracy doctrine does not apply, since the DA Defendants and Williams represent separate entities—as employees of the New York County District Attorney's Office and the New York City Police Department, respectively, the DA Defendants are employees of the state and Williams is an employee of the City. *See Dunlop v. City of New York*, No. 06 Civ. 0433(RJS), 2008 WL 1970002, at *13–14 (S.D.N.Y. May 6, 2008) (denying motion to dismiss conspiracy claim between New York County District Attorney's Office and the New York City Police Department based upon the intracorporate conspiracy doctrine); *see also Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("When prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."). However, Plaintiff fails to plausibly allege that Williams and the DA Defendants conspired with one another to inflict an unconstitutional injury and that the conspiracy created an "actual violation of constitutional rights" as necessary to sustain a § 1983 conspiracy action. *See Singer*, 63 F.3d at 119. Because all of Plaintiff's claims alleging an actual violation of his constitutional rights have been dismissed, as detailed above, Plaintiff's § 1983 conspiracy claims are similarly dismissed.

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 91 of 110

Blue v. City of New York, Not Reported in Fed. Supp. (2018)
2018 WL 2561023

See *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (dismissing the plaintiff's conspiracy claims where he could not establish an actual violation of his constitutional rights through claims for false arrest or use of excessive force); *Heller v. Bedford Cent. Sch. Dist.*, 144 F. Supp. 3d 596, 627 (S.D.N.Y. 2015) ("Because none of plaintiff's claims alleging an actual violation of is constitutional rights remain against [the defendant], his conspiracy claims are similarly subject to dismissal.").

### E. *Failure to Intervene*

#### 1. Applicable Law

 **\*11** A failure to intervene claim is grounded in the rule that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014). "Liability only attaches if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246(SAS), 2012 WL 987592, at \*5 (S.D.N.Y. Mar. 23, 2012) (quoting *Tavares v. City of New York*, No. 08 Civ. 3782(JSR)(JCF), 2010 WL 234974, at \*4 (S.D.N.Y. Jan. 19, 2010) ). A plaintiff's allegations may not be vague or conclusory, *see id.* at \*7, and whether it succeeds or fails depends on whether the plaintiff successfully alleges an underlying constitutional violation, *see Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 566 (S.D.N.Y. 2010) ("An underlying constitutional violation is an essential element of a failure to intercede claim under § 1983.").

#### 2. Application

Plaintiff alleges that the DA Defendants and City Defendants failed to intervene and thus should be held liable. (*See* SAC ¶¶ 131–38.) Plaintiff's failure to intervene claim fails as a matter of law because he has not established an underlying constitutional violation. As there is no predicate violation of Plaintiff's constitutional rights, his failure to intervene claim is dismissed and the motions of the DA Defendants and City

Defendants to dismiss with respect to the failure to intervene claims are granted.

### F. *Municipal Liability*

#### 1. Applicable Law

Because the language of § 1983 makes clear that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort," a municipality "cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 691. In order to succeed on a claim against a municipality under § 1983 based on acts of government officials, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ). Thus, a plaintiff must establish a violation of his constitutional rights in order to succeed in a claim for municipal liability. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986).

When determining whether municipal liability applies, a court must "conduct a separate inquiry into whether there exists a 'policy' or 'custom.' " *Cowan*, 95 F. Supp. 3d at 637 (quoting *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 Fed.Appx. 827 (2d Cir. 2003) ). In order to prevail, a plaintiff must allege one of "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). A plaintiff cannot show a "policy" or "custom" sufficient to impose municipal liability merely by providing "[p]roof of a single incident of unconstitutional activity ... unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Okla. v. Tuttle*, 471 U.S. 808, 823–24 (1985);

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

*see also Cowan*, 95 F. Supp. 3d at 637 ("Generally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (internal quotation marks omitted) ).

**\*12** Further, a "[p]laintiff must ... prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality." *Brandon*, 705 F. Supp. 2d at 277; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Accordingly, in order to survive a motion to dismiss, a plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 540 (S.D.N.Y. 2015) (internal quotation marks omitted).

### 2. Application

Plaintiff's Second Amended Complaint asserts that the City should be held liable because it has "customs, policies, practices, ordinances and regulations" that has deprived him of his constitutional rights, including "[w]rongfully arresting individuals," "manufacturing evidence against individuals," "unlawfully searching detainees," "arresting innocent persons in order to meet 'productivity' goals," and "wrongfully and unreasonably brutalizing innocent members of the public, despite the lack of probable cause to do so."[12] (*See* SAC ¶¶ 144–45.) As an initial matter, Plaintiff has failed to demonstrate an underlying constitutional violation with respect to the June 5 Burglary, as I have dismissed all of his other claims. Thus, his municipal liability claim must also fail. *See Cowan*, 95 F. Supp. 3d at 636; *see also Martinez v. City of New York*, 340 Fed.Appx. 700, 702 (2d Cir. 2009) (summary order) ("Because the arresting officers in this case did not violate plaintiff's constitutional rights, there can be no municipal liability even if plaintiff had alleged a specific policy or custom that led to his detainment.").

---

[12]    In their reply memorandum, the City Defendants claim that Plaintiff appears to raise an argument for municipal liability based on the City's failure to train for the first time in his opposition. (*See* City Defs. Reply 8; *see generally* Pl.'s Opp.) Although a plaintiff typically cannot amend a complaint through claims raised for the first time in an opposition, because of Plaintiff's pro se status

I will "read the facts alleged ... for whatever claims may properly be based on such facts." *Finch v. New York*, No. 10 CV 9691(VB), 2012 WL 2866253, at *8 (S.D.N.Y. May 30, 2012); *see also Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14-cv-675 (RJS), 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (holding in connection with a pro se plaintiff's motion that "to the extent claims alleged for the first time in motion papers could have been asserted based on the facts alleged in the complaint, they should be considered"). To the extent that the facts in the Second Amended Complaint allege municipal liability based on failure to train, I find that Plaintiff offers only conclusory allegations. He does not provide any facts detailing a municipal training program causing a "pattern of similar constitutional violations by untrained employees" as necessary to make out a failure to train claim. *See Simms v. City of New York*, 480 Fed.Appx. 627, 629–30 (2d Cir. 2012) (summary order) ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.... Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) ) ). "City Defs.' Reply" refers to the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Pursuant to FRCP 12(B), filed November 17, 2017. (Doc. 62.) "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition of Cyrus Vance, Jr. and Erica O'Brien's Motion to Dismiss Pursuant to Federal Rule 12(b)(6), filed October 20, 2017. (Doc. 54 Ex. 1.)

**\*13** In addition, the Second Amended Complaint does not sufficiently allege an official policy or custom, as it only contains conclusory allegations that the City has a policy or practice of wrongfully arresting, searching, and brutalizing individuals or manufacturing evidence against them. *See Kucharczyk*, 95 F. Supp. 3d at 540 ("[C]onclusory allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."). The only specific allegations contained in the Second Amended Complaint relate to Plaintiff's arrest and the June 5 Burglary charges, and are not sufficient to establish municipal liability.

Case 5:24-cv-01189-DNH-MJK Document 5 Filed 10/08/24 Page 93 of 110

Blue v. City of New York, Not Reported in Fed. Supp. (2018)

2018 WL 2561023

*See Cowan*, 95 F. Supp. 3d at 637. Thus, Plaintiff fails to state a claim of municipal liability, and the City Defendants' motion to dismiss with respect to this claim is granted.

### G. *State Law Claims*

Plaintiff also brings state law claims pendent to, and based on, the same facts as his federal law claims. Plaintiff's state law claims for malicious prosecution and abuse of process, which are governed by the same standard as its federal counterpart, are dismissed with prejudice as detailed above. With respect to Plaintiff's reference to New York law in his denial of a right to a fair trial claim, his conspiracy claims, and his failure to intervene claims, to the extent that Plaintiff's factual allegations are sufficient to state claims for violations of New York state law, I decline to exercise jurisdiction over them for the reasons described below.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Indeed, "when federal claims are dismissed early in the litigation ... dismissal of state law claims is appropriate." *Karmel v. Liz Claiborne, Inc.*, No. 99 Civ.3608IWK, 2002 WL 1561126, at *3 (S.D.N.Y. July 15, 2002) (internal quotation marks omitted). Having dismissed all of Plaintiff's claims over which I had original jurisdiction as well as state law claims governed by the same standard, I decline to exercise jurisdiction over Plaintiff's pendent state law claims to the extent that his factual allegations give rise to them. Accordingly, those claims are dismissed.

### H. *Leave to Replead*

Rule 15(a) of the Federal Rules of Civil Procedure requires that courts grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "[I]t is within the sound discretion of the court whether to grant leave to amend." *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 281 (S.D.N.Y. 2010) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) ). Generally, when

courts grant a motion to dismiss, amendments are favored because they "tend to facilitate a proper decision on the merits." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks omitted). Thus, a plaintiff is typically granted leave to amend in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed ... or futility of amendment." *Alcon*, 719 F. Supp. 2d at 281–82 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962) ).

Given that I have provided Plaintiff with multiple opportunities to amend his complaint, I find that it would be futile to allow Plaintiff to amend once more. *See Best v. City of New York*, No. 12 Civ. 7874(RJS)(SN), 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) ("Plaintiff has been given ample opportunity to amend his pleadings and the Court can only afford him so many bites at the apple."); *Dyson v. N.Y. Health Care, Inc.*, 353 Fed.Appx. 502, 503–04 (2d Cir. 2009) (summary order) (affirming a district court's dismissal of a third amended complaint where "the district court afforded [the plaintiff] three opportunities to file an amended complaint" but "despite these, she did not plead any facts sufficient to show that she was plausibly entitled to any relief"). Accordingly, Plaintiff is denied leave to amend the Second Amended Complaint.

### V. Conclusion

**\*14** Because Plaintiff failed to plausibly allege claims against the DA Defendants and City Defendants, their motions to dismiss are GRANTED in their entirety, and Plaintiff's claims are dismissed with prejudice as to all of his § 1983 and § 1985 claims as well as all state law claims analyzed under the same standard. To the extent that Plaintiff's allegations in the Second Amended Complaint can be construed to give rise to additional state law claims, I decline to exercise jurisdiction over these claims and they are dismissed without prejudice to filing those claims in state court.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue). The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to the pro se Plaintiff and enter judgment for Defendants.

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 94 of 110

**Blue v. City of New York, Not Reported in Fed. Supp. (2018)**

2018 WL 2561023

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2561023

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

2020 WL 6196144
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Joseph RYLE, Jr., Plaintiff,

v.

REHRIG PACIFIC CO.; and Michael Bush, Defendants.

1:19-CV-1478 (GTS/DJS)

|

Signed 10/22/2020

**Attorneys and Law Firms**

OF COUNSEL: KRISTIE HALLORAN HANSON, ESQ.,
HANSON LAW FIRM, Counsel for Plaintiff, 1801 Altamont
Avenue, Schenectady, NY 12303.

OF COUNSEL: CHRISTOPHER JOHN STEVENS, ESQ.,
KRISTI RICH WINTERS, ESQ., JACKSON LEWIS, P.C.,
Counsel for Defendants, 677 Broadway, 4 th Floor, Albany,
NY 12110.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this action filed by Joseph
Ryle, Jr. ("Plaintiff") against Rehrig Pacific Company and
Michael Bush ("Defendants"), are the following two motions:
(1) Defendants' motion to dismiss Plaintiff's Complaint for
failure to state a claim upon which relief can be granted;
and (2) Plaintiff's cross-motion for leave to file an Amended
Complaint. (Dkt. Nos. 7, 10.) For the reasons set forth below,
Defendants' motion is granted, and Plaintiff's cross-motion is
denied.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**
Generally, in his Complaint, Plaintiff asserts eight claims:
(1) a claim of negligence resulting in personal injury
based on (i) harassment, discrimination, and derogatory
statements directed at him by Defendant Bush, and (ii)
Defendant Rehrig's failure to take corrective action based
on those statements despite being made aware of them; (2)
a claim that Defendant Bush's harassment, discrimination,
and derogatory statements created a nuisance that caused

him to sustain personal injuries; (3) a claim that Defendant
Bush's conduct towards him constituted intentional infliction
of emotional distress ("IIED"); (4) a claim of slander based
on defamatory oral statements that Defendant Bush made
about him to other employees; (5) a claim of discrimination
based on discriminatory conduct and defamatory statements
by Defendant Bush that ultimately led to Plaintiff being
constructively discharged; (6) a claim that Defendant Rehrig
wrongfully terminated his employment in retaliation for his
submission of a written complaint to the Employee Resources
Department regarding Defendant Bush's conduct; (7) a claim
that Defendants breached the employment contract with
Plaintiff by creating a retaliatory, hostile work environment
through failing to discipline employees in supervisory or
management positions related to Defendant Bush's conduct;
and (8) a claim that Defendants violated the Family Medical
Leave Act ("FMLA") through Defendant Bush's failure to
exercise due care when addressing the sensitive issues of
Plaintiff's wife and his need to intermittently take leave under
the FMLA. (Dkt. No. 2 [Pl.'s Compl.].)

**B. Parties' Briefing on Defendants' Motion to Dismiss**

**1. Defendants' Memorandum of Law**

Generally, in their motion to dismiss, Defendants argue that
Plaintiff's Complaint fails to state any plausible cause of
action. (Dkt. No. 7, Attach. 1, at 8-13 [Defs.' Mem. of Law].)

As to Plaintiff's negligence claim, Defendants argue that the
Complaint does not identify any duty that Defendants owed
to Plaintiff, or allege facts plausibly suggesting the other
elements of breach, causation, or damages. (*Id.* at 8.)

As to Plaintiff's nuisance claim, Defendants argue that a
nuisance claim is not relevant to this action (which does not
involve real property), but that, in any event, Plaintiff has not
alleged facts plausibly suggesting any duty Defendants owed
to Plaintiff or any of the other required elements of that claim.
(*Id.* at 9.)

As to Plaintiff's IIED claim, Defendants argue that Plaintiff
has not alleged facts plausibly suggesting any of the relevant
elements due to a complete lack of detail about the conduct
underlying the claim, and that, in any event, such a claim is
duplicative of the other more specific tort claims alleged. (*Id.*
at 9-10.)

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 96 of 110

Ryle v. Reinig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

**\*2**  As to Plaintiff's slander claim, Defendants argue that Plaintiff has not even alleged what the slanderous statement was and has additionally failed to allege facts plausibly suggesting any of the other required elements of that claim. (*Id.* at 10.)

As to Plaintiff's discrimination claim, Defendants argue that Plaintiff has not alleged on what basis he was discriminated against or that he belongs to any protected class, has not alleged facts plausibly suggesting that the termination of his employment was due to discrimination, and has not even stated whether this claim was brought under federal or New York law. (*Id.* at 11.)

As to Plaintiff's breach of contract claim, Defendants argue that Plaintiff has not alleged what provision of his employment contract was allegedly breached and has not alleged facts plausibly suggesting any of the required elements of that claim. (*Id.* at 11-12.)

As to Plaintiff's FMLA claim, Defendants argue that Plaintiff has not clearly asserted what right under the FMLA was violated by Defendants' conduct, and that he has not alleged facts plausibly suggesting either an interference claim or a retaliation claim because he has not alleged that he was denied any benefit to which he was entitled under the FMLA or that his termination occurred under circumstances giving rise to an inference of discrimination. (*Id.* at 12-13.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff argues that his Complaint states plausible causes of action, because (a) he alleged facts plausibly suggesting that Defendants breached their duty to provide a non-hostile work environment by ignoring his complaints about that environment, (b) he has alleged facts to plausibly allege his claim for IIED specifically based on the allegations of Defendants' behavior, and (c) he has alleged facts plausibly suggesting that Defendant Bush slandered him. (Dkt. No. 10, Attach. 2, at 9 [Pl.'s Opp'n Mem. of Law].)

### C. Parties' Briefing on Plaintiff's Cross-Motion to File an Amended Complaint

#### 1. Plaintiff's Memorandum of Law

Generally, Plaintiff argues that he should be permitted to amend his Complaint because leave to do so should be freely given when justice so requires in the absence of any evidence of bad faith, undue delay, or undue prejudice. (Dkt. No 10, Attach. 2, at 8 [Pl's Opp'n Mem. of Law].)

#### 2. Plaintiff's Proposed Amended Complaint

In his proposed Amended Complaint, Plaintiff adds his wife, Linda Ryle, as a co-Plaintiff. (Dkt. No. 12 [Proposed Am. Compl.].) Plaintiff also adds factual allegations to his original eight claims, and asserts eight new claims on behalf of Linda Ryle for the loss of society, services, and companionship related to the injuries alleged as a result of each of Plaintiff's eight claims. (*Id.*)

#### 3. Defendants' Opposition Memorandum of Law

Generally, in their opposition to Plaintiff's motion to file an Amended Complaint, Defendants make two arguments: (1) Plaintiff's motion should be denied as futile because the proposed Amended Complaint, even though adding factual allegations, still does not allege facts plausibly suggesting any valid claim; and (2) Plaintiff's motion to add Linda Ryle as a co-Plaintiff should be denied because she is an improper party due to the fact that she never worked for Defendants or was in any way involved with Defendants, and because her claims for loss of consortium must stand or fall with the substantive claims on which they rely, and, as already argued, Plaintiff has not alleged facts plausibly suggesting that any of those underlying substantive claims are valid. (Dkt. No. 13, at 5-14 [Defs.' Reply Mem. of Law].)

## II. GOVERNING LEGAL STANDARDS

 **\*3**  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires

Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 555-70. The Court explained

that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*4** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

## III. ANALYSIS

### A. Whether Plaintiff's Complaint States a Claim Upon Which Relief Can Be Granted

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 7, Attach. 1, at 8-13 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

As discussed above in Part II of this Decision and Order, threadbare recitals of the elements of a cause of action and assertions without sufficient factual support are insufficient to meet even the liberal pleading standard required on a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949. However, threadbare assertions devoid of factual support are precisely what Plaintiff's Complaint provides here. Of note, the relevant allegations that Plaintiff makes related to his various claims in his original Complaint are as follows: (a) from February 6, 2018, to April 4, 2019, Plaintiff was harassed and discriminated against in such a way that created a burden, nuisance, or intentional infliction of emotional distress; (b) he documented unspecified derogatory statements made about him by Defendant Bush and, on or about April 2, 2018, he submitted a written complaint to the Employee Resources Department regarding his concerns about Defendant Bush's statements; (c) on or about April 16, 2018, he received a letter stating that, as a result of the company's investigation into his complaint, Defendant Rehrig was dismissing all his claims against management and his supervisors; (d) Defendant Bush, as an employee of Defendant Rehrig and Plaintiff's supervisor, breached Plaintiff's employment contract by creating a retaliatory and hostile work environment that ultimately led to the termination of Plaintiff's employment; (e) Defendant Rehrig failed to discipline employees in supervisory or management positions; and (f) Defendant Bush was negligent in his duty as Plaintiff's supervisor to exercise due care towards Plaintiff when addressing the sensitive medical issues of Plaintiff's wife and Plaintiff's need for intermittent use of leave under the FMLA. (Dkt. No. 2 [Pl.'s Compl.].)

Notably, nowhere in his Complaint does Plaintiff allege facts related to how he was harassed or discriminated against (other than unspecified slanderous comments by Defendant Bush), the nature of the words Defendant Bush said that he alleges are slander, the nature of the injuries or emotional distress that he suffered as a result of Defendants' conduct, what portion of his employment contract he asserts was breached by Defendants' actions, or how Defendant Bush's response to Plaintiff's wife's unspecified medical condition and his need to use FMLA leave violated the FMLA. Without such basic factual allegations related to Plaintiff's claims, the Court finds that the Complaint fails to plausibly suggest that Defendants are liable for any misconduct under the law.

**B. Whether Plaintiff's Request to Amend the Complaint Should Be Denied As Futile**

**\*5** After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendants' reply memorandum of law. (Dkt. No. 13, at 5-14 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

A court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court is not required to grant leave to amend where such amendment would be futile, or, in other words, when any amendment would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Byerly v. Ithaca Coll.*, 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003) (Scullin, C.J.). In determining whether amendments to the complaint would be futile, the Court may consider not only proposed amendments submitted by the plaintiff, but also "all possible amendments" that could be made. *Panther Partners Inc. v. Ikanos Commications, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

As to his negligence claim, Plaintiff adds the following relevant factual allegations: (a) Defendants had a duty to not be negligent towards their employees; (b) Defendants breached this duty when they ignored Plaintiff's complaints about Defendant Bush's harassing and derogatory behavior, including his formal written complaint; and (c) as a result of Defendants' conduct, Plaintiff developed severe post-traumatic stress disorder ("PTSD"), anxiety, depression, and panic attacks with agoraphobia that have rendered him unable to work. (Dkt. No. 12 [Proposed Am. Compl.].)

Under New York law, a negligence claim requires proof of the following three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury substantially caused by that breach. *Pasternack v. Laboratory Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015).

The Court agrees with Defendants that a duty "not to be negligent" is too broad a factual allegation to plausibly suggest the first element of a negligence claim. Construing the proposed Amended Complaint liberally, the Court finds that Plaintiff has (albeit more implicitly) alleged a slightly more defined duty of a supervisor or employer to not create a hostile work environment and to address complaints of the existence of a hostile work environment. Under New York law, "[t]he injured party must show that a defendant owed not merely a general duty to society but a specific duty to the particular claimant," and "[c]ourts traditionally fix the duty point by balancing factors, including the reasonable

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 99 of 110

Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *In re September 11 Litig.*, 280 F. Supp. 2d 279, 290 (S.D.N.Y. 2003) (internal quotation marks omitted); *see also Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) ("Identifying the scope of an alleged tortfeasor's duty is not something derived or discerned from an algebraic formula. Rather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies and sometimes contractual assumptions of responsibility."). However, still, the Court is unable to find that the proposed Amended Complaint has alleged facts plausibly suggesting that Defendants owed a duty to Plaintiff.

**\*6** In any event, even if the proposed Amended Complaint's factual allegations are sufficient to plausibly suggest the existence of a valid legal duty, the Court finds that the only harm that Plaintiff alleges is emotional in nature, and thus his claim is more appropriately a claim for negligent infliction of emotional distress. (*See* Dkt. No. 12 [Pl.'s Proposed Am. Compl., alleging that, as a result of Defendants' conduct, he was diagnosed with severe PTSD, anxiety, depression, and panic attacks with agoraphobia, but alleging no physical harm or fear of physical injury].) Courts have been reluctant to permit recovery on negligence claims based on purely emotional harms unless certain specific conditions have been met. *Vumbaca v. Terminal One Gr. Ass'n L.P.*, 859 F. Supp. 2d 343, 374-76 (E.D.N.Y. 2012). Such claims can be sustained only where there have been allegations plausibly suggesting either a fear of physical injury as a direct result of the alleged conduct itself or that their emotional injury is genuine and substantial as the result of "special circumstances." *See Vumbaca*, 859 F. Supp. 2d at 375; *Ranta v. City of New York*, 14-CV-3794, 2020 WL 5043933, at \*2-3 (E.D.N.Y. Aug. 26, 2020) (noting that "the New York Court of Appeals endorsed the view that, in some cases, 'an especial likelihood of genuine and serious mental distress, arising from the special circumstances ... serves as a guarantee that the claim is not spurious' ") (quoting *Johnson v. New York*, 37 N.Y.2d 378, 382 [N.Y. 1975]). "In the absence of fear of injury, the requisite guarantees of genuineness can be provided by the shocking or severe nature of the claim itself"; "a plaintiff's uncorroborated testimony of upsetness" does not suffice to guarantee the genuineness of his allegations of emotional harm. *Id.*; *see also Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 268 (E.D.N.Y. 2012) ("In the absence of fear of injury, the guarantee of genuineness can be provided by

the shocking or severe nature of the claim itself or psychiatric testimony.... If a plaintiff is relying on psychiatric testimony, he or she must present more than a plaintiff's uncorroborated testimony of upsetness").

Here, Plaintiff's allegations that Defendant Bush told people he was a lazy minority who was abusing the FMLA system and that Defendant Bush otherwise was harassing and derogatory towards him do not plausibly suggest either fear for his physical safety or the requisite shocking or severe conduct that has been found to constitute special circumstances by other courts. *See, e.g., Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (finding that negligently misdiagnosing a plaintiff with HIV was likely to constitute a special circumstance to allow for the recovery of purely emotional harm); *Ranta*, 2020 WL 5043933, at \*3 (finding that wrongful conviction of a spouse or child would present a special likelihood of genuine and serious mental distress on that person's family members); *Johnson*, 37 N.Y.2d at 380 (finding special circumstances where the plaintiffs were negligently and mistakenly informed that their family member had died).

Additionally, even though Plaintiff has alleged that he was diagnosed with multiple mental impairments at an undisclosed time, has been unable to work or leave his house, and is receiving Social Security disability benefits as a result of his mental impairments (which arguably provide some corroboration for his allegations of emotional distress), the Court finds that his claim against Defendant Bush must fail because all the conduct he alleges Defendant Bush engaged in was intentional (i.e., he alleges that Defendant Bush caused his injury by making various harassing and derogatory statements). *See Trayvilla v. Japan Airlines*, 111 N.Y.S.3d 224, 225 (N.Y. App. Div. 2d Dep't 2019) (noting that allegations of intentional conduct cannot form the basis for a cause of action sounding in negligence); *Offor v. Mercy Medical Ctr.*, 98 N.Y.S.3d 69, 70 (N.Y. App. Div. 1st Dep't 2019) (dismissing claim for negligent infliction of emotional distress where the allegations underlying the claim involved intentional rather than negligent conduct); *Santana v. Leith*, 985 N.Y.S.2d 147, 148 (N.Y. App. Div. 2d Dep't 2014) (noting that "a claim must fail, where, as here, no allegations of negligence appear in the pleadings," in a case where the allegations of conduct consisted of allegations that the defendant attacked him with a hammer while using racial and ethnic slurs, conduct that the court characterized as intentional); *Regeda v. City of New York*, 09-CV-5427, 2012 WL 7157703, at \*13 (E.D.N.Y. Sept.

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 100 of 110

Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)
2020 WL 6196144

7, 2012) (finding that the negligent infliction of emotional distress claim should be dismissed because it was based on intentional conduct) report-recommendation adopted by 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013). As a result, the Court finds that Plaintiff has not alleged facts plausibly suggesting a claim for negligence-based infliction of emotional distress as to Defendant Bush.

**\*7** As to Defendant Rehrig, the Court finds that Plaintiff has not alleged facts plausibly suggesting that Defendant Rehrig breached any duty it might have owed to Plaintiff. Plaintiff's proposed Amended Complaint acknowledges that (a) he filed his internal complaint on April 2, 2018, and (b) he received a letter on April 16, 2018, that stated that the company had performed an investigation of his complaint and was subsequently dismissing the claims made in that complaint. (Dkt. No. 12, at ¶¶ 29, 34, 36 [Pl.'s Proposed Am. Compl.].) Plaintiff therefore appears to acknowledge that Defendants did in fact perform some sort of investigation into his internal complaint, even if it did not result in a favorable finding on his claims; and he does not provide any factual allegations plausibly suggesting that this investigation was deficient, pretextual, or unfair.

Furthermore, although the pleadings of represented plaintiffs need not be liberally construed as having been effectively amended by factual allegations contained in their memoranda of law, here, the Court notes that Plaintiff alleges in his memorandum of law that, "[u]pon information and belief, Defendant Bush was suspended on April 5, 2018 and then terminated." (Dkt. No. 10, Attach. 2, at 6 [Pl.'s Opp'n Mem. of Law].) Given the timeline presented by Plaintiff, it therefore appears that Defendant Bush was in fact disciplined after Plaintiff made his internal complaint, although it is unclear whether the complaint was the reason for that discipline.

In short, taken together, the factual allegations of Plaintiff's proposed Amended Complaint do not plausibly suggest that Defendant Rehrig breached any duty it may have had to Plaintiff because, to the contrary, they suggest that Defendant Rehrig took various measures to address Plaintiff's concerns. As a result, Plaintiff has not alleged facts plausibly suggesting that Defendant Rehrig breached any duty it may have owed to Plaintiff to ensure that its employees did not create a hostile work environment.

As to his claim for nuisance, Plaintiff has not added any specific factual allegations, but instead continues to allege that Defendants' harassing and discriminatory conduct

created a nuisance. (Dkt. No. 12, at ¶¶ 15-17 [Proposed Am. Compl.].) Notwithstanding the factual insufficiency of Plaintiff's pleading of this claim, the Court agrees with Defendants that such a claim is not legally cognizable based on the facts alleged. Notably, a claim for private nuisance requires showing a substantial interference with a plaintiff's right to use and enjoy land that is intentional or negligent in origin and unreasonable in character and is caused by the defendant's actions or failure to act, while a claim for public nuisance requires a showing of a substantial interference with a right common to the public that is created, contributed, or maintained by defendant's negligent or intentional conduct or omissions causing a particular harm to the plaintiff that is different from the harm suffered by the community at large. *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 358 (W.D.N.Y. 2018). Because Plaintiff has not alleged facts regarding an interference with his right to use or enjoy land or with a right common the public, he cannot sustain a claim for either private or public nuisance.

As to his claim for IIED, Plaintiff adds the following relevant factual allegations: (a) Defendants' conduct in harassing him, discriminating against him, and making derogatory statements about him was extreme and outrageous in that it was beyond all possible bounds of decency, was atrocious, and was not of the sort of behavior that is tolerated in civilized society; (b) this conduct was intentionally taken with reckless disregard of the fact that it caused Plaintiff severe emotional distress; (c) Plaintiff's resulting emotional distress has rendered him unable to work or even leave his home; and (d) Defendant Bush told "everyone" that Plaintiff is a lazy minority drug user who was taking advantage of the FMLA. (Dkt. No. 12, at ¶¶ 20-23 [Proposed Am. Compl.].)

**\*8** Under New York law, to state a claim for IIED, a plaintiff must allege facts plausibly suggesting the following four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 [2d Cir. 1996]). As to the first element, "defendant's conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,' " and "[w]hether conduct is 'outrageous' is a matter of law to be decided by the court." *Semper*, 786 F. Supp. 2d at 586 (quoting *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 [N.Y. 1983]).

Ryle v. Reirig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

Here, Plaintiff's allegations that Defendants harassed him, discriminated against him, and made derogatory comments that he was a lazy minority drug user who was taking advantage of the FMLA do not meet the high standard for stating a claim of IIED. *See Rother v. New York State Dep't. of Corrs. and Community Supervision*, 970 F. Supp. 2d 78, 104 (N.D.N.Y. 2013) (Kahn, J.) (finding that vandalism, shunning, and threats directed at plaintiff along with a single "highly offensive, mysogynist, and demeaning" statement, were not sufficiently outrageous); *Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 557, 564-65 (S.D.N.Y. 2012) (granting summary judgment against plaintiff on IIED claim where her supervisor and another employee repeatedly told her in front of others that she was "shit," "nothing," an animal, a "bitch," a "slut," and a "whore"); *Semper*, 786 F. Supp. 2d at 587 (noting that allegations that constitute "harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities" are generally not sufficiently outrageous to sustain a claim of IIED). Nor has Plaintiff alleged facts plausibly suggesting that these actions were taken with the specific intent to cause Plaintiff severe emotional distress. As a result, Plaintiff's proposed amendments do not state a claim for IIED upon which relief can be granted.

As to his claim for slander, Plaintiff has added the following relevant factual allegations in his proposed Amended Complaint: (a) Defendant Bush intentionally made untrue and defamatory oral statements about him to other employees; (b) Defendant Bush would tell "anyone at the Company who would listen" that Plaintiff was "a minority lazy person" who "inappropriately used the Family Leave Act to take care of his sick wife, who was not sick at all"; and (c) these statements were not true and Defendants knew they were not true. (Dkt. No. 12, at ¶¶ 27-28 [Pl.'s Proposed Am. Compl.].)

Under New York law, to state a cause of action for slander, the plaintiff must allege facts plausibly suggesting (1) a defamatory statement of fact, (2) that is false, (3) published to a third party, (4) of and concerning the plaintiff, (5) made with the applicable level of fault on the part of the speaker, (6) that causes either special harm or constitutes slander per se, and (7) that is not protected by privilege. *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001).

Here, Plaintiff has not alleged facts plausibly suggesting in particular that he suffered any special harm. Rather, the only harm Plaintiff alleges is generic "personal injuries," which

the Court construes to mean the onset of the PTSD, anxiety, depressive disorder, and panic attacks with agoraphobia that he alleges were the result of Defendants' alleged negligence when harassing him. (Dkt. No. 12, at ¶¶ 12, 30 [Pl.'s Proposed Am. Compl.].) Unlike these emotional harms, special harm is defined as economic or pecuniary loss under New York law. *See Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012). Additionally, the fact that Plaintiff alleges he is unable to work as a result of these statements does not constitute a special harm because he has not alleged facts plausibly suggesting that it was the slander itself (i.e., the spreading of those statements to others rather than the effect the words had on him personally) that caused any of his emotional injuries to the extent that he was rendered unable to work. *See Thompson*, 855 F. Supp. 2d at 76 ("Special harm must flow directly from the injury to reputation caused by the defamation, not from the effects of defamation.").

**\*9** Nor are the alleged statements sufficient to constitute defamation per se. *See Medcalf v. Walsh*, 938 F. Supp. 2d 478, 487 (S.D.N.Y. 2013) (noting that the exception from proving special harm for a statement that "tends to injure another in his or her trade, business, or profession" is limited to a statement "made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities"). Although statements that Plaintiff is "lazy" and abused FMLA leave certainly might have an impact on his reputation in the workplace, they do not go beyond his character or qualities and do not particularly implicate his fitness to perform his work. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 551 (S.D.N.Y. 2011) (finding that statements that plaintiff was a liar, "a loose cannon," and "hates homosexuals" did not reflect on her competence as a fitness instructor and owner, but were merely a more general reflection on her character). Because Plaintiff has not alleged facts plausibly suggesting that he suffered a special harm, he has not stated a claim for slander upon which relief can be granted.

As to his claim for discrimination and retaliation, Plaintiff includes the following relevant factual allegations in his proposed Amended Complaint: (a) Defendant Bush intentionally discriminated against him; (b) Defendant Bush's discrimination and defamatory statements led to Plaintiff's constructive discharge; (c) Plaintiff is half African-American and was the only African-American working for Defendant at the time of his employment; (d) other employees who requested time off under the FMLA were given that time off

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 102 of 110
Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)
2020 WL 6196144

without question; (e) Plaintiff believes that he was singled out because of his race, which is a protected classification; (f) Plaintiff made a complaint about Defendant Bush's conduct; and (g) Plaintiff was retaliated against and forced to leave. [1] (Dkt. No. 12, at ¶¶ 33-37 [Pl.'s Proposed Am. Compl.].) To state either a discrimination claim or a retaliation claim under the NYSHRL, a plaintiff must allege facts plausibly suggesting that he suffered an adverse employment action. *See Jackson v. Battaglia*, 63 F. Supp. 3d 214, 222 (N.D.N.Y. 2014) (noting that a discrimination claim under federal law and the NYSHRL requires a plaintiff to allege that [a] he is a member of a protected class, [b] he is qualified for the job, [c] he suffered an adverse employment action, and [d] the circumstances surrounding the adverse action give rise to an inference of discrimination); *Malena v. Victoria's Secret, LLC*, 886 F. Supp. 2d 349, 261-62 (S.D.N.Y. 2012) (noting that a retaliation claim under federal law and the NYSHRL requires plaintiff to allege that [a] he engaged in protected activity, [b] the employer was aware of this activity, [c] the employer took an adverse action against the plaintiff, and [d] a causal connection exists between the protected activity and the adverse action).

[1]    The Court notes that, to the extent that Plaintiff Complaint or proposed Amended Complaint could be liberally construed as asserting a federal discrimination, hostile work environment, or retaliation claim under Title VII of the Civil Rights Act, Plaintiff has not alleged facts plausibly suggesting that he filed a complaint regarding Defendants' conduct with the Equal Employment Opportunity Commission ("EEOC") or received a right-to-sue letter from the EEOC. *See Bridgeforth v. Cntr. for Disability Servs.*, 09-CV-1435, 2012 WL 3229281, at *4 (N.D.N.Y. Aug. 6, 2012) (Kahn, J.) (finding that the plaintiff could not maintain an action under Title VII because he could not meet the conditions precedent to suit of showing that he made any filings with the EEOC and did not commence the action until after the EEOC filing deadline); *Farrell v. State of New York*, 946 F. Supp. 185, 190 (N.D.N.Y. 1996) (McAvoy, C.J.) ("Timely filing and receipt of a right-to-sue letter is a statutory pre-requisite to bringing a Title VII claim."). As a result, Plaintiff cannot bring a Title VII claim and the Court will construe his Complaint and proposed Amended Complaint as

asserting a claim of discrimination under New York law.

**\*10** Here, Plaintiff has not alleged facts plausibly suggesting that he suffered an adverse action sufficient to state either a discrimination claim or retaliation claim. Notably, the only discernable adverse actions alleged in the proposed Amended Complaint are (a) Defendants' denial of his request for FMLA leave, and (b) Plaintiff's "constructive discharge." As to his requests for FMLA leave, Plaintiff's bare allegations that non-African-American employees were granted FMLA leave while he was denied it are insufficient for reasons that will be discussed in detail below related to Plaintiff's FMLA claim; particularly, Plaintiff has not alleged any facts to plausibly suggest that he made a valid FMLA leave request; and failure to do so prevents this Court from determining whether he has plausibly suggested that the denial of his FMLA request was based on discrimination.

Although a constructive discharge can constitute an adverse action for the purposes of these claims, Plaintiff has failed to allege facts plausibly suggesting that he was constructively discharged. Notably, although Plaintiff alleges that Defendant Bush's harassing conduct and Defendant Rehrig's failure to remedy that conduct essentially forced him out of his job, he includes no allegations as to why this conduct constituted a constructive discharge. "Constructive discharge occurs where an 'employer, rather than discharging [an employee] directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily.' " *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 309 (N.D.N.Y. 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 151-52 [2d Cir. 2003]). Notably, Plaintiff has not alleged any type of demotion, change in his job duties, or loss of benefits, or that he was facing any reasonable threat of termination. *Bader*, 985 F. Supp. 2d at 310. Indeed, Plaintiff does not allege any specific reason for his decision to leave his job other than the alleged harassing and derogatory statements made by Defendant Bush, the denial of his FMLA requests, and Defendant Rehrig's failure to address his complaints. These allegations are simply not sufficient to plausibly suggest that Defendants' conduct meets the high standard required to show a constructive discharge. Because Plaintiff therefore has not alleged facts plausibly suggesting that he suffered any adverse employment action, he has not stated a claim for discrimination or retaliation [2] upon which relief can be granted.

Case 5:24-cv-01189-DNH-MJK    Document 5    Filed 10/08/24    Page 103 of 110

Ryle v. Rehrig Pacific Co., Not Reported in Fed. Supp. (2020)

2020 WL 6196144

² Additionally, as to any retaliation claim, Plaintiff has not alleged that any of the harassing conduct or denials of his FMLA requests were denied *after* he made his internal complaint. The only alleged event that Plaintiff alleges occurred after he submitted that complaint is his "constructive discharge," which is based primarily on actions that predated his complaint. Thus, Plaintiff also has not alleged facts plausibly suggesting that his complaint was the cause of his constructive discharge.

As to his claims for breach of contract and/or wrongful termination, Plaintiff includes the following relevant factual allegations: (a) he submitted a written complaint about Defendant Bush's conduct on April 2, 2018, and received a letter on April 16, 2018, indicating that Defendants had investigated his complaint and dismissed all his claims; (b) Defendant Bush "breached the employment contract" by creating a retaliatory, hostile work environment, and Defendant Rehrig failed to supervise and discipline its employees; and (c) New York is an at-will employment state, but Defendants hired Plaintiff to perform certain services for them, and Plaintiff performed those services adequately. (Dkt. No. 12, at ¶¶ 41-44, 47-51 [Pl.'s Proposed Am. Compl.].)

Under New York law, a plaintiff must plead four elements to assert a breach of contract claim: (1) the existence of a contract; (2) that the plaintiff has performed his obligations under the contract; (3) that defendant failed to perform its obligations under the contract; and (4) the plaintiff was damaged as a result of the defendant's nonperformance. *E. Materials Corp. v. Mitsubishi Plastics Composites Am.*, 307 F. Supp. 3d 52, 58 (S.D.N.Y. 2018).

**\*11** Here, although Plaintiff alleges that there existed a contract between him and Defendant Rehrig (despite also acknowledging his status as an at-will employee), he does not allege any facts about what the nature or terms of that contract were, or what contractual duties Defendant Rehrig owed him under such contract (i.e., whether Defendant Rehrig contracted to provide Plaintiff with a non-hostile work environment free of retaliation or to discipline employees in supervisory or management positions for certain conduct).³ As a result, Plaintiff has not alleged facts plausibly stating a claim for breach of contract or wrongful termination.

³ Plaintiff alleges that Defendants breached "the obligation to protect their employees from their

agents," but fails to allege whether or how any such obligation arose from the alleged contract.

As to his claim pursuant to the FMLA, Plaintiff has added the following relevant factual allegations in his proposed Amended Complaint: (a) he was, at all relevant times, a qualified employee pursuant to the FMLA due to having been employed by Defendant Rehrig for at least 12 months and having worked at least 1,250 hours during the twelve months prior to his request for medical leave; (b) Defendant Rehrig engaged in an industry affecting interstate commerce and employed more than 20 employees and was thus an employer under the FMLA; (c) every time Plaintiff requested time off for his wife's "significant illness," he was denied time off and berated by Defendant Bush; (d) Defendant Bush was negligent by failing to exercise due care towards Plaintiff related to addressing Plaintiff's wife's medical condition and Plaintiff's requests for time off; and (e) Defendant Rehrig was aware of Defendant Bush's actions and did nothing. (Dkt. No. 12, at ¶¶ 54-59 [Proposed Am. Compl.].) The Court therefore liberally construes Plaintiff's proposed Amended Complaint as asserting a claim for interference with rights under the FMLA rather than retaliation for exercising his rights under the FMLA.

To plead a claim of interference with FMLA rights, a plaintiff must allege facts plausibly suggesting the following five elements: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he gave notice to the defendant of his intention to take leave; and (5) he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Institute of Am.*, 817 F. 3d 415, 425 (2d Cir. 2016).

Here, Plaintiff has, at the very least, not alleged facts to plausibly suggest that he was entitled to take leave under the FMLA. The FMLA entitles an eligible employee to take leave "in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 466 (S.D.N.Y. 2011) (quoting 29 U.S.C. § 2612[a][1][C]). Plaintiff alleges that his wife had a "significant illness," but he did not provide any factual allegations to plausibly suggest that illness was a "serious health condition" as defined by the FMLA.⁴ *See Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193-94 (S.D.N.Y. 2011) (finding that the plaintiff failed to allege entitlement to leave where he failed to allege that the relevant condition involved inpatient treatment or continuing

care and thus his allegation that he was entitled to leave was conclusory). Additionally, Plaintiff has not provided any factual allegations plausibly suggesting when he made the relevant requests, whether he submitted the appropriate medical or other documentation, or when these requests were denied or the rationale for the denial. Without such facts to plausibly suggest that Plaintiff made a proper request and that his wife's medical condition was a serious health condition, Plaintiff has not plausibly suggested that Defendants' denial of leave violated his rights under the FMLA.

4    The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (a) inpatient care in a hospital, hospice, or residential medical care facility; or (b) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

**\*12** As to the claims for loss of consortium newly asserted by Plaintiff's wife, the Court need not reach the issue of whether these claims can even be properly asserted because it has found that the causes of action underlying Plaintiff's wife's claims all must be dismissed. *See Burns v. City of Utica,* 2 F. Supp. 3d 283, 295 (N.D.N.Y. 2014) (Scullin, J.) ("Since the Court has granted Defendants' motions regarding all of Plaintiff's underlying claims, the Court grants Defendants'

motion to dismiss Plaintiff Christopher Barnes' loss of consortium claims."); *Quinoy v. Pena,* 13-CV-1945, 2014 WL 1998239, at *13 (S.D.N.Y. May 14, 2014) (noting that "[a] loss of consortium claim is a derivative action that depends on the viability of the primary cause of action or the underlying injury"). As a result, the Court finds that it would be futile to allow Plaintiff to amend the Complaint to add these claims on behalf of Plaintiff's wife.

In sum, because Plaintiff's proposed amendments would be futile, the Court denies Plaintiff's cross-motion to amend his Complaint.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend the Complaint (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED**.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 6196144

---

End of Document        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 105 of 110

Uddoh v. United Healthcare, Not Reported in Fed. Supp. (2017)
2017 WL 563973, 2017 Employee Benefits Cas. 41,941

2017 WL 563973
United States District Court, E.D. New York.

Humphrey O. UDDOH, and Plamen Koev, Plaintiffs,
v.
UNITED HEALTHCARE, The Empire Plan (Nyship),
Ginger W. Whispelll, and Jennifer Jablonski, Defendants.

16-cv-1002 (BMC) (LB)
|
Signed 02/10/2017

**Attorneys and Law Firms**

Humphrey O. Uddoh, Jersey City, NJ, pro se.

Plamen Koev, Jersey City, NJ, pro se.

Michael H. Bernstein, Matthew Paul Mazzola, Sedgwick LLP, Alissa Schecter Wright, NYS Office of the Attorney General, New York, NY, for Defendants.

## MEMORANDUM DECISION & ORDER

Digitally signed by Brian M. Cogan, U.S.D.J.

**\*1**  Plaintiffs *pro se* are a same-sex, male couple who applied for insurance benefits through their insurance plan in connection with their desire to parent a child using in vitro fertilization ("IVF") and non-paid surrogacy. After initially issuing a conditional pre-approval of coverage based on the mistaken assumption that plaintiffs were a heterosexual couple and thus it would be approving female implantation procedures for one of the insureds, the policy administrator reversed its position and denied coverage on the ground that the policy does not cover surrogacy, whether for heterosexual or homosexual insureds. After further consideration, the policy administrator modified its position and agreed to pay for medical procedures necessary for the collection of sperm from both plaintiffs, but not for the collection or implantation of oocytes or surrogacy procedures.

Claiming that the insurer's change of position has caused them damages, and that it constitutes illegal discrimination, and that they were defamed in the process, plaintiffs have brought this action alleging four claims for relief: violation of the Equal Protection Clause under 42 U.S.C. § 1983; breach of contract; slander; and "detrimental reliance" (i.e., promissory estoppel). Defendants consist

of plaintiffs' insurance plan, sued as "The Empire Plan (NYSHIP)" (referred to as "Empire"); the plan administrator, United Healthcare ("United"); and two United employees, Ginger W. Whispell [1] and Jennifer Jablonski (together with United, the "United Defendants").

[1]  Based on the United Defendants' memoranda in support of their motion to dismiss, it appears defendant "Whispell's" name is actually spelled "Whispelll." The Clerk is directed to amend the caption as set forth above.

All defendants have moved to dismiss on various grounds. Defendants' motions to dismiss are granted and plaintiffs are granted leave to file an amended complaint to the extent set forth below within 14 days.

## BACKGROUND

Construing the complaint in the light most favorable to these *pro se* plaintiffs, plaintiff Humphrey O. Uddoh is an attorney for the New York City Transit Authority. [2] His employer provides health insurance through the New York State Health Insurance Program (NYSHIP), which offers a plan known as the Empire Plan, under which he has been covered for almost a decade. He added his male partner, plaintiff Plamen Koev, as an additional insured at the same time he signed up. The application to add Koev disclosed that Koev is a male.

[2]  It is axiomatic that a *pro se* complaint is held to less stringent standards than pleadings drafted by attorneys, and the Court is required to read the complaint liberally and interpret it as raising the strongest arguments it suggests. Erickson v. Pardus, 551 U.S. 89 (2007); Hughes v. Rowe, 449 U.S. 5, 9 (1980); Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-93 (2d Cir. 2008). However, as an attorney, plaintiff Uddoh is entitled to less leniency than a non-attorney *pro se* plaintiff. See Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010).

**\*2**  Although the complaint treats Empire and United as a single entity, it is clear from the over 90 pages of documents annexed to the complaint, which are deemed part of the complaint for purposes of defendants' motions, see Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000), that United acts

Case 5:24-cv-01189-DNH-MJK   Document 5   Filed 10/08/24   Page 106 of 110

Uddoh v. United Healthcare, Not Reported in Fed. Supp. (2017)

2017 WL 563973, 2017 Employee Benefits Cas. 41,941

as the policy and/or claims administrator for Empire, and that defendants Jablonski and Whispell are employed by United.[3]

[3]    The complaint contains footnotes referring to various exhibit numbers of the documents annexed to the complaints. But the documents have no exhibit numbers.

Plaintiffs decided to start a family in early 2014. Plaintiff Uddoh applied for pre-approval of certain IVF procedures —the complaint does not set forth the specifics of the application—which, in part, had to do with the fact that both plaintiffs have conditions that required some fairly serious surgery in order to collect the sperm necessary for IVF. On May 16, 2014, plaintiff Uddoh received a letter from United "confirming that the following qualified procedures for you and Plamen Koev are a covered expense under your health benefit plan: IVF, GIFT, ZIF, ICSI, Assisted Hatching, MESA, TESE, sperm, egg or inseminated egg procurement, processing, egg or embryo banking determined appropriate by your physician." The letter also stated: "Please note that payment is subject to patient eligibility and Empire Plan provisions at the time the health care services are received."

The complaint acknowledges that at the time it sent this letter, United was operating under the misimpression that "Plamen Koev" was a female, although plaintiffs believe that this was an unreasonable misimpression in light of the disclosure in the insurance application that Koev is a male, and perhaps —the complaint is not entirely clear—the fact that Koev had submitted prior insurance claims that confirmed this. In any event, the matter apparently came to light when a United employee, defendant Whispell, called one of Koev's medical care providers to inquire whether he is male or female. After finding out that Koev is a male, Whispell allegedly told the provider to immediately cancel the procedure.

After learning about this exchange, plaintiff Uddoh contacted Whispell's supervisor, defendant Jablonski. At that point, Jablonski accused Uddoh of insurance fraud and threatened to seek recoupment of the surgical costs that had already been paid for Uddoh's two surgical procedures. In addition, the complaint alleges that defendants Jablonski and Whispell, made similar accusations of fraud to plaintiffs' health care provider.

The complaint does not allege the date when this mistake was discovered, but on November 4, 2014, United sent a

letter to plaintiff Koev disclaiming coverage for his portion of "infertility services." The letter stated that

We have completed a request for infertility services for you. Your condition is not consistent with the Plan benefit for infertility services. You do not qualify for the benefit because your condition is not the reason a pregnancy cannot be achieved. In addition the plan does not provide benefits in connection with services for surrogacy.

Under the terms of the Empire Plan, "For the purposes of this benefit, infertility is defined as a condition of an individual who is unable to achieve a pregnancy because the individual and/or partner has been diagnosed as infertile by a physician." In addition, "Medical expenses or any other charges in connection with surrogacy" are excluded from coverage under the Plan. Accordingly any charges or expenses for services related to your infertility or in connection with surrogacy are not covered.

*3    After these communications, Uddoh demonstrated to United that Koev had always been identified as a male, both in the policy application and in claims that he had previously submitted. United thereupon agreed to modify its rejection letter. It agreed to cover the surgical procedures for the harvesting of the sperm from both plaintiffs, its storage, and fertilization. However, it did not agree to "[p]rocurement of oocytes" or "[s]ervices rendered to a surrogate." The basis for this denial was that the Empire Plan expressly excludes "[m]edical expenses or any other charges in connection with surrogacy"; "[a]ny donor compensation or fees charged in facilitating a pregnancy"; and "[a]ny charges for services provided to a donor in facilitating a pregnancy."

The complaint alleges that in reliance on the initial pre-approval letter, plaintiffs spent $150,000 that is not covered under the revised approval letter. Plaintiffs have not clearly explained why not. As best I can tell from the complaint and plaintiffs' memoranda in opposition to defendants' motions, plaintiffs originally had a volunteer (non-paid) surrogate willing to assist them when they received the pre-approval, but the revocation of approval caused a delay which lost them that opportunity, and now they have to pay for a surrogate. Plaintiffs, however, acknowledge that the Empire Plan does not cover surrogacy and that, in any event, New York law does not allow coverage for surrogacy.

**DISCUSSION**

2017 WL 563973, 2017 Employee Benefits Cas. 41,941

## I. The Empire Plan (NYSHIP)

The Attorney General originally moved to dismiss the complaint as to Empire on the ground, *inter alia*, of improper service, arguing that plaintiffs' attempt to effect service on Empire by serving United as the plan administrator was ineffective because United was not authorized to accept service on Empire's behalf. The Attorney General did not, however, advise how service could be properly made on Empire, and it did not appear that there was any means to effect service. This raised the question of whether Empire is a juridical entity capable of being sued or simply a health benefits plan created by the New York State Department of Civil Service and administered under contract by United. Because the Attorney General's position on this issue was ambiguous, the Court ordered discovery on it.

Discovery has shown that, in fact, neither NYSHIP nor Empire is a legal entity susceptible to suit. NYSHIP is just the program name of the various insurance plans offered to state employees, which is administered by the Department of Civil Service, and Empire is simply one of those plans. Neither NYSHIP nor Empire has any employees, officers, a board of directors, separate assets, or a place of business; the individuals who oversee NYSHIP and the Empire Plan are employees of the Department of Civil Service. Pursuant to contract, United, as the administrator, processes and handles claims made by beneficiaries of the Empire Plan. The contract assigning to United the responsibility for the administration of claims under the Empire Plan is between United and the Department of Civil Service, not Empire. In fact, there are no contracts to which NYSHIP or Empire or parties.

Neither NYSHIP nor Empire retain records; all records relating to them are maintained by the Department of Civil Service. The Department of Civil Service pays United for its services, not NYSHIP or Empire. Further, because the Empire Plan is self-insured, the Department of Civil Service bears all responsibility for claims and expenses under or against it, for which it receives state funding and makes annual budget requests to the New York State Division of the Budget.

The classification of NYSHIP and Empire as non-juridical entities is consistent with the status of benefit plans generally. Benefits plans, such as Empire, are not insurance companies; they are simply programs offered by insurance companies, labor unions or locals, or, if an employer is self-insured, like New York State, the employer. That is why the Employee Retirement Income Security Act ("ERISA"), expressly deems that any pension plan covered by ERISA, which Empire

is not, *see* New York State Psychiatric Ass'n, Inc. v. UnitedHealth Group, 980 F. Supp. 2d 527, 549 (S.D.N.Y. 2013), affirmed in part and vacated on other grounds, 798 F.3d 125 (2d Cir. 2015), to be a juridical entity so that it can sue and be sued under its own name. See 29 U.S.C. § 1132(d)(1). As the Second Circuit has noted, "[w]ithout such a provision a pension plan would not be a legally cognizable body." Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assurance Co., 700 F.2d 889, 893 (2d Cir. 1983).

**\*4** Plaintiffs have offered no persuasive argument to the contrary. First, they point to two state court cases, Matter of Plainview-Old Bethpage Cong. of Teachers v. New York State Health Ins. Plan, 140 A.D.3d 1329, 33 N.Y.S.3d 535 (3d Dep't 2016), and Matter of Roslyn Teachers Assn. v. New York State Health Ins. Plan, 140 A.D.3d 1332, 36 N.Y.S.3d 894 (3d Dep't 2016), where the Department of Civil Service and NYSHIP were named as respondents. However, no one raised the issue in those cases as to whether NYSHIP was a proper party, and since the Department of Civil Service was also a party, NYSHIP's nominal "presence" says nothing about its juridical status.

Second, plaintiffs submit several excerpts of various Empire documents contemplating suits concerning benefits. However, the NYSHIP Certificate of Insurance, on which plaintiffs rely, merely advises Empire beneficiaries of the time limitations on bringing lawsuits regarding the denial of benefits. It does not indicate the proper party to such a suit. Plaintiffs also identify various contract provisions, but these all appear in contracts to which the Department of Civil Service, not NYSHIP, is a signatory. [4]

[4]    I inquired of plaintiffs whether they wished to substitute the Department of Civil Service if I determined that Empire is not a suable entity. They have not requested that relief.

Finally, I note that since this is an action for damages, a judgment in plaintiffs' favor against Empire would not be of any use to them. As noted above, there is no evidence that Empire has any assets upon which execution could be levied, and thus retaining it as a defendant would not result in any recovery to plaintiffs.

Accordingly, Empire's motion to dismiss is granted and plaintiffs' claims against Empire are dismissed.

## II. The United Defendants

Case 5:24-cv-01189-DNH-MJK     Document 5     Filed 10/08/24     Page 108 of 110

Uddoh v. United Healthcare, Not Reported in Fed. Supp. (2017)
2017 WL 563973, 2017 Employee Benefits Cas. 41,941

The United Defendants have moved to dismiss on various grounds. Initially, they contested service as to defendants Jablonski and Whispell, but they have since withdrawn this argument.

The United Defendants' main point is that the complaint makes no allegations against them; rather, all of the allegations are against "Empire/NYSHIP." It is correct that United is mentioned only in the caption. Jablonski and Whispell are mentioned in the complaint a number of times, but are misidentified as employees of Empire/NYSHIP.

Because Empire is dismissed as a non-suable party, the complaint makes little sense as written. Plaintiffs are granted leave to file an amended complaint within 14 days that eliminates Empire, and properly describes the role of United as plan administrator, and Whispell and Jablonski, as United employees. Nevertheless, in filing that amended complaint, the other points raised by the United Defendants are disposed of as follows.

The United Defendants move to dismiss plaintiffs' slander claim on the grounds that it is barred by the statute of limitations and fails to state a claim. The complaint states that the allegedly slanderous statements were made in 2014, and this action was not commenced until February 2016. Plaintiffs' slander claim is barred by the one-year statute of limitations, see N.Y. C.P.L.R. § 215(3); Cullin v. Lynch, 113 A.D.3d 586, 979 N.Y.S.2d 92 (2d Dep't 2014) (the one-year statute of limitations begins to accrue on "the date of the publication or utterance of the allegedly slanderous statement"), and the Court therefore need not reach whether plaintiffs' allegations fail to state a slander claim.

 *5  As importantly, plaintiffs have not responded to United's arguments as to their slander claim, except to request that they be permitted to amend their complaint to allege a claim of misrepresentation, and are thereby deemed to have abandoned their slander claim. See Reid v. Ingerman Smith LLP, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); Sullivan v. City of New York, 14-CV-1334, 2015 WL 5025296, at *4-5 (S.D.N.Y. Aug. 25, 2015) (holding

that plaintiff, an attorney proceeding *pro se*, abandoned his claims against certain defendants where he failed to respond to those defendants' motion to dismiss but continued to pursue the claims as to other defendants). Plaintiffs' slander claim is dismissed.

In addition, plaintiffs' equal protection claim is dismissed. Plaintiffs have offered no factual allegations tending to show that the United Defendants were acting under color of state law as is required for a § 1983 claim. Merely acting pursuant to a contract with the state, which plaintiffs do not even acknowledge this was, is not sufficient to make the contractor liable under 42 U.S.C. § 1983 as a state actor. See Cooper v. U.S. Postal Serv., 577 F.3d 479, 492 (2d Cir. 2009) (" '[A]cts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.' ") (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982)); Phelan ex rel. Phelan v. Torres, 843 F. Supp. 2d 259, 273 (E.D.N.Y. 2011) ("The fact that the state may contract with a private party to perform a function does not transform the private party into a state actor unless the function is traditionally exclusively a state function.").

The Court will not pass upon plaintiffs' remaining claims, i.e. the breach of contract and estoppel claims, at this time, except to note that in filing the amended complaint, plaintiffs would be well-served to make those claims more plausible.

## CONCLUSION

Empire's motion to dismiss is granted and plaintiffs' claims against Empire are dismissed. The United Defendants' motion to dismiss is granted to the extent set forth above. Plaintiff may file an amended complaint within 14 days.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 563973, 2017 Employee Benefits Cas. 41,941

---

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.



## New York
### Official Reports

113 A.D.3d 586, 979 N.Y.S.2d
92, 2014 N.Y. Slip Op. 00086

**\*\*1** Karen Cullin, Appellant

v

Keith Lynch et al., Respondents.

Supreme Court, Appellate Division,
Second Department, New York
January 8, 2014

CITE TITLE AS: Cullin v Lynch

**HEADNOTES**

Limitation of Actions
One-Year Statute of Limitations
Slander

Libel and Slander
Privilege
Statements Published in Affidavits during Course of Probate
Proceeding

Paul W. Haug, Medford, N.Y., for appellant.
John J. O'Grady, Garden City, N.Y. (Mary Ellen O'Brien of
counsel), for respondent Keith Lynch.
Perez & Vavaro, Uniondale, N.Y. (Denise A. Cariello of
counsel), for respondent Gary Lynch.

In an action to recover damages for slander per se and libel per
se, the plaintiff appeals from an order of the Supreme Court,
Suffolk County (Asher, J.), dated April 5, 2012, which granted
the defendants' separate motions pursuant to CPLR 3211 (a)
to dismiss the complaint insofar as asserted against each of
them.

Ordered that the order is affirmed, with one bill of costs.

Contrary to the plaintiff's contention, the cause of action to
recover damages for slander per se was time-barred. The
statute of limitations for an action to recover damages for
slander is one year (see CPLR 215 [3]), measured from
the date of the publication or utterance of the allegedly
slanderous statement (see Wilson v Erra, 94 AD3d 756,

756 [2012]; Gigante v Arbucci, 34 AD3d 425, 426 [2006];
Frederick v Fried, 10 AD3d 444, 445 [2004]). Here, the
allegedly slanderous statements were uttered in 2002, and
the plaintiff did not commence the instant action until 2011.
Moreover, the complaint did not allege misleading conduct
on the part of the defendants upon which the plaintiff could
have reasonably relied to delay commencement of the action,
so as to equitably estop the defendants from asserting the
bar of the statute of limitations (see Zumpano v Quinn, 6
NY3d 666, 674-675 [2006]; Sethi v Morrissey, 105 AD3d
833, 834 [2013]; Reiner v Jaeger, 50 AD3d 761, 762 [2008]).
To the extent that the plaintiff attempted to remedy defects
in the amended complaint (see generally Rovello v Orofino
Realty Co., 40 NY2d 633, 635 [1976]), the affidavit submitted
by her attorney, who had no personal knowledge of the
facts underlying the claim, was insufficient to establish the
applicability of the doctrine of equitable estoppel (see Reiner
v Jaeger, 50 AD3d 761 [2008]; see generally Harris v
Five Point Mission—Camp Olmstead, 73 AD3d 1127, 1128
[2010]).

The defendants also were entitled to dismissal of the cause
of action to recover damages for libel per se. For purposes
of defending against a cause of action alleging libel per se,
"[s]tatements made by parties, attorneys, and witnesses in the
course of a judicial or quasi-judicial proceeding are absolutely
privileged, notwithstanding the motive with which they are
made, so long as they are material and pertinent to the issue
to be resolved in the proceeding" ( **\*\*2** Rufeh v Schwartz, 50
AD3d 1002, 1004 [2008] [internal quotation marks omitted];
see Toker v Pollak, 44 NY2d 211, 218-219 [1978]; **\*587**
Sklover v Sack, 102 AD3d 855, 856 [2013]; Wilson v Erra,
94 AD3d 756, 756-757 [2012]; Rabiea v Stein, 69 AD3d
700 [2010]). Here, the allegedly libelous statements were
published in affidavits submitted in 2011, during the course
of a contested probate proceeding. As those statements were
made by parties or witnesses in a pending judicial proceeding,
and were material and pertinent to the objections to probate,
they are protected by an absolute privilege (see Sklover v
Sack, 102 AD3d at 856; Rabiea v Stein, 69 AD3d at 700-701).
Accordingly, even accepting the allegations in the amended
complaint as true, and resolving all inferences in favor of the
plaintiff (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]), the
amended complaint failed to state a cause of action to recover
damages for libel per se (see CPLR 3211 [a] [7]; Rabiea v
Stein, 69 AD3d 700 [2010]; Rufeh v Schwartz, 50 AD3d 1002
[2008]).

**Cullin v Lynch, 113 A.D.3d 586 (2014)**

979 N.Y.S.2d 92, 2014 N.Y. Slip Op. 00086

In view of the foregoing, we need not consider the plaintiff's remaining contention. Skelos, J.P., Leventhal, Lott and Cohen, JJ., concur.

Copr. (C) 2024, Secretary of State, State of New York

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.